JUDGE JONES

N. ARI WEISBROT (NAW6029)
SHAPIRO & CROLAND, ESQS.
411 Hackensack Avenue
Hackensack, New Jersey 07601
Attorneys for Plaintiff Habibollah Kermanshah
(201) 488-3900

# 08 CV 00409

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

RECEIVED

JAN 16 2008

|  |  |
|---|---|
| HABIBOLLAH KERMANSHAH, | CIVIL ACTION NO. 08- S.D. |
| Plaintiff, | |
| v. | |
| ABBAS KERMANSHAH, ABDOLMAJID KERMANSHAH, a/k/a MAJID KERMANSHAH, ABDOLHAMID KERMANSHAH, a/k/a HAMID KERMANSHAH, 263 WEST 30TH INC., BANAFSH REALTY, INC., EBRAHIM REALTY, INC., KERMANSHAH BROTHERS ORIENTAL RUGS, INC., KERMANSHAH ORIENTAL RUGS, INC., KERMANSHAH BROTHERS RUGS, INC., OVERSEAS PARTNERSHIP CO., INC., OVERSEAS PARTNERSHIP COMPANY, RAHMAN NY, INC., SHERIN WEST 86TH STREET CORP., SHIREWIL, INC., and WILSHIRE LIMITED, | COMPLAINT and JURY DEMAND |
| Defendants. | |

Plaintiff Habibollah Kermanshah, by his attorneys, Shapiro & Croland, Esqs., complaining of defendants Abbas Kermanshah, Abdolmajid Kermanshah, a/k/a Majid Kermanshah, Abdolhamid Kermanshah, a/k/a Hamid Kermanshah, 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc., Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company,  Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., and

Wilshire Limited, alleges and says:

## THE PARTIES

1.    Plaintiff Habibollah Kermanshah ("Plaintiff" or "Habib") is an individual with a place of residence located at 100 Winston Drive, Unit 11A, Cliffside Park, New Jersey 07010.

2.    Upon information and belief, defendant Abbas Kermanshah ("Abbas") is an individual with a place of residence located in New York, and a principle place of business located at 57 Fifth Avenue, New York, New York 10003.

3.    Upon information and belief, defendant Abdolmajid Kermanshah, a/k/a Majid Kermanshah ("Majid") is an individual residing at 134 West 86th Street, Apt. 1, New York, New York, 10024.

4.    Upon information and belief, defendant Abdolhamid Kermanshah, a/k/a Hamid Kermanshah ("Hamid") is an individual residing at 217 East 83rd Street, Apt. 2B, New York, New York 10028.

5.    Upon information and belief, Defendant 263 West 30th Inc. ("West 30th") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. 263 West 30th owns a mixed-use building on real property located at 263 West 30th Street, New York, New York 10001.

6.    Upon information and belief, Defendant Banafsh Realty, Inc. ("Banafsh") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Banafsh owns a mixed-use building on real property located at 217 East 83rd Street, New York, New York 10028.

7.    Upon information and belief, Defendant Ebrahim Realty, Inc. ("Ebrahim") is a

corporation duly organized and existing under the laws of the state of New York, with a principal

place of business located at 57 Fifth Avenue, New York, New York 10003. Ebrahim owns a

residential building on real property located at 97 Perry Street, New York, New York 10014.

8.    Upon information and belief, Defendant Kermanshah Brothers Oriental Rugs, Inc.

("KBOR") is a corporation duly organized and existing under the laws of the state of New York,

with a principal place of business located at 290 Fifth Avenue, New York, New York 10001.

KBOR is in the business of importing and selling Oriental Rugs.

9.    Upon information and belief, Defendant Kermanshah Oriental Rugs, Inc.

("KOR") is a corporation duly organized and existing under the laws of the state of New York,

with a principal place of business located at 57 Fifth Avenue, New York, New York 10003.

KOR is in the business of importing and selling Oriental Rugs.

10.    Upon information and belief, Defendant Kermanshah Brothers Rugs, Inc.

("KBR") is a corporation duly organized and existing under the laws of the state of New York,

with a principal place of business located at 33 East 33rd Street, New York, New York 10016.

KBR is in the business of importing and selling Oriental Rugs.

11.    Upon information and belief, Defendant Overseas Partnership Co., Inc.

("Overseas Corp.") is a corporation duly organized and existing under the laws of the state of

New York, with a principal place of business located at 57 Fifth Avenue, New York, New York

10003. Overseas Corp. owns a residential building on real property located at 41 Monroe Street,

New York, New York 10002.

12.    Upon information and belief, Defendant Overseas Partnership Company

("Overseas Partnership") is a partnership duly organized and existing under the laws of the state

of New York, with a principal place of business located at 57 Fifth Avenue, New York, New

York 10003. Upon further information and belief, Overseas Partnership, and its single real estate asset, located at 41 Monroe Street, New York, New York, were transferred to Overseas Corp.

13.    Upon information and belief, Defendant Rahman NY, Inc., ("Rahman") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Rahman owns a mixed-use building on real property located at 5 West 31st Street, New York, New York 10001.

14.    Upon information and belief, Defendant Sherin West 86th Street Corp. ("Sherin") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Sherin owns a residential building on real property located at 134 West 86th Street, New York, New York 10024.

15.    Upon information and belief, Defendant Shirewil, Inc. ("Shirewil") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Shirewil owns a mixed-use building on real property located at 57 Fifth Avenue, New York, New York 10003.

16.    Upon information and belief, Defendant Wilshire Limited ("Wilshire") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Wilshire owns a residential building on real property located at 59 Fifth Avenue, New York, New York 10003.

### JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and, with respect to certain state law claims, 28 U.S.C. § 1367.

18.     Plaintiff is a citizen of the State of New Jersey. All of the Defendants are citizens of the State of New York. Accordingly, there is complete diversity of citizenship for the purposes of 28 U.S.C. § 1332.

19.     Venue is proper under 28 U.S.C. § 1391(a) in that all of the Defendants reside in this District and the cause of action arose in this District.

## FACTUAL BACKGROUND

### The Kermanshah Brothers' Rug Businesses

20.     Plaintiff Habib and Defendants Abbas, Majid, and Hamid are brothers, born in Iran, but naturalized as United States' Citizens.

21.     In or about 1971, the two older brothers, Plaintiff Habib and Defendant Abbas opened "Kermanshah Rugs," a rug store in Tehran, Iran. By agreement, the meager profits generated were split evenly between Abbas and Habib.

22.     Shortly after opening Kermanshah Rugs, Abbas relocated to the United States and, opened a Persian rug store, "Houbas Oriental Rugs," with funds taken from Kermanshah Rugs, jointly owned with Habib. By agreement, all expenses, costs, losses, revenue, profit, and income generated by Houbas, or its successor, "Kermanshah Brothers Oriental Rugs," ("KBOR") were spilt evenly between Abbas and Habib.

23.     During the 1970s, Plaintiff Habib supplied rugs from Iran to Abbas in the United States for sale through Houbas, or its successor, KBOR. Revenue from KBOR was used by Habib and Abbas to support the entire family, including their parents and younger brothers, Defendants Majid and Hamid, who had no source of income of their own.

24.     In or about 1974, younger brother, Defendant Majid, emigrated from Iran to the United States.

25.    In or about 1978, Plaintiff Habib and Defendant Abbas relocated from Iran to Saudi Arabia, thereby expanding their business operations to include Saudi Arabia. Habib and Abbas imported and sold Persian Rugs in Saudi Arabia and the United States. The businesses were profitable and income from operations in the United States and Saudi Arabia were shared equally between Habib and Abbas, who continued to support their younger brothers.

26.    In the late 1970s and early 1980s, younger brothers, Defendants Majid and Hamid immigrated to the United States and were given jobs running the brothers' New York business operations.

27.    For the most part, the profit and income generated by Plaintiff Habib and Defendant Abbas in Saudi Arabia, a vast majority of which was generated by Habib, was sent to the United States to support Majid and Hamid.

28.    During the early 1980s, KBOR's Saudi Arabian business expanded, while the American business generated barely sufficient revenue to cover the brothers' business and living expenses. Habib, and to a lesser extent Abbas, was supporting Majid and Hamid.

29.    Thereafter, during the 1980s and 1990s, Plaintiff Habib sent a vast majority of his revenue and income to his brothers in the United States, who, in turn, used the money to invest in real estate in New York.

30.    Notwithstanding the fact that a vast majority of funds used to acquire the New York real properties was supplied solely by Habib, and little, if any, capital was contributed by Majid and Hamid, the four brothers agreed that any and all investments would be shared equally between the four brothers, Plaintiff Habib, and Defendants Abbas, Majid, and Hamid, and each would have an equal ownership interest in all of the corporate entities organized for the purposes of acquiring the real properties. The brothers further agreed that all expenses, costs, revenue,

6

income, and losses generated by the rug businesses and the real estate investments would be shared equally by the brothers.

31.    Plaintiff Habib became a resident of the United States in 1990 and a citizen in 1997, but he and Abbas continued to conduct the brothers' Saudi Arabian operations. Majid and Hamid were given day-to-day management responsibilities for the brothers' investments and were charged with overseeing the New York business operations.

**The Real Estate Investments**

32.    During the late 1970s, 1980s, and 1990s, using Plaintiff's money, Defendants Abbas, Majid, and Hamid formed various corporate entities, through which they acquired various real properties in New York City (collectively, the "Real Estate Properties").

33.    In or about 1986, Defendants formed 263 West 30th Inc. for the purposes of acquiring a mixed-use building on real property located at 263 West 30th Street, New York, New York 10001.

34.    In or about 1991, Defendants formed Banafsh Realty, Inc. for the purposes of acquiring a mixed-use building on real property located at 217 East 83rd Street, New York, New York 10028.

35.    In or about 1993, Defendants formed Ebrahim Realty, Inc. for the purposes of acquiring a residential building on real property located at 97 Perry Street, New York, New York 10014.

36.    In or about 1987, Plaintiff Habib and Defendants Abbas and Hamid, formed Overseas Partnership Company for the purposes of acquiring a residential building on real property located at 41 Monroe Street, New York, New York 10002. Habib, Abbas, and Hamid were equal partners in the Partnership and, therefore, had an equal ownership in the Monroe

Street building.

37.    In or about 2000, without obtaining Plaintiffs' permission or consent, Defendants Abbas, Majid, and Hamid, formed Overseas Partnership Co., Inc., a corporate entity deceptively formed with a name similar to the Partnership, but in which Plaintiff had no interest or rights, and transferred the Monroe Street property from the Partnership to the newly-formed corporate entity. In doing so, the Defendants forged Plaintiff's name on the deeds and transfer documents.

38.    In or about 1996, Defendants formed Rahman NY, Inc. for the purposes of acquiring a mixed-use building on real property located at 5 West 31st Street, New York, New York 10001.

39.    In or about 1991, Defendants formed Sherin West 86th Street Corp. for the purposes of acquiring a residential building on real property located at 134 West 86th Street, New York, New York 10024

40.    In or about 1985, Defendants formed Shirewil, Inc. for the purposes of acquiring a mixed-use building on real property located at 57 Fifth Avenue, New York, New York 10003.

41.    In or about 1985, Defendants formed Wilshire Limited for the purposes of acquiring a residential building on real property located at 59 Fifth Avenue, New York, New York 10003.

**Defendants' Fraudulent Scheme**

42.    In 1973, Plaintiff and Defendant Abbas, changed the name of their corporate entity from "Houbas Oriental Rugs," to "Kermanshah Brothers Oriental Rugs." Pursuant to their long-standing agreement, Plaintiff Habib and Defendant Abbas each owned 50% interest in KBOR.

43.    After Plaintiff continued to fund the Defendants' operations and expenses, Abbas,

Majid, and Hamid began a systematic fraudulent scheme to convert and deprive Plaintiff of his ownership interests in the various corporate entities, including the rug companies that he co-founded and built into successful companies through the 1990s.

44.    Thus, Abbas, Majid, and Hamid falsely advised the Saudi royal family that Plaintiff has no interest in KBOR and did not speak for the company.

45.    Abbas, Majid, and Hamid refused to account to Plaintiff or to provide Plaintiff with any information or documentation relating to the rug businesses or the Real Estate Properties. Indeed, Abbas, Majid, and Hamid refused to share any of the revenue, proceeds, or profit from the rug businesses or the Real Estate Properties - - even though Plaintiff contributed most, if not all, of the funds to acquire the Real Estate Properties and spent most of the 1970s-1990s building up the rug businesses to generate sufficient income to allow the brothers to acquire the Real Estate Properties.

46.    Abbas, Majid, and Hamid, in effect, erased any evidence of Plaintiffs' ownership in the rug entities and Real Estate Properties, including a notable "special meeting" of the board of directors of KBOR, wherein they acknowledged Plaintiff's "loans" to the Company. In exchange for the loans, Abbas, Majid, and Hamid, offered Plaintiff 160 of 200 shares in KBOR and, effectively, eliminated the brothers' substantial debt to Plaintiff.

47.    Almost immediately after fraudulently eliminating the debt to Plaintiff by offering him shares in KBOR, Abbas, Majid, and Hamid, founded a new corporate entity - - Kermanshah Oriental Rugs, Inc. ("KOR"), deliberately named in a manner to blur the relationship with KBOR - - and transferred all of KBOR's assets, business, funds, and operations from KBOR to KOR, thus leaving Plaintiff with 160 shares in a worthless company, and no valid debt to recover in exchange for his substantial investments in and funding of the brother's rug and real estate

businesses in the United States.

48.    Eventually, Abbas, Majid, and Hamid, issued a insignificant minority ownership interest in KOR to Plaintiff but gutted any value from that ownership interest by depriving Plaintiff of any of the fruits of ownership, including decision-making, management, access to documents or information, or any share in revenue or profit. Shortly thereafter, the Defendants formed yet another entity, Kermanshah Brothers Rugs, Inc. ("KBR") designed to, once again, further erode Plaintiff's ownership interests in the rug businesses.

49.    Defendants' shell game has, in effect, left Plaintiff with no recoverable interest in the rug and real estate businesses for which he provided millions of dollars in funding and contributed most, if not all, of the sweat equity by building up the businesses, earning substantial revenue, and then sending that revenue to Abbas, Majid, and Hamid based on their agreement and promise to share all proceeds and profits from the rug businesses and Real Estate Properties.

50.    Abbas, Majid, and Hamid fraudulently converted Plaintiffs ownership interests in the rug businesses and Real Estate Properties.

51.    Although initially, the Defendants forwarded stock certificates, bank records, and other financial or business records to Plaintiff, the practice of sharing information and documentation grounded to a halt in the mid-1990s.

52.    Thus, since the mid-1990s, Defendants had concealed their business activities from Plaintiff and ceased providing Plaintiff with any information or documentation relating to the brothers' business activities, in which Plaintiff is, at the very least, a 25% owner.

## FIRST COUNT
### (Declaratory Judgment)

53.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

54.    Pursuant to the parties written and oral agreements, Plaintiff is entitled to a minimum of one-quarter ownership interest, with all rights thereto, in each of the rug businesses and in each of the Real Estate Properties.

55.    Plaintiff contributed most, if not all, of the capital, labor, and funds used to purchase the Real Estate Properties and to sustain the rug businesses.

56.    Defendants Majid, and Hamid contributed virtually no capital, labor, or funds used to purchase the Real Estate Properties and to sustain the rug businesses, nevertheless, they have effectively converted and misappropriated Plaintiff's ownership interests in the rug businesses and Real Estate Properties through a series of fraudulent acts and other illegal misconduct.

57.    Defendants Abbas, Majid, and Hamid failed to include Plaintiff's name or ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, and/or forged Plaintiff's name on certain transfer documents, and/or formed new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

**WHEREFORE,** Plaintiff demands judgment against defendants Abbas Kermanshah, Abdolmajid Kermanshah, a/k/a Majid Kermanshah, Abdolhamid Kermanshah, a/k/a Hamid Kermanshah, 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc., Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company, Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., and Wilshire Limited, jointly and severally, as follows:

(a)    Declaring Plaintiff a one-quarter owner of the Real Estate Properties and the holder of a 25% ownership interest in each of the corporate-defendants along with all the rights

11

of ownership imposed by law or otherwise enjoyed equally by the Defendants Abbas, Majid, or Hamid;

    (b)    Directing Defendants to amend any formation, incorporation, and/or registration documents filed with any governmental agency or otherwise prepared in connection with any of the corporate-defendants to reflect Plaintiff's ownership interests as set forth herein;

    (c)    Temporarily, preliminarily, and permanently enjoining and restraining Defendants from taking any action to impair, limit, impede, reduce, dilute, divert, misappropriate, conceal, or convert Plaintiff's ownership interests at set forth herein;

    (d)    For attorneys' fees and costs; and

    (e)    For such other and further relief as this Court may deem equitable and just.

## SECOND COUNT
### (Minority Shareholder Oppression, pursuant to B.C.L. § 1104-a)

58.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

59.    Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

60.    As set forth above, Defendants Abbas, Majid, and Hamid have engaged in illegal, fraudulent and oppressive conduct with respect to Plaintiff's minority ownership interests in the corporate-defendants, by, among other things, refusing to share equally in the corporate opportunities, investments, and businesses and to include Plaintiff in any business decisions relating thereto, failing and/or refusing to provide Plaintiff with any information, accounting, or

documentation relating to the substantial funds contributed by Plaintiff to the brothers' business ventures, failing to include Plaintiff's name and ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, forging Plaintiff's name on certain transfer documents, and forming new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

61.    Plaintiff, as the minority shareholder, is, and continues to be, damaged as a result of the Defendants' illegal, fraudulent, and oppressive conduct with respect to their control of the corporate-defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For judgment winding down and dissolving the corporate-entities, marshalling and selling their assets, paying any and all reasonable expenses of the corporate-entities, and equitably distributing any remaining assets, income, or profits between the Plaintiff and Defendants Abbas, Hamid, and Majid;

(b)    For judgment appointing a provisional director, receiver, or interim director to control the operations and assets of the corporate-defendants;

(c)    For judgment directing Defendants to produce to Plaintiff for inspection the corporate-defendants' books, records, financial papers, and all other business documents;

(d)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(e)    For consequential damages in an amount to be determined at trial;

(f)    For attorneys' fees and costs; and

(g)    For such other and further relief as this Court may deem equitable and just.

## THIRD COUNT
### (Dissolution of Corporate-Defendants)

62.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

63.    Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

64.    As set forth above, Defendants Abbas, Majid, and Hamid are looting the corporate assets to enrich themselves at the expense of the minority shareholder, continuing the corporations solely to benefit those "in control," and have taken steps to deprive the minority shareholder of his rights to and interests in the corporate-defendants.

65.    Plaintiff, as the minority shareholder, is, and continues to be, damaged as a result of the Defendants' oppressive conduct with respect to their control of the corporate-defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For judgment winding down and dissolving the corporate-entities, marshalling and selling their assets, paying any and all reasonable expenses of the corporate-entities, and equitably distributing any remaining assets, income, or profits between the Plaintiff and Defendants Abbas, Hamid, and Majid;

(b)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(c)    For consequential damages in an amount to be determined at trial;

(d)    For attorneys' fees and costs; and

(e)    For such other and further relief as this Court may deem equitable and just.

## FOURTH COUNT
### (Breach of Fiduciary Duty)

66.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

67.    Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

68.    Pursuant to New York Law, Defendants Abbas, Majid, and Hamid owe Plaintiff, as a minority shareholder of the corporate-defendants, a fiduciary duty to treat all shareholders, majority and minority, fairly.

69.    Pursuant to New York Law, Defendants Abbas, Majid, and Hamid owe Plaintiff, as a minority shareholder of the corporate-defendants, a fiduciary duty to act with candor, prudence, fairness, morality, and honesty of purpose and to exercise good judgment in the management of the corporations.

70.    By virtue of the misconduct set forth herein, Defendants Abbas, Majid, and Hamid breached their fiduciary duty to Plaintiff.

71.    Plaintiff sustained substantial damages as a result of Defendants' breach of their fiduciary duty.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)     For consequential damages in an amount to be determined at trial;

(c)     For attorneys' fees and costs; and

(d)     For such other and further relief as this Court may deem equitable and just.

## FIFTH COUNT
### (Breach of Contract)

72.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

73.     Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements to share equally in the corporate opportunities, investments, and businesses and to include Plaintiff in any business decisions relating thereto. In addition, Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements by failing and/or refusing to provide Plaintiff with any information, accounting, or documentation relating to the substantial funds contributed by Plaintiff to the brothers' business ventures.     Moreover, Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements by failing to include Plaintiff's name and ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, forging Plaintiff's name on certain transfer documents, and forming new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

74.     Plaintiff has sustained substantial damages as a result of Defendants' breaches of the parties written and oral agreements.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)     For compensatory damages in an amount to be determined at trial, but not less

than $25 million, plus accrued interest;

    (b)    For consequential damages in an amount to be determined at trial;

    (c)    For attorneys' fees and costs; and

    (d)    For such other and further relief as this Court may deem equitable and just.

## SIXTH COUNT
### (Fraud)

75.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

76.    As a result of the activities described above, the Defendants falsely represented to Plaintiff that he was a equal partner and owner of the rug businesses and Real Estate Properties and that he was entitled to 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties, issued stock certificates to Plaintiff that were designed to mislead Plaintiff into believing he held an equity ownership of some or all of the corporate-defendants, while, in fact, rendering those stock certificates worthless. In addition, Defendants falsely represented to the public that Plaintiff did not own an interest in the rug businesses or the Real Estate Properties. Moreover, Defendants forged Plaintiff's name on certain transfer documents and other business records and documents.

77.    Each of the above representations was materially false.

78.    The defendants knew that their representations were false and misleading, and intended that Plaintiff would rely on the misrepresentations by contributing and continuing to contribute substantial assets, equity, labor, and funds to the rug businesses and Real Estate Properties.

79.    Plaintiff reasonably relied on the Defendants' false representations to his detriment by contributing and continuing to contribute substantial assets, equity, labor, and funds

to the rug businesses and Real Estate Properties.

80.    The Defendants' actions, collectively, have damaged Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

**SEVENTH COUNT**
**(Conversion)**

81.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

82.    Plaintiff made substantial payments and contributions to the Defendants based upon the Defendants' promises and contractual obligations to maintain Plaintiff's equal partnership and ownership interests in the rug businesses and Real Estate Properties and to share with Plaintiff 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties.

83.    Defendants accepted Plaintiff's payments and contributions but have failed and/or refused to maintain Plaintiff's equal partnership and ownership interests in the rug businesses and Real Estate Properties or to share with Plaintiff 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties.

84.    Defendants have, in effect, stolen Plaintiff's funds and ownership interests.

85.    In unlawfully accepting Plaintiff's contributions and payments, but failing to include Plaintiff as an equal partner and member in the rug businesses and Real Estate Properties, Defendants have, without permission or authority, assumed and exercised the rights of ownership over the monies, properties, assets, corporate entities, rents, opportunities, and businesses rightfully belonging to Plaintiff, and converted the same to their own uses and purposes to the exclusion of Plaintiff's ownership rights.

86.    The Defendants' improper exercise of the rights of ownership over the Plaintiffs' monies, properties, assets, corporate entities, rents, opportunities, and businesses is inconsistent with Plaintiff's ownership rights to same and constitutes the unlawful conversion of Plaintiff's property.

87.    As a direct and proximate result, Plaintiff has been damaged by the wrongful acts of the Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

## EIGHTH COUNT
### (Accounting)

88.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

89.    Defendants' have a duty pursuant to the parties written and oral agreements, as well as imposed by law (B.C.L. § 624), to allow Plaintiff to examine, inspect, and receive the corporate-defendants' financial information, including books, records, and accounts.

90.    Defendants have diverted, misappropriated and converted millions of dollars from Plaintiff without accounting for the funds or for Plaintiff's ownership interests in the resulting investments and businesses.

91.    As a result, Defendants owe restitution, reimbursement, and equity payments to Plaintiff in an amount unknown to Plaintiff and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from the Defendants.

92.    Moreover, pursuant to New York law, Defendants are reqruied to provide Plaintiff with "an annual balance sheet, and profit and loss statement, as well as other related business records.

93.    Since the mid-1990s, Defendants had concealed their business activities from Plaintiff and ceased providing Plaintiff with any information or documentation relating to the brothers' business activities, in which Plaintiff is, at the very least, a 25% owner.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)    For an accounting and audit of any and all funds, payments, and contributions made by Plaintiff to any of the Defendants or Defendant-entities;

(b)    For an accounting and audit of all business records, formation and incorporation documents, revenue statements, profit & loss statements, bank records, asset information, rents, loans, debts, and income, relating to, or arising from, any corporation, investment, or business in

which Defendants Abbas, Majid, and/or Hamid has or had an ownership interests, jointly or severally, since 1970;

 (c) For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

 (d) For consequential damages in an amount to be determined at trial;

 (e) For attorneys' fees and costs; and

 (f) For such other and further relief as this Court may deem equitable and just.

### NINTH COUNT
### (Unjust Enrichment)

94. Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

95. By the conduct alleged herein, the Defendants have been and continue to be unjustly enriched at the expense of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

 (a) For an accounting and audit of any and all funds, payments, and contributions made by Plaintiff to any of the Defendants or Defendant-entities;

 (b) For an accounting and audit of all business records, formation and incorporation documents, revenue statements, profit & loss statements, bank records, asset information, rents, loans, debts, and income, relating to, or arising from, any corporation, investment, or business in which Defendants Abbas, Majid, and/or Hamid has or had an ownership interests, jointly or severally, since 1970;

 (b) For compensatory damages in an amount to be determined at trial, but not less

than $25 million, plus accrued interest;

(c)    For consequential damages in an amount to be determined at trial;

(d)    For attorneys' fees and costs; and

(e)    For such other and further relief as this Court may deem equitable and just.

## TENTH COUNT
### (Breach of the Covenant of Good Faith and Fair Dealing)

96.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

97.    Pursuant to the parties' agreements and relationship, Defendants had an affirmative duty of good faith and fair dealing with respect to their relationship with Plaintiff and in connection with the rug businesses and real properties.

98.    By breaching the parties' agreements, by making material misrepresentations and omissions, by converting, diverting, and misappropriating Plaintiff's assets, funds, contributions, and equity, Defendants have breached their obligation of good faith and fair dealing.

99.    As a result of the Defendants' breach of their implied covenant of good faith and fair dealing, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.


**SHAPIRO & CROLAND**
Attorneys for Plaintiff
Habibollah Kermanshah

By: _____
    N. Ari Weisbrot  (NW6029)

411 Hackensack Avenue, 6th Floor
Hackensack, New Jersey 07601
(201) 488-3900


Dated: January 15, 2008