# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

HABIBOLLAH KERMANSHAH,

        Plaintiff,

        v.

ABBAS KERMANSHAH, ABDOLMAJID
KERMANSHAH, a/k/a/ MAJID
KERMANSHAH, ABDOLHAMID
KERMANSHAH, a/k/a HAMID
KERMANSHAH, 263 WEST 30TH INC.,
BANAFSH REALTY, INC., EBRAHIM
REALTY, INC., KERMANSHAH
BROTHERS ORIENTAL RUGS, INC.,
KERMANSHAH ORIENTAL RUGS, INC.,
KERMANSHAH BROTHERS RUGS, INC.,
OVERSEAS PARTNERSHIP CO., INC.,
OVERSEAS PARTNERSHIP COMPANY,
RAHMAN NY, INC., SHERIN WEST 86TH
STREET CORP., SHIREWIL, INC., and
WILSHIRE LIMITED,

        Defendants.

------------------------------------------------------x

    CIVIL ACTION NO.: 08 CV 00409

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

**Phillips Nizer LLP**
666 Fifth Avenue
New York, New York 10103-0074
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................ii

PRELIMINARY STATEMENT........................................................... 1

STATEMENT OF FACTS.................................................................. 6

FACTUAL BACKGROUND............................................................... 6

## LEGAL ARGUMENT

POINT ONE..................................................................................... 15

**DEFENDANTS' MOTION TO DISMISS IS
WITHOUT MERIT AND SHOULD BE DENIED**................................... 15

a.    The Legal Standard for a Motion to Dismiss........................... 15

b.    Plaintiff's Fraud-Based Claims Are Asserted
Within The Applicable Statute of Limitations........................... 17

c.    The Statutes of Limitations Relating to Plaintiff's Claims
For Breach of Contract, Oppression, Dissolution and for an
Accounting Have Not Expired................................................ 25

POINT TWO.................................................................................... 28

**PLAINTIFF'S FRAUD CLAIMS ARE PLEADED
WITH THE REQUISITE PARTICULARITY**....................................... 28

CONCLUSION................................................................................. 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Agent Orange Product Liability Litigation,* 517 F.3d 76 (2d Cir. 2008) ................................6

*Bolt Elec., Inc. v. City of New York,* 53 F.3d 465 (2d Cir. 1995) ....................................15

*Conley v. Gibson,* 355 U.S. 41 (1957) ...............................................................15

*Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991) ...........................15

*Cosmas v. Hassett,* 886 F.2d 8 (2d Cir. 1989) .......................................................15

*Department of Economic  Development v. Arthur Andersen & Co. (U.S.A.),* 747 F. Supp. 922 (S.D.N.Y. 1990) ................................................................................18, 24

*In re Global Crossing Ltd. Securities Litigation,* 313 F.Supp.2d 189 (S.D.N.Y. 2003) .........20, 21

*Harrison v. Rubenstein,* 2007 WL 582955 (S.D.N.Y. 2007) ....................................19, 22

*In re Integrated Resources Real Estate Limited Partnerships Securities Litig.,* 815 F.Supp. 620 (S.D.N.Y.1993) ................................................................................20

*Klein v.  Spear, Leeds and Kellogg,* 309 F. Supp. 341 (S.D.N.Y. 1970) .......................21

*Miller v. American Export Lines, Inc.,* 313 F.2d 218 (2d Cir. 1963) ...............................6

*Newman v. Warnaco Group, Inc.* 335 F.3d 187 (2d Cir. 2003) ...............................19, 22

*Pavia v. 1120 Ave. of the Americas Associates,* 901 F. Supp. 620 (S.D.N.Y. 1995) .............18, 24

*Sheppard v. Beerman,* 18 F.3d 147 (2d Cir. 1994) ...................................................15

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) ................................................16

*Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992) *quoting Ricciuti v. New York City Transit Auth.,* 941 F.2d 119 (2d Cir. 1991) ..........................................................15

## STATE CASES

*Bernstein v. Kelso & Co.,* 231 A.D.2d 314, 659 N.Y.S.2d 276 (1st Dept. 1997) ..........................29

*Cialeo v. Mehlman,* 210 A.D.2d 67, 619 N.Y.S.2d 276 (1st Dept. 1994) .......................................25

*Doe v. Holy See [State of Vatican City],* 17 A.D.3d 793, 794 (3rd Dept. 2005) ...........................19

*DeVito v. New York Cent. System,* 22 A.D.2d 600, 257 N.Y.S.2d 895 (1st Dept. 1965) ..............21

*Erbe v. Lincoln Rochester Trust Co.,* 3 N.Y.2d 321, 165 N.Y.S.2d 107 (1957) ...........................21

*Fromer v. Fromer,*17 Misc.3d 1106( 851 N.Y.S.2d 58 (N.Y. Sup. 2007) ........................................26

*General Stencils, Inc. v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337 (1966)................................25

*Gleason v. Spota,* 194 A.D.2d 764, 599 N.Y.S.2d 297 (2nd Dept. 1993) ......................................25

*Jered Contr. Corp. v. New York City Trans. Auth.,* 22 N.Y.2d 187, 292 N.Y.S.2d 98
(1968).......................................................................................................................................29

*Kaufman v. Cohen,* 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dept. 2003)............................21, 29

*Lieberthal v. Agency Ins. Brokers Inc.,* 216 A.D.2d 816, 628 N.Y.S.2d 885 (3rd Dept.
1995) .......................................................................................................................................25

*Pahlad v. Brustman,* 8 N.Y.3d 901, 902 (2007) ...........................................................................19

*Petrou v. Karl Ehmer Intern. Foods, Inc.,* 167 A.D.2d 338, 561 N.Y.S.2d 487 (2nd Dept.
1990) .......................................................................................................................................24

*Ponterio v. Kaye,* 25 A.D.3d 865, 868 (3rd Dept. 2006) ..............................................................19

*Prichard v. 164 Ludlow Corp.* 854 N.Y.S.2d 53 (1st Dept. 2008)................................................24

*Putter v. North Shore Univ. Hosp.,* 7 N.Y.3d 548, 552-553 (2006) ..............................................19

*Rizk v. Cohen,* 73 N.Y.2d 98, 538 N.Y.S.2d 229 (1989) .........................................................18, 25

*Simcuski v. Saeli,* 44 N.Y.2d 442 (1978) ......................................................................................19

*Szajna v. Rand,* 131 A.D.2d 840, 517 N.Y.S.2d 201 (2nd Dept. 1987) ........................................25

*Tydings v. Greenfield, Stein & Senior, LLP,* 43 A.D.3d 680, 843 N.Y.S.2d 538 (1st Dept.
2007) .......................................................................................................................................26

*Weisl v. Polaris Holding Co.,* 226 A.D.2d 286, 641 N.Y.S.2d 288 (1st Dept. 1996) .............18, 25

*Zumpano v. Quinn,* 6 N.Y.3d 666, 674 (2006) ..............................................................................19

## STATUTES

Fed.R.Civ.P. *12(b)(6)*.....................................................................................................................15

N.Y. B.C.L. § 1104-a.........................................................................................................................5

## MISCELLANEOUS

*CPLR* 213(8)   ..............................................................................................17, 18

## FEDERAL RULES OF CIVIL PROCEDURES

Rule 9(b)   ..............................................................................................28

Rule 11   ..............................................................................................2

Rule 12   ..............................................................................................6

Rule 15(a)   ..............................................................................................6

1040158.TOA

## PRELIMINARY STATEMENT[1]

Defendants' motion to dismiss Plaintiff's Complaint based upon the various statutes of limitation reflects either a disingenuous selective reading of the Complaint, or a callous disregard for the undisputed facts of this matter. At a minimum, the Defendants have filed this motion woefully prematurely without having had the benefit of a careful review of the underlying facts.

One brief example will suffice. In his Complaint, Plaintiff alleges that he provided millions of dollars in capital to the defendants over the years, in order to purchase and acquire the subject real properties and to sustain the brothers' rug businesses. It is a critical fact that forms the basis for many of Plaintiff's claims. In their motion to dismiss, however, Defendants claim that "the court will learn that Plaintiff's claimed contributions to his brothers' business is completely false and, that, indeed, his brothers have supported Plaintiff and his children during his deeply troubled life." (Def. Mem. of Law, p. 1). One side is clearly being untruthful, and logic would indicate that it is a knowing and intentional deception being presented to the Court by either Plaintiff or the Defendants.

In fact, Plaintiff offers the Court numerous checks (a sampling of which are attached as Exhibit A to the First Amended Complaint) which unequivocally establish the substantial contributions made by Plaintiff to the Defendants' businesses over the years. Similarly, Plaintiff has provided the Court with a check that demonstrates the Plaintiff paid $170,000 of his own money to purchase one specific Property (Exhibit C to the First Amended Complaint) which the

---

[1] Defendants' motion seeks the dismissal of the original complaint which has now been amended and superseded. Defendants' motion is, therefore, moot and should not be considered by the Court. Upon review of the First Amended Complaint, Defendants will, of course, maintain the right to file a brand new motion based on the amended pleading. Nevertheless, out of an abundance of caution, Plaintiff submits this opposition to the Defendants' instant application. (A true copy of the First Amended Complaint and Jury Demand, without exhibits, is attached to the Declaration of N. Ari Weisbrot).

1

Defendants transferred to their own corporate entity by forging Plaintiff's name on the deed. Plaintiff undisputedly paid for the property and now it has been stolen from him with the secret recording of a forged deed. Moreover, Plaintiff offers the Court resolutions adopted by the Defendants over the years acknowledging the substantial financial contributions made by Plaintiff to Defendants. (Minutes of a Special Meeting of the Board of Directors of KBOR are attached as Exhibit E to the First Amended Complaint). One of those resolutions states that Defendants acknowledge:

> the Note issued by the Corporation [KBOR] to Plaintiff in the total principal sum of $456,590. . . [and that] since 1983 the Corporation had obtained advances from Plaintiff in the additional amount of $56,000. Thus the total indebtedness of the Corporation to Plaintiff was $512,590.

Thus, the documentary evidence clearly and without any possible dispute demonstrates the knowing falsity of Defendants' assertion that "Plaintiff's claimed contributions to his brothers' business is completely false and, that, indeed, his brothers have supported Plaintiff and his children during his deeply troubled life." Had the Defendants made such a representation in the course of discovery or at trial it would have been perjurious and worthy of Rule 11 sanctions. Defendants will likely claim that the falsity of their "factual" allegations should have no bearing on the court's consideration of the motion to dismiss. But, as shall be demonstrated below, the improper, deceptive, and fraudulent nature of the Defendants' conduct is precisely the issue before the Court. The Defendants will say virtually anything, regardless of its veracity, to avoid responsibility for their misconduct   It is a strategy that allowed them to deceive Plaintiff for many years into believing he was a partner in the many businesses when, in fact, Defendants were diverting and misappropriating Plaintiff's investments.

The fundamental fallacy lies in Defendants' distortion of the allegations of the Complaint. It is true that the Complaint does not allege any misconduct within the last six years.

2

However, as the First Amended Complaint makes clear, Defendants actively and deliberately concealed their activities from Plaintiff. They forged documents (First Amended Complaint, Exhibit B), they consistently misrepresented their business operations (First Amended Complaint, ¶¶ 43-58), they issued stock certificates in Plaintiff's name (First Amended Complaint, Exhs. D, F, G). Indeed, until late 2006, the Defendant made payments to Plaintiff and his family, purportedly representing Plaintiff's "share" of the business. (First Amended Complaint, ¶¶ 43-58). Through late 2006, each individual defendant, Abbas, Majid and Hamid, on multiple occasions, confirmed Plaintiff's equal ownership interests in the rug businesses and real properties. (Id.) Defendants controlled the books and records of the corporate defendants and, therefore, were able to manipulate the information available to Plaintiff (and the state and federal governments). Defendants, until at least 2005, filed and paid Plaintiff's personal taxes and his New Jersey property taxes, mortgage, maintenance, credit card bills. (First Amended Complaint, ¶ 49). These acts were not the Defendants' unselfish "support of Plaintiff during his deeply troubled life." Instead, they were presented to Plaintiff as his return on his now undisputable investment - - his share of the businesses. Defendants, pursuant to their nefarious scheme, actively led Plaintiff to believe he was a partner in the businesses, both in word and in deed, thereby giving him no reason to know of Defendants' fraud. Moreover, the deception and concealment continued through, at least, 2006 and was only discovered in 2007. (First Amended Complaint, ¶¶ 59-61).

Moreover, it is undisputed that in January 2001, Defendants forged Plaintiff's name on a deed transferring real property from an entity in which Plaintiff had an ownership interest to an entity in which he had no interest. (First Amended Complaint, Exh. B). It is also, for the purposes of this motion, undisputed that Plaintiff only discovered the fraud in 2007.

3

Defendants' spin? "By May 2001, that sale had been recorded with the Office of the City Registrar of New York City." (Def. Mem. of Law, p. 4). In other words, completely distorting the applicable law, Defendants contend that, because the forged deed had been secretly recorded, Plaintiff had - - not a mere suspicion - - but a reason to believe that it was "probable" that a fraud had been committed. On the other hand, it is difficult to imagine how often a typical, reasonable landowner, particularly one living abroad, runs to the County Clerk just to check whether someone forged their name on the deed in an effort to steal their property. Probably not that often. Contrary to Defendants' twisted argument, logic (and the law) dictate that a Plaintiff need not perpetually seek out any and all conceivable evidence that fraud has _not_ been committed just to be legal protected when a fraud _is_ committed. Instead, he needs a reasonable basis to believe that a fraud had, in fact, been committed. From a legal perspective, the secret registration of a forged deed means nothing. And, yet, it is precisely these arguments that constitute Defendants' motion to dismiss.

It would be quite a distortion of law to conclude that a party's successful concealment of its fraudulent activities for six (6) years would somehow justify a dismissal on statute of limitations grounds, merely because the complaint fails to allege any wrongdoing in the previous six (6) years!

Furthermore, Defendants deliberately gloss over the distinction between the rug businesses and the real estate properties. The allegation relating to the failure to provide documents after the mid 1990s related solely to the rug businesses. There was never documentation relating to the real properties other than the acquisition documents. Those documents were filed decades ago in the name of corporate entities in which Plaintiff was led to believe he had an interest. Indeed, Defendants issued Plaintiff stock certificates for these entities!

4

For the subsequent decades, there was simply no documents or reports that Plaintiff expected to see. Plaintiff had no reason to know that Defendants had excluded or diverted Plaintiff's ownership interests in the real properties.

On the other hand, prior to the 1990s, Defendants provided periodic updates about the rug business - - not about the real properties. After the 1990s, they ceased providing the documentary information and, instead, continued to offer explanations and representations about the status of the rug businesses - - in which it is undisputed that Plaintiff is an owner. Plaintiff had no reason to believe the representations or explanations were false.

Finally, Defendants' argument with respect to the B.C.L. § 1104-a claims are frivolous on their face. As a shareholder in the defendant-entities, Plaintiff is _always_ entitled to an accounting - - as a matter of law. Perhaps not to information more than six (6) years old, but to assert that Plaintiff has forever waived his statutory right to a current accounting simply because he did not ask for one -- or need one – for more than six (6) years is without any legal support.

Similarly, Plaintiff's claim of shareholder oppression and for dissolution arises from claims that occurred or accrued within the last six (6) years and from claims that pre-date the last six (6) years. With respect to the former, the claims are clearly timely. With respect to the latter, the fact that Plaintiff did not know about the oppression for more than six (6) years can hardly justify a statute of limitations defense for it would encourage wrong-doers to hide their oppressive conduct for six (6) years and then they are home-free. Moreover, the wrongdoing - - i.e. oppressing Plaintiff - - happened as recently as yesterday when Defendants failed to offer Plaintiff any profit, income, or revenue from his investments. The oppression happened this entire year when Defendants presumably took money out of the real properties but failed to provide Plaintiff with his share of the income. The oppression happened for the last six (6) years

5

and beyond when Defendants failed to allow Plaintiff to participate in the management and decision-making of the corporate-defendants - - a right he maintains as long as he is an owner. Absent injunctive relief, the oppression will happen whenever the real properties are sold, refinanced, encumbered, or otherwise transferred. These acts of oppression occur every day. The fact that Plaintiff did not know about them until recently hardly serves as a waiver of his ownership rights. It is without dispute that Defendants have failed to provide these rights to Plaintiff - - even for the last six years - -and, therefore, the statute of limitations does not apply.

<div align="center">

## STATEMENT OF FACTS

</div>

The Statement of Facts is derived from the First Amended Complaint. [2]

<div align="center">

## FACTUAL BACKGROUND

</div>

### The Kermanshah Brothers' Rug Businesses

Plaintiff Habib and Defendants Abbas, Majid, and Hamid are brothers, born in Iran, but naturalized as United States' Citizens. (First Amended Complaint, ¶ 20).

In or about 1971, the two older brothers, Plaintiff Habib and Defendant Abbas opened "Kermanshah Rugs," a rug store in Tehran, Iran. By agreement, the meager profits generated were split evenly between Abbas and Habib. (First Amended Complaint, ¶ 21).

Shortly after opening Kermanshah Rugs, Abbas relocated to the United States and opened a Persian rug store, "Houbas Oriental Rugs," with funds taken from Kermanshah Rugs, jointly owned with Plaintiff. By agreement, all expenses, costs, losses, revenue, profit, and income generated by Houbas, or its successor, "Kermanshah Brothers Oriental Rugs,"

---

[2] A party may amend his pleading once as a matter of course at any time before a responsive pleading is served. *Rule 15(a)*, F.R.Civ. P. A motion to dismiss a complaint under *Rule 12* is not a responsive pleading within the Rule permitting amendment as of right. *In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 104 (2d Cir. 2008); *Miller v. American Export Lines, Inc.*, 313 F.2d 218 (2d Cir. 1963).

<div align="center">6</div>

("KBOR") were spilt evenly between Abbas and Plaintiff. (First Amended Complaint, ¶ 22).

During the 1970s, Plaintiff Habib supplied rugs from Iran to Abbas in the United States for sale through Houbas, or its successor, KBOR. Revenue from KBOR was used by Habib and Abbas to support the entire family, including their parents and younger brothers, Defendants Majid and Hamid, who had no source of income of their own. (First Amended Complaint, ¶ 23).

In or about 1974, younger brother, Defendant Majid, emigrated from Iran to the United States. (First Amended Complaint, ¶ 24).

In or about 1978, Plaintiff Habib and Defendant Abbas relocated from Iran to Saudi Arabia, thereby expanding their business operations to include Saudi Arabia. Plaintiff and Abbas imported and sold Persian Rugs in Saudi Arabia and the United States. The businesses were profitable and income from operations in the United States and Saudi Arabia were shared equally between Plaintiff and Abbas, who continued to support their younger brothers. (First Amended Complaint, ¶ 25).

In the late 1970s and early 1980s, younger brothers, Defendants Majid and Hamid immigrated to the United States and were given jobs running the brothers' New York business operations. (First Amended Complaint, ¶ 26).

For the most part, the profit and income generated by Plaintiff Habib and Defendant Abbas in Saudi Arabia, a vast majority of which was generated by Habib, was sent to the United States to support Majid and Hamid. (First Amended Complaint, ¶ 27).

During the early 1980s, KBOR's Saudi Arabian business expanded, while the American business generated barely sufficient revenue to cover the brothers' business and living expenses. Plaintiff, and to a lesser extent Abbas, was supporting Majid and Hamid. (First Amended Complaint, ¶ 28).

7

Thereafter, during the 1980s and 1990s, Plaintiff Habib sent a vast majority of his revenue and income to his brothers in the United States, who, in turn, used the money to invest in real estate in New York. (True copies of a sampling of Plaintiff's checks are collectively attached to the First Amended Complaint as Exhibit A). (First Amended Complaint, ¶ 29).

Notwithstanding the fact that a vast majority of funds used to acquire the New York real properties was supplied solely by Plaintiff, and little, if any, capital was contributed by Majid and Hamid, the four brothers agreed that any and all investments would be shared equally between the four brothers, Plaintiff Habib, and Defendants Abbas, Majid, and Hamid, and each would have an equal ownership interest in all of the corporate entities organized for the purposes of acquiring the real estate properties. The brothers further agreed that all expenses, costs, revenue, income, and losses generated by the rug businesses and the real estate investments would be shared equally by the brothers. (First Amended Complaint, ¶ 30).

Plaintiff Habib became a resident of the United States in 1990 and a citizen in 1997, but he and Abbas continued to conduct the brothers' Saudi Arabian operations. Majid and Hamid were given day-to-day management responsibilities for the brothers' investments and were charged with overseeing the New York business operations. (First Amended Complaint, ¶ 31).

**The Real Estate Investments**

During the late 1970s, 1980s, and 1990s, using mostly Plaintiff's money, and consistent with the brothers' agreement, Defendants Abbas, Majid, and Hamid formed various corporate entities, through which they acquired various real properties in New York City (collectively, the "Real Estate Properties"). (First Amended Complaint, ¶ 32).

In or about 1987, Plaintiff Habib and Defendants Abbas and Hamid, formed Overseas Partnership Company for the purposes of acquiring a residential building on real property located

8

at 41 Monroe Street, New York, New York 10002. Habib, Abbas, and Hamid were equal partners in the Partnership and, therefore, had an equal ownership in the Monroe Street building. (First Amended Complaint, ¶ 36). In or about 2000, without obtaining Plaintiffs' permission or consent, Defendants Abbas, Majid, and Hamid, formed Overseas Partnership Co., Inc., a corporate entity deceptively formed with a name similar to the Partnership, but in which Plaintiff had no interest or rights, and transferred the Monroe Street property from the Partnership to the newly-formed corporate entity. In doing so, the Defendants forged Plaintiff's name on the deed and transfer documents. (A true copy of the forged deed is attached to the First Amended Complaint as Exhibit B). Plaintiff, however, much like the rest of the Real Estate Properties, provided the entire capital for the acquisition of the Monroe Street property, which has now been stolen by the Defendants.[3] (A true copy of Plaintiff's payment check for the Monroe Street property is attached to the First Amended Complaint as Exhibit C). (First Amended Complaint, ¶ 37).

Defendants issued stock certificates to Plaintiff memorializing his ownership interests in some or all of the Real Estate Properties. (True copies of Plaintiff's stick certificates are collectively attached to the First Amended Complaint as Exhibit D). (First Amended Complaint, ¶ 42).

**Defendants' Fraudulent Scheme**

After Plaintiff continued to fund the Defendants' operations and expenses, Abbas, Majid, and Hamid began a systematic fraudulent scheme to convert and deprive Plaintiff of his

---

[3] Defendants signed Plaintiff's name on the Deed, as "Attorney in fact, said Power of Attorney is to be recorded simultaneously herewith." Nevertheless, no such documents were simultaneously (or ever) recorded by Defendants. Moreover, Plaintiff never executed a Power of Attorney authorizing the Defendants to execute a deed or transfer property on his behalf and, in any event, any limited, pre-existing Powers of Attorney had long expired.

9

ownership interests in the various corporate entities, including the rug companies that he co-founded and built into successful companies. While it is unclear when the scheme began, it lasted until 2007 when Plaintiff finally discovered the Defendants' fraud. (First Amended Complaint, ¶ 44).

Thus, Plaintiff much later learned that Abbas, Majid, and Hamid had falsely advised the Saudi royal family that Plaintiff has no interest in KBOR and did not speak for the company. (First Amended Complaint, ¶ 45).

Defendants controlled the books and records of the corporate defendants and, therefore, were able to manipulate the information available to Plaintiff. Throughout the relevant period, and as recently as late 2006, Abbas, Majid, and Hamid each represented to Plaintiff, on multiple occasions, that Plaintiff was an equal owner of the rug businesses and the Real Estate Properties. These representations occurred by telephone between each and all of the Defendants, on the one hand, and Plaintiff on the other hand, and in person in the Defendants' New York offices, and in Saudi Arabia between Abbas and Plaintiff, and in the brothers' lawyer's offices, and in written documents provided by each of the Defendants to Plaintiff. The representations occurred on a regular and frequent basis - - virtually every time the brothers communicated - - through late 2006. (First Amended Complaint, ¶ 46).

For example, in a conversation between the brothers at their New York offices, as recently as 2006, Majid and Hamid confirmed that any issues between Abbas and Plaintiff in Saudi Arabia had no relationship or impact on the brothers' American businesses, which were distinct and separate from Abbas and Plaintiff's Saudi operations. In that conversation, Majid and Hamid, again, confirmed Plaintiff's ownership interest in the rug businesses and Real Estate Properties. (First Amended Complaint, ¶ 47). Indeed, in a telephone conversation between

10

Defendant Majid and members of Plaintiff's family in February 2008, Majid requested that Plaintiff withdraw this lawsuit and, once again, confirmed Plaintiff's equal ownership of the rug businesses and Real Estate Properties but suggested that the businesses had been established with the intention of allowing the four brothers' children to benefit from the proceeds of the joint businesses. Thus, Defendants' false representations continued as recently as this year. (First Amended Complaint, ¶ 48).

In addition, until late 2006, the Defendants made payments to Plaintiff and his family, purportedly representing Plaintiff's "share" of the business. Defendants, until at least 2005, filed and paid Plaintiff's personal taxes and his New Jersey property taxes, mortgage, maintenance, credit card bills. These payments were presented to Plaintiff as his return on his investment - - his share of the businesses. (First Amended Complaint, ¶ 49).

Defendants, pursuant to their nefarious scheme, actively led Plaintiff to believe he was a partner in the businesses, both in word and in deed, thereby giving him no reason to know of Defendants' fraud. (First Amended Complaint, ¶ 50).

In fact, Abbas, Majid, and Hamid, in effect, either never registered Plaintiff's ownership interests in some or all of the corporate-entities or erased any evidence of Plaintiffs' ownership in some or all of the rug businesses and Real Estate Properties, including a notable "special meeting" of the board of directors of KBOR, wherein they acknowledged Plaintiff's "loans" to the Company. In exchange for the loans, Abbas, Majid, and Hamid, offered Plaintiff 160 of 200 shares in KBOR and, effectively, "eliminated" the brothers' substantial debt to Plaintiff. (A true copy of the minutes from the March 5, 1984 meeting of KBOR's board of directors is attached to the First Amended Complaint as Exhibit E. A true copy of Plaintiff's KBOR stock certificate is attached to the First Amended Complaint as Exhibit F). (First Amended Complaint, ¶ 51).

11

Almost immediately after fraudulently eliminating the debt to Plaintiff by offering him shares in KBOR, Abbas, Majid, and Hamid, founded a new corporate entity - - Kermanshah Oriental Rugs, Inc. ("KOR"), deliberately named in a manner to blur the relationship with KBOR - - and transferred all of KBOR's assets, business, funds, and operations from KBOR to KOR, thus leaving Plaintiff with 160 shares in a worthless company, and no valid debt to recover in exchange for his substantial investments in and funding of the rug and real estate businesses in the United States. (First Amended Complaint, ¶ 52).

Eventually, Abbas, Majid, and Hamid, issued a insignificant minority ownership interest in KOR to Plaintiff but represented to Plaintiff that his interest in KOR was intended to be combined with his interests in KBOR to equal his overall 25% interest in the combined rug businesses. (A true copy of Plaintiff's KOR stock certificate is attached to the First Amended Complaint as Exhibit G). Defendants did not advise Plaintiff, nor could he have known, however, that his interests in KBOR were rendered worthless by Defendants' fraud, leaving Plaintiff with an insignificant ownership interest in the overall rug businesses. Nevertheless, until, at least, late 2006, Defendants continued to point to the worthless stock certificate in KBOR as evidence of Plaintiff's equal ownership interests, while concealing the fact that they had, in fact, converted such interests. Shortly thereafter, the Defendants formed yet another entity, Kermanshah Brothers Rugs, Inc. ("KBR") designed to, once again, further erode Plaintiff's ownership interests in the rug businesses. (First Amended Complaint, ¶ 53).

Defendants' shell game has, in effect, left Plaintiff with an uncertain interest in the rug and real estate businesses for which he provided millions of dollars in funding and contributed most, if not all, of the sweat equity by building up the businesses, earning substantial revenue, and then sending that revenue to Abbas, Majid, and Hamid based on their agreement and

12

promise to share all proceeds and profits from the rug businesses and Real Estate Properties. (First Amended Complaint, ¶ 54).

Abbas, Majid, and Hamid fraudulently converted Plaintiffs ownership interests in the rug businesses and Real Estate Properties. (First Amended Complaint, ¶ 55).

Although initially, the Defendants forwarded one-time stock certificates, and periodic bank records, and other financial or business records to Plaintiff relating to the rug businesses, the practice of sharing occasional information and documentation ebbed in the mid-1990s. Nevertheless, the practice of updating Plaintiff as to the rug businesses and other investments and making repeated representations that Plaintiff was an equal owner of the rug businesses and Real Estate Properties continued until as recently as late 2006. (First Amended Complaint, ¶ 56).

Indeed, during Plaintiff's visits to the United States - - up to late 2006, Defendants regularly showed Plaintiff the healthy inventory in the rug businesses and the occupied units in the Real Estate Properties, and re-affirmed Plaintiff's ownership interests in the businesses. (First Amended Complaint, ¶ 57).

Thus, since the mid-1990s and through late 2006, Defendants had concealed their business activities from Plaintiff in which Plaintiff is, at the very least, a 25% owner. (First Amended Complaint, ¶ 58).

**Plaintiff's Discovery of Defendants' Misconduct**

Until the mid-2000s, Plaintiff had no knowledge, nor was there any reasonable basis for him to believe, that his brothers had excluded Plaintiff from his rightful ownership interests in the rug businesses or the Real Estate Properties. (First Amended Complaint, ¶ 59).

In or about 2006, Plaintiff discovered - - for the very first time, that Defendant Abbas had unlawfully diverted corporate assets from a joint account maintained in Saudi Arabia relating to

13

the Saudi rug business of Plaintiff and Abbas. In addition, Plaintiff discovered that Defendant Abbas had been collecting Saudi receivables and depositing them into a personal account, to the exclusion of Plaintiff's rights. Thus, Plaintiff commenced a lawsuit in Saudi Arabia relating exclusively to the brothers' Saudi operations and finances. (First Amended Complaint, ¶ 60).

In or about 2007, in the course of litigating the Saudi Arabian lawsuit against Defendant Abbas, relating solely to Plaintiff's and Abbas's Saudi business, Plaintiff began to audit all of this business interests, including those in the United States. In the process, Plaintiff reviewed public documents relating to the rug businesses and real properties but even those documents do not disclose membership interests, ownership shares, or any of the elements that might shed light on Defendants' wrongdoing. Plaintiff did, however, discover that in 2001, Defendants had forged Plaintiffs name on a deed transferring one of the Real Estate Properties from an entity in which he held an ownership interest to an entity in which he did not own a membership interest. (First Amended Complaint, Exhibit B). This revelation, in 2007, was the first time that Plaintiff had any reason to believe that the Defendants had taken steps to divert his ownership interests in the American rug businesses and New York Real Estate Properties that he had financed. Although most of the documentation evidencing the fraud is in defendants' exclusive possession, the documents that were recovered gave rise to Plaintiff's reasonable suspicion that the Defendants have defrauded Plaintiff and breached their agreement to jointly own the rug businesses and Real Estate Properties. (First Amended Complaint, ¶ 61).

14

# LEGAL ARGUMENT

## POINT ONE

### DEFENDANTS' MOTION TO DISMISS IS WITHOUT MERIT AND SHOULD BE DENIED

a.    The Legal Standard for a Motion to Dismiss

On a motion to dismiss under Fed.R.Civ.P. *12(b)(6)* "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995). A district court "should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir. 1992) *quoting Ricciuti v. New York City Transit Auth.,* 941 F.2d 119 (2d Cir. 1991).

For purposes of a motion to dismiss, a "complaint" is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, *see Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989), and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-48 (2d Cir. 1991).

In addressing a *Rule* 12(b)(6) motion to dismiss for failure to state a claim., the court must "accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." *Id.* A complaint should not be dismissed on the pleadings unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

15

In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), the United States Supreme Court emphasized that at the pleading stage a plaintiff must meet no more rigorous a burden than that found in Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See id.* at 512. *Swierkiewicz* is, without question, a potent reminder of a plaintiff's pleading burden. A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 513 (quoting *Conley v. Gibson,* 355 U.S. 41 (1957)). Dismissal is improper on technical pleading irregularities, which are excusable "as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party." *Id.*

Here, it is not disputed, nor do Defendants assert, that the Amended Complaint asserts viable and sustainable causes of action. Instead, the Defendants merely assert that any such claims are time-barred by operation of the Statute of Limitations. Clearly, this assertion is frivolous on its face. Putting aside the many false statements thrown in Defendants' motion for good measure, the fact remains that Plaintiff claims - - with ample support from the record - - that he did not know of Defendants' misconduct until, the earliest, 2007. (First Amended Complaint ¶¶ 59-61). The only question, therefore, before the Court is whether Plaintiff reasonably should have known of the fraud more than six (6) years ago. As set forth below, at a minimum, the inquiry of whether Plaintiff "should have known" is a question of fact that can not be decided on a motion to dismiss or even a motion for summary judgment. Moreover, the overwhelming and, as yet undisputed, evidence at this early stage, demonstrates the extent to which Defendants went to conceal their fraud and "cover their tracks." It is black-letter law in this District and in the state of New York that such concealment, by itself, operates to toll any applicable statutes of limitation.

16

b.    <u>Plaintiff's Fraud-Based Claims Are Asserted within the Applicable Statute of Limitations</u>

It is clear that the gravaman of Plaintiff's claims against the Defendants sound in fraud and misrepresentation. The Defendants fraudulently induced Plaintiff to send them millions of dollars on the promise that he would be an equal partner and owner in the rug businesses and Real Estate Properties. Nevertheless, the Defendants fraudulently formed corporate entities to acquire the Real Estate Properties and conduct the rug businesses to the deliberate exclusion of Plaintiff's ownership rights. The Defendants forged Plaintiff's name on a deed to effectuate the transfer of real property from an entity in which Plaintiff was an owner to an entity in which he had no ownership interests. The Defendants repeatedly made knowingly false statements, promises, and representations to Plaintiff to conceal their fraud and misconduct. Indeed, over the years - - up to and including within the last six (6) years, each individual Defendant told Plaintiff on multiple occasions that he continued to maintain an equal ownership interest in the rug businesses and the real properties. In furtherance of the fraud, Defendants made periodic payments to Plaintiff or his family under the guise that such payments were a return on Plaintiff's investment - - when in fact, the payments were a smokescreen to keep Plaintiff from discovering the fraud.

Pursuant to well-established New York law, an action based upon fraud must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it. *CPLR* 213(8).

To some degree, the fraud at the heart of Plaintiff's claim occurred within the last six (6) years and, therefore, well within the statute of limitations. Nonetheless, to the extent that the fraudulent conduct occurred prior to six (6) years ago, New York law tolls any limintation period

1040158.1

until the Plaintiff actually knew or could with reasonable diligence have discovered the fraud. The actual timing of the fraud is irrelevant. Thus, oft-repeated statements by Defendants in their motion papers to the affect of "[t]here is not a single allegation of *anything* occurring after January 2002" are nothing more than a red-herring and, despite the rhetoric, are meaningless to the issues currently before the Court. (Def. Mem. of Law, p. 2, emphasis in original). Nothing had to have happened *after* January 2002, as long as earlier events were concealed from Plaintiff until their discovery in 2007. In any event, such statements are rendered moot by the allegations contained in the First Amended Complaint.

Where fraud is the basis of the action, the language of the limitations statute itself provides that the action will not accrue, and the statute will not begin to run until the fraud giving rise to the action is discovered or could have been discovered with reasonable diligence. *CPLR* 213(8). **Even where fraud is not the basis of the action**, fraudulent concealment by the wrongdoer after the accrual of a cause of action, for the purpose of concealing the wrongdoing, may be cause to toll the statute of limitations, sometimes referred to in terms of extending the accrual of the claim or as a form of equitable estoppel. *See, Rizk v. Cohen*, 73 N.Y.2d 98, 538 N.Y.S.2d 229 (1989); *Weisl v. Polaris Holding Co.*, 226 A.D.2d 286, 641 N.Y.S.2d 288 (1st Dept. 1996).

This Court has distinguished the doctrine of equitable tolling by fraudulent concealment from the doctrine of equitable estoppel. *Pavia v. 1120 Ave. of the Americas Associates*, 901 F. Supp. 620 (S.D.N.Y. 1995) (fraudulent concealment applies where the defendant fraudulently concealed the existence of the cause of action; equitable estoppel applies where it is the defendant's affirmative wrongdoing that results in the long delay between the accrual of the cause of action and the institution of the legal proceeding); *see also Department of Economic*

18

*Development v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922 (S.D.N.Y. 1990) (equitable tolling is invoked in cases where the plaintiff is ignorant of the cause of action because of the defendant's fraudulent concealment; equitable estoppel is invoked in cases where the plaintiff knew of the existence of the cause of action, but the defendant's conduct caused the plaintiff to delay in bringing suit).

The doctrine of equitable estoppel will prohibit the defendant from raising a Statute of Limitations defense "'where [the] plaintiff was induced by [the defendant's] fraud, misrepresentations or deception to refrain from filing a timely action'" and "the plaintiff ... reasonabl[y] reli[ed] on the defendant's misrepresentations." *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006), quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (1978); *see also Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552-553 (2006); *Ponterio v. Kaye*, 25 A.D.3d 865, 868 (3rd Dept 2006); *Doe v. Holy See [State of Vatican City]*, 17 A.D.3d 793, 794 (3rd Dept 2005). In order to invoke the doctrine of equitable estoppel, the plaintiff has "to establish that subsequent and specific actions by [the] defendant[ ] somehow kept [him or her] from timely bringing suit." *Zumpano*, 6 N.Y.3d at 674; *see also Pahlad v. Brustman*, 8 N.Y.3d 901, 902 (2007); *Putter*, 7 N.Y.3d at 552; *Doe*, 17 A.D.3d at 794.

In *Harrison v. Rubenstein*, 2007 WL 582955 (S.D.N.Y. 2007), Plaintiff asserted that he diligently investigated the possibility that he was the victim of securities fraud but that he could not confirm the fraud until years after it occurred. In denying Defendants' motion to dismiss based upon the applicable statute of limitations, this Court concluded that the standard to be applied is whether some fraud was "probable, not merely possible." *Quoting Newman v. Warnaco Group, Inc.* 335 F.3d 187, 193 (2d Cir. 2003). Further, the court held,

> since Plaintiffs claim to have exercised diligence after their duty of inquiry
> arose, it is inappropriate at this stage for the Court to determine at what

19

point after January 26, 2001 they should reasonably have known of the fraud they allege. *See In re Integrated Resources Real Estate Limited Partnerships Securities Litig.,* 815 F.Supp. 620, 638 (S.D.N.Y.1993) (holding that the question of whether a plaintiff reasonably exercised due diligence after being placed on inquiry notice of securities fraud is "usually a question of fact for the jury to decide"); *In re Global Crossing Ltd. Securities Litigation,* 313 F.Supp.2d 189, 204 (S.D.N.Y. 2003) ("it is a question of fact for ultimate resolution at trial (or on summary judgment if the factual record permits only one conclusion) whether plaintiffs in the exercise of reasonable diligence would have discovered the facts underlying the present claim more than one year before those claims were asserted").

Here, the Defendant's fraud occurred up to an including late 2006. Defendants continued to make oral representations and assurances relating to Plaintiff's ownership interests through late 2006 and as recently as after this lawsuit was initiated; continued to provide Plaintiff with revenue and alleged "profit" from his investments through late 2006; continued to provide oral updates on the businesses through 2006; and continued to pay Plaintiff's personal taxes and his New Jersey property taxes, mortgage, maintenance, and credit card bills through at least 2005. Thus, the statute of limitations clearly does not preclude Plaintiff's claims that arose less than two years ago.

However, even if the fraud occurred more than six (6) years ago, Plaintiff's complaint is timely because: (1) he only learned of the fraud in 2007; (2) he had no reason to suspect or learn of the fraud until, at the earliest 2006, (3) Plaintiff was ignorant of the cause of action because of the defendants' fraudulent concealment and (4) the defendant's conduct caused the plaintiff to delay in bringing suit.

Plaintiff asserts - - an assertion that for the purposes of this motion must be presumed true - - that he learned of the fraud in 2007 when he was engaged in discovery relating to the Saudi litigation against Defendant Abbas arising solely from discreet and unrelated Saudi business. Thus, the inquiry shifts to a determination of when Plaintiff "could with reasonable diligence

20

have discovered the fraud" and whether Plaintiff's ignorance of the cause of action was due to Defendants' fraudulent concealment.

As a threshold matter, the question of whether Plaintiff reasonably exercised due diligence after being placed on inquiry notice of the Defendants' fraud is "usually a question of fact for the jury to decide." See, *In re Global Crossing Ltd. Securities Litigation,* 313 F.Supp.2d 189, 204 (S.D.N.Y. 2003);

Significantly, in a recent decision, *Kaufman v. Cohen,* 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dept. 2003), the Appellate Division, First Department, reversed a trial court's dismissal of a complaint on statute of limitations grounds, and held that

> In view of plaintiffs' submissions, it was error for the IAS court to rule as a matter of law that they could have, with reasonable diligence, discovered the fraud in 1994. A clear question of fact exists as to whether plaintiffs could reasonably have inferred from the April 1994 letter, or from public documents relating to the foreclosure sale, that a fraud was perpetrated upon them (*id.*). Accordingly, defendants' motion to dismiss the fraud and breach of fiduciary duty claims as time-barred should have been denied.

*Id.* at 123.

Thus, at this early stage, the Court must deny Defendants' motion to dismiss because the single issue - - Plaintiff's constructive notice of the Defendants' fraud - - is a question of fact to be determined by a jury.

Moreover, the weight of the evidence militates against a finding by the Court (or a jury) that Plaintiff was on inquiry notice of Defendants' misconduct. In an action for actual fraud, the discovery that gives rise to accrual of the action for limitations purposes must be discovery of the facts constituting the fraud itself and not those merely constituting evidence of them. *DeVito v. New York Cent. System,* 22 A.D.2d 600, 257 N.Y.S.2d 895 (1st Dep't 1965). Knowledge of the fraudulent act is thus required, and mere suspicions will not constitute a sufficient substitute, *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 165 N.Y.S.2d 107 (1957). *See also Klein v.*

21

*Spear, Leeds and Kellogg,* 309 F. Supp. 341 (S.D.N.Y. 1970) (applying New York law; holding that the plaintiff need only show that he remained in ignorance of the fraud without any fault or want of due diligence or care on his part). The standard to be applied is whether some fraud was "probable, not merely possible." *Harrison v. Rubenstein,* 2007 WL 582955 (S.D.N.Y. 2007), q*uoting Newman v. Warnaco Group, Inc.* 335 F.3d 187, 193 (2d Cir. 2003).

Here, Defendants' motion is based entirely upon Plaintiff's assertion that Defendants stopped sending certain limited documents relating to the rug businesses in the mid-1990s. Clearly, on balance, the ebb in flow of *documentary* information - - information that, by its nature, was never significant with respect to the rug businesses, and was never-existent with respect to the Real Estate Properties, can hardly be said to put Plaintiff on notice that "fraud was probable, not merely possible." What facts were "discovered" by Plaintiff in the 1990s? Is there any indication that Plaintiff had knowledge of the "fraudulent acts" prior to 2007? Quite the opposite: there were not even reasonable suspicions (which, by themselves would not accrue the limitations period) . In the other hand, until <u>late 2006,</u> the Defendant made payments to Plaintiff and his family, purportedly representing Plaintiff's "share" of the business. Through late 2006, each individual defendant, on multiple occasions, confirmed equal ownership interests in the rug businesses and real properties. Defendants controlled the books and records of the corporate defendants and, therefore, were able to manipulate the information available to Plaintiff. Defendants, until at least <u>2005,</u> filed and paid Plaintiff's personal taxes and his New Jersey property taxes, mortgage, maintenance, credit card bills. Visits to New York were met with a "horse and pony show" designed to deceive Plaintiff. Certainly, it cannot be said that Plaintiff was on inquiry notice under these circumstances.

22

Defendants' motion takes a simplistic, inaccurate approach to privately held companies. For example, Defendants demand that Plaintiff, over the years, should have "obtained publicly available information that would have revealed the alleged frauds." (Def. Mem. of Law, p. 13). But, is that true? Of course not. Nothing available to the public would indicate that Plaintiff had been deprived of his ownership interests in the rug businesses or Real Estate Properties. These documents do not identify the members or shareholders of the entities that acquired the Real Estate Properties. In other words, for example, had Plaintiff inquired into the publicly available information about 97 Perry Street, he would have discovered that the Property is owned by Defendant Ebrahim Realty, Inc. and that it was acquired on December 27, 1993, by deed made to Ebrahim. Of what fraud would that have put him on notice? Particularly, when the Court considers that Defendants – as recently as late 2006 - - advised Plaintiff that he was an equal owner in the entities that acquired the Real Estate Properties and was given money purportedly representing income generated by the properties. Defendants' motion has surface appeal but lacks any logical substance. Indeed, it smacks of the same sort of deception and fraud that gave rise to this action. Of course, none of this particularly matters. The issue is not whether Plaintiff inquired of publicly available documents but, rather, whether he had reason to. Here, Plaintiff was receiving income from his investments as recently as late 2006. He was repeatedly reassured by all the defendants that his ownership interests in all the properties and businesses were intact. He was issued stock certificates. His periodic visits to the New York demonstrated that the rug businesses were functioning and fully stocked with inventory and the Real Estate Properties had tenants.

Moreover, it is hornbook law in New York that the statute of limitations is tolled where the Defendants fraudulently concealed the existence of the cause of action or where the plaintiff

23

is ignorant of the cause of action because of the defendant's fraudulent concealment. *See Pavia v. 1120 Ave. of the Americas Associates,* 901 F. Supp. 620 (S.D.N.Y. 1995); *Department of Economic Development v. Arthur Andersen & Co. (U.S.A.),* 747 F. Supp. 922 (S.D.N.Y. 1990); *Petrou v. Karl Ehmer Intern. Foods, Inc.,* 167 A.D.2d 338, 561 N.Y.S.2d 487 (2nd Dept. 1990)

In *Prichard v. 164 Ludlow Corp.* 854 N.Y.S.2d 53 (1st Dept. 2008), a shareholder's derivative action for fraud and conversion, the defendant's motion for dismissal on the basis of limitations was properly denied where the shareholder alleged that the defendant directors conspired and willfully embarked upon a plan designed to defraud and deceive the corporation and its shareholders, and to wrongfully deprived it of its assets, thereby causing its insolvency, and there was no evidence to show that the plaintiff was guilty of a lack of due diligence in the discovery thereof.   The Court in *Prichard* concluded that

> The statute of limitations for fraud applies to causes of action alleging that one party lulled another into sitting on its rights until after the statute of limitations expired. Thus, according plaintiffs the benefit of every possible inference, to wit, that the false representations made by defendants-respondents that lulled plaintiffs into sitting on their rights began in March 2001 and continued through May 2002, plaintiffs' action was timely, since it was commenced within six years of the alleged fraud (CPLR 213[8] ).

*Id.*

Here, Defendants' fraud was not discovered until 2007 precisely because of Defendants' extraordinary efforts to conceal their misconduct and by the very nature of the passive investments themselves.  Thus, Plaintiff's fraud-based claims did not accrue until 2007 and are, therefore, timely as a matter of law.

Similarly, to the extent they arise from Defendants' fraud, Plaintiff's claims for declaratory judgment, breach of fiduciary duty, breach of contract, conversion, and unjust enrichment are all timely as a matter of law.  A party cannot steal someone's property, take

24

affirmative steps to conceal the theft for the duration of the limitations period, and then escape liability as a result of the victim's inability to uncover the conversion during the statutory time period. In the same vein, every day within the last six years, Defendants have recovered rents and other income form the real properties, a portion of which belongs to Plaintiff. By failing to turn these funds over, Defendants have been unjustly enriched at Plaintiff's expense over the relevant period, including within the last 6 years!

c.    The Statutes of Limitations relating to Plaintiff's Claims for Breach
      of Contract, Oppression, Dissolution  and for an Accounting have not Expired

As the courts of this state have repeatedly held, even where fraud is not the basis of the action, fraudulent concealment by the wrongdoer after the accrual of a cause of action, for the purpose of concealing the wrongdoing, may be cause to toll the statute of limitations, sometimes referred to in terms of extending the accrual of the claim or as a form of equitable estoppel. *See, Rizk v. Cohen,* 73 N.Y.2d 98, 538 N.Y.S.2d 229 (1989); *Weisl v. Polaris Holding Co.,* 226 A.D.2d 286, 641 N.Y.S.2d 288 (1st Dept. 1996); *Lieberthal v. Agency Ins. Brokers Inc.,* 216 A.D.2d 816, 628 N.Y.S.2d 885 (3rd Dept. 1995); *Szajna v. Rand,* 131 A.D.2d 840, 517 N.Y.S.2d 201 (2nd Dept. 1987); *Cialeo v. Mehlman,* 210 A.D.2d 67, 619 N.Y.S.2d 276 (1st Dept. 1994); *General Stencils, Inc. v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337 (1966); *Gleason v. Spota,* 194 A.D.2d 764, 599 N.Y.S.2d 297 (2nd Dep't 1993).

It is patent that Plaintiff has demonstrated an irrefutable claim of minority ownership in some of the Defendant entities. The stock certificates and corporate resolutions are *prima facie* evidence of Plaintiff's ongoing ownership interests in, at least some, of the entities, and tend to support Plaintiff's claims of ownership to all of the rug businesses and real properties. The documents supporting the balance of the businesses are exclusively in Defendants' possession and, once discovered, will likely give rise to irrefutable support for all of Plaintiff's claims.

As a shareholder in the corporate defendants, and as a partner in Overseas Partnership Co., which formerly owned the real property located 41 Monroe Street, New York, New York, until Defendants forged Plaintiff's name on the deed, Plaintiff has an absolute right to an accounting of the partnership books and records and of his ownership interests in the corporate entities. *See*, for example, New York Partnership Law § 74 and B.C.L. § 624.

Under New York law, an action for an accounting is governed by a six-year statute of limitations and accrues when the duty to pay arises. *Fromer v. Fromer,* 17 Misc.3d 1106(A), 851 N.Y.S.2d 58 (N.Y. Sup. 2007) In *Tydings v. Greenfield, Stein & Senior, LLP,* 43 A.D.3d 680, 843 N.Y.S.2d 538 (1st Dept. 2007) plaintiff brought an action for an accounting based upon a joint venture between the plaintiff and the defendants. The First Department determined that "claims such as those at issue here accrue when there is either an open repudiation of the fiduciary's obligation or a judicial settlement of the fiduciary's account"

More importantly, it is obvious that, even if Plaintiff's claims for an accounting are subject to a statute of limitations, he is still entitled to an accounting for the last six (6) year period undisputedly within the statute of limitations. For example, presumably, the real properties have generated income and revenue since their acquisitions. Even if Defendants' fraudulent scheme does not toll the statute of limitations, Plaintiff is *still* entitled to an accounting of the revenue and income generated over the last six years.

Similarly, Plaintiff's claims for oppression and dissolution cannot possibly, under any theory, be subject to an expired six (6) year limitation period. Perhaps a minority shareholder can be precluded from pursuing oppression claims relating to acts that occurred six (6) years earlier and of which they knew or should have known. In that case, there may be a waiver of such claims. But, what if, for example, a minority shareholder is subject to a small act of

26

oppression and fails to pursue a claim for 10 years. Subsequently, the minority shareholder is subject to unrelated, more severe acts of oppression. Can it seriously be said that the claim for the second acts of oppression is some how time-barred because no action was taken with respect to the earlier act of oppression? Is a minority shareholder who overlooks an act of oppression at one point, forever required to accept any and all future acts of oppression? Clearly not.

If anything, the only acts of oppression that are subject to the statute of limitations are those that occurred more than six years previously and which were not otherwise fraudulently concealed from the shareholder.

Here, Plaintiff is, today, undisputedly a minority shareholder in, at least, 263 West 30th Inc., KBOR, KOR, Overseas, Shirewel, and Wilshire. He is also a minority shareholder in the balance of the corporate-defendants, but those documents will be subject to discovery from the Defendants in the course of this action.   In any event, as a minority shareholder, the Plaintiff has certain valuable rights and, since late 2006, he has received no income, profit, or revenue from the corporate-entities; he has received no accounting, nor access to information, he has been frozen out of any corporate decision making and, as discovered last year, his ownership interests are being diverted and converted by the Defendants. These acts of oppression either began within the last 2 years (failure to share in profits and income; failure to share information) or were only discovered last year (forgery of corporate documents, and failure to register Plaintiff's interests).

What is the conceivable basis for asserting that Plaintiff, as a minority shareholder, has lost the protection of law, merely because he failed to file legal action more than six years ago - - before much of wrongdoing commenced and certainly during a time that Defendants were actively concealing their misconduct? There is simply no legal authority to support this frivolous argument.

27

Indeed, most of the acts of oppression arise from, or are related to, Defendants' fraud and fraudulent concealment. If, as set forth previously, those claims are timely, certainly the related claims of oppression are also timely.

Finally, and by the same token, Defendants have breached their agreement with Plaintiff to equally share in the profits, revenue, and income of the Defendant-entities. These breaches occurred within the last six (6) years and, depending on what the accounting discloses, may have only begun in 2006! The cause of action is certainly timely as a matter of law.

## POINT TWO

### PLAINTIFF'S FRAUD CLAIMS ARE
### PLEADED WITH THE REQUISITE PARTICULARITY

Defendants also assert that Plaintiff's claims do not satisfy Rule 9(b) (F.R.Civ.P) in that they are not plead with sufficient particularity. Although, it is clear that, to the extent possible, the Complaint offers the who, what, where, and when of the fraudulent misrepresentations, Plaintiff's Amended Complaint provides further particularity to the allegations of fraud. Indeed, the Amended Complaint identifies the parties who made the misrepresentations (Defendants Abbas, Majid, and Hamid), the specific and exact nature of the misrepresentations (Plaintiff's ownership interests in the defendant-entities, the sharing of income, revenue, and profit from the businesses, the forgery of Plaintiff's name on a deed, the financial condition of the businesses, etc.), the general location where the misrepresentations were made (over the phone with Plaintiff in Saudi Arabia, in person at the brothers' offices and at the various real properties, in the brothers' lawyers' offices, etc) and the general time frame in which the misrepresentations were made (repeatedly through late 2006).

Moreover, pursuant to New York law, pleading requirements for fraud should not be interpreted so strictly as to require specificity where "it may be 'impossible to state in detail the

circumstances constituting a fraud.'" (*Bernstein v. Kelso & Co.,* 231 A.D.2d 314, 659 N.Y.S.2d 276 (1st Dept. 1997), quoting *Jered Contr. Corp. v. New York City Trans. Auth.,* 22 N.Y.2d 187, 194, 292 N.Y.S.2d 98 (1968); *Kaufman v. Cohen* 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dept. 2003).

Courts in New York have repeatedly declined to dismiss fraud claims where, as here, "defendants' dismissal motion prevented plaintiffs from obtaining discovery on the precise issues of each defendant's knowledge and intent with respect to [defendant's] concealment of his role in reacquiring an interest in the Falchi Building (*see Bernstein v. Kelso & Co.,* 231 A.D.2d at 321, 659 N.Y.S.2d 276 (1st Dept. 1997). Moreover, it is not unusual in cases involving concealment that a plaintiff will be unable to state the facts constituting fraud in detail since such facts are necessarily "peculiarly within the knowledge of the [defrauding] party" *Jered Contr. Corp. v. New York City Trans. Auth.,* 22 N.Y.2d at 194, 292 N.Y.S.2d 98, 239 N.E.2d 197 (1968).

Thus, to the extent Defendants' motion comes before Plaintiff has had the opportunity to engage in discovery and obtain the very documents that will establish and evidence many of his claims, Defendants' motion to dismiss should be denied. Defendants have taken extraordinary steps to defraud Plaintiff and then to conceal their misconduct. They certainly should not benefit from their deception and concealment by walking away from their fraud without having to, at a minimum, engage in discovery to shed light on their improper actions. In any event, the Amended Complaint clearly satisfies the pleadings requirements of New York law and the Federal Rules of Civil Procedure.

29

## CONCLUSION

For the foregoing reasons, and based upon the facts and legal authority provided, it is respectfully submitted that Defendants' motion to dismiss should be denied in its entirety.


Dated:  New York, New York
April 17, 2008

PHILLIPS NIZER LLP

By: _____
N. Ari Weisbrot


666 Fifth Avenue
New York, New York 10103-0074
(212) 977-9700
*aweisbrot@phillipsnizer.com*

*Attorneys for Plaintiff*

30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HABIBOLLAH KERMANSHAH,<br><br>Plaintiff,<br><br>v.<br><br>ABBAS KERMANSHAH, ABDOLMAJID KERMANSHAH, a/k/a MAJID KERMANSHAH, ABDOLHAMID KERMANSHAH, a/k/a HAMID KERMANSHAH, 263 WEST 30TH INC., BANAFSH REALTY, INC., EBRAHIM REALTY, INC., KERMANSHAH BROTHERS ORIENTAL RUGS, INC., KERMANSHAH ORIENTAL RUGS, INC., KERMANSHAH BROTHERS RUGS, INC., OVERSEAS PARTNERSHIP CO., INC., OVERSEAS PARTNERSHIP COMPANY, RAHMAN NY, INC., SHERIN WEST 86TH STREET CORP., SHIREWIL, INC., and WILSHIRE LIMITED,<br><br>Defendants. | : Civil Action No.: 1:-08-cv-00409-BSJ-AJP<br>: ECF Case<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: **DECLARATION OF**<br>: **N. ARI WEISBROT**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**N. ARI WEISBROT,** hereby declares, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

1.    I am a member of the firm of Phillips Nizer, attorneys for Plaintiff in the above-captioned matter.

2.    I submit this declaration in opposition to Defendants' Motion to Dismiss the Complaint.

3.    Attached hereto as Exhibit A is a true copy of Plaintiff's First Amended Complaint dated April 18, 2008.

1041637.1

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 18, 2008

**PHILLIPS NIZER, LLP**
Attorneys for Plaintiff
Habibollah Kermanshah

By:_____
N. Ari Weisbrot
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700

# EXHIBIT A

N. ARI WEISBROT (NAW6029)
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Plaintiff Habibollah Kermanshah

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HABIBOLLAH KERMANSHAH,<br><br>Plaintiff,<br><br>v.<br><br>ABBAS KERMANSHAH, ABDOLMAJID KERMANSHAH, a/k/a MAJID KERMANSHAH, ABDOLHAMID KERMANSHAH, a/k/a HAMID KERMANSHAH, 263 WEST 30TH INC., BANAFSH REALTY, INC., EBRAHIM REALTY, INC., KERMANSHAH BROTHERS ORIENTAL RUGS, INC., KERMANSHAH ORIENTAL RUGS, INC., KERMANSHAH BROTHERS RUGS, INC., OVERSEAS PARTNERSHIP CO., INC., OVERSEAS PARTNERSHIP COMPANY, RAHMAN NY, INC., SHERIN WEST 86TH STREET CORP., SHIREWIL, INC., and WILSHIRE LIMITED,<br><br>Defendants. | **CIVIL ACTION NO.: 08-CV-00409 (BSJ)**<br>**ECF Case**<br><br><br><br>**FIRST AMENDED COMPLAINT and**<br>**JURY DEMAND** |

Plaintiff Habibollah Kermanshah, by his attorneys, Phillips Nizer LLP, complaining of

defendants Abbas Kermanshah, Abdolmajid Kermanshah, a/k/a Majid Kermanshah, Abdolhamid

Kermanshah, a/k/a Hamid Kermanshah, 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim

Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc.,

Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company, Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., and Wilshire Limited, alleges and says:

## THE PARTIES

1.    Plaintiff Habibollah Kermanshah ("Plaintiff" or "Habib") is an individual with a place of residence located at 100 Winston Drive, Unit 11A, Cliffside Park, New Jersey 07010.

2.    Upon information and belief, defendant Abbas Kermanshah ("Abbas") is an individual with a place of residence located in New York, and a principle place of business located at 57 Fifth Avenue, New York, New York 10003.

3.    Upon information and belief, defendant Abdolmajid Kermanshah, a/k/a Majid Kermanshah ("Majid") is an individual residing at 134 West 86th Street, Apt. 1, New York, New York, 10024.

4.    Upon information and belief, defendant Abdolhamid Kermanshah, a/k/a Hamid Kermanshah ("Hamid") is an individual residing at 217 East 83rd Street, Apt. 2B, New York, New York 10028.

5.    Upon information and belief, Defendant 263 West 30th Inc. ("West 30th") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. 263 West 30th owns a mixed-use building on real property located at 263 West 30th Street, New York, New York 10001.

6.    Upon information and belief, Defendant Banafsh Realty, Inc. ("Banafsh") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Banafsh owns a

2

mixed-use building on real property located at 217 East 83rd Street, New York, New York 10028.

7.     Upon information and belief, Defendant Ebrahim Realty, Inc. ("Ebrahim") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Ebrahim owns a residential building on real property located at 97 Perry Street, New York, New York 10014.

8.     Upon information and belief, Defendant Kermanshah Brothers Oriental Rugs, Inc. ("KBOR") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 290 Fifth Avenue, New York, New York 10001. KBOR is in the business of importing and selling Oriental Rugs.

9.     Upon information and belief, Defendant Kermanshah Oriental Rugs, Inc. ("KOR") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. KOR is in the business of importing and selling Oriental Rugs.

10.     Upon information and belief, Defendant Kermanshah Brothers Rugs, Inc. ("KBR") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 33 East 33rd Street, New York, New York 10016. KBR is in the business of importing and selling Oriental Rugs.

11.     Upon information and belief, Defendant Overseas Partnership Co., Inc. ("Overseas Corp.") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Overseas Corp. owns a residential building on real property located at 41 Monroe Street, New York, New York 10002.

12.     Upon information and belief, Defendant Overseas Partnership Company

3

("Overseas Partnership") is a partnership duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Upon further information and belief, Overseas Partnership, and its single real estate asset, located at 41 Monroe Street, New York, New York, were transferred to Overseas Corp.

13.     Upon information and belief, Defendant Rahman NY, Inc., ("Rahman") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Rahman owns a mixed-use building on real property located at 5 West 31st Street, New York, New York 10001.

14.     Upon information and belief, Defendant Sherin West 86th Street Corp. ("Sherin") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Sherin owns a residential building on real property located at 134 West 86th Street, New York, New York 10024.

15.     Upon information and belief, Defendant Shirewil, Inc. ("Shirewil") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Shirewil owns a mixed-use building on real property located at 57 Fifth Avenue, New York, New York 10003.

16.     Upon information and belief, Defendant Wilshire Limited ("Wilshire") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Wilshire owns a residential building on real property located at 59 Fifth Avenue, New York, New York 10003.

1040973.1

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and, with respect to certain state law claims, 28 U.S.C. § 1367.

18.     Plaintiff is a citizen of the State of New Jersey. All of the Defendants are citizens of the State of New York. Accordingly, there is complete diversity of citizenship for the purposes of 28 U.S.C. § 1332.

19.     Venue is proper under 28 U.S.C. § 1391(a) in that all of the Defendants reside in this District and the cause of action arose in this District.

## FACTUAL BACKGROUND

### The Kermanshah Brothers' Rug Businesses

20.     Plaintiff Habib and Defendants Abbas, Majid, and Hamid are brothers, born in Iran, but naturalized as United States' Citizens.

21.     In or about 1971, the two older brothers, Plaintiff Habib and Defendant Abbas opened "Kermanshah Rugs," a rug store in Tehran, Iran. By agreement, the meager profits generated were split evenly between Abbas and Habib.

22.     Shortly after opening Kermanshah Rugs, Abbas relocated to the United States and opened a Persian rug store, "Houbas Oriental Rugs," with funds taken from Kermanshah Rugs, jointly owned with Plaintiff. By agreement, all expenses, costs, losses, revenue, profit, and income generated by Houbas, or its successor, "Kermanshah Brothers Oriental Rugs," ("KBOR") were spilt evenly between Abbas and Plaintiff.

23.     During the 1970s, Plaintiff Habib supplied rugs from Iran to Abbas in the United States for sale through Houbas, or its successor, KBOR. Revenue from KBOR was used by Habib and Abbas to support the entire family, including their parents and younger brothers,

5

Defendants Majid and Hamid, who had no source of income of their own.

24.     In or about 1974, younger brother, Defendant Majid, emigrated from Iran to the United States.

25.     In or about 1978, Plaintiff Habib and Defendant Abbas relocated from Iran to Saudi Arabia, thereby expanding their business operations to include Saudi Arabia. Plaintiff and Abbas imported and sold Persian Rugs in Saudi Arabia and the United States. The businesses were profitable and income from operations in the United States and Saudi Arabia were shared equally between Plaintiff and Abbas, who continued to support their younger brothers.

26.     In the late 1970s and early 1980s, younger brothers, Defendants Majid and Hamid immigrated to the United States and were given jobs running the brothers' New York business operations.

27.     For the most part, the profit and income generated by Plaintiff Habib and Defendant Abbas in Saudi Arabia, a vast majority of which was generated by Habib, was sent to the United States to support Majid and Hamid.

28.     During the early 1980s, KBOR's Saudi Arabian business expanded, while the American business generated barely sufficient revenue to cover the brothers' business and living expenses. Plaintiff, and to a lesser extent Abbas, was supporting Majid and Hamid.

29.     Thereafter, during the 1980s and 1990s, Plaintiff Habib sent a vast majority of his revenue and income to his brothers in the United States, who, in turn, used the money to invest in real estate in New York. (True copies of a sampling of Plaintiff's checks are collectively attached hereto as Exhibit A).

30.     Notwithstanding the fact that a vast majority of funds used to acquire the New York real properties was supplied solely by Plaintiff, and little, if any, capital was contributed by

6

Majid and Hamid, the four brothers agreed that any and all investments would be shared equally between the four brothers, Plaintiff Habib, and Defendants Abbas, Majid, and Hamid, and each would have an equal ownership interest in all of the corporate entities organized for the purposes of acquiring the real estate properties. The brothers further agreed that all expenses, costs, revenue, income, and losses generated by the rug businesses and the real estate investments would be shared equally by the brothers.

31.    Plaintiff Habib became a resident of the United States in 1990 and a citizen in 1997, but he and Abbas continued to conduct the brothers' Saudi Arabian operations. Majid and Hamid were given day-to-day management responsibilities for the brothers' investments and were charged with overseeing the New York business operations.

**The Real Estate Investments**

32.    During the late 1970s, 1980s, and 1990s, using mostly Plaintiff's money, and consistent with the brothers' agreement, Defendants Abbas, Majid, and Hamid formed various corporate entities, through which they acquired various real properties in New York City (collectively, the "Real Estate Properties").

33.    In or about 1986, Defendants formed 263 West 30th Inc. for the purposes of acquiring a mixed-use building on real property located at 263 West 30th Street, New York, New York 10001.

34.    In or about 1991, Defendants formed Banafsh Realty, Inc. for the purposes of acquiring a mixed-use building on real property located at 217 East 83rd Street, New York, New York 10028.

35.    In or about 1993, Defendants formed Ebrahim Realty, Inc. for the purposes of acquiring a residential building on real property located at 97 Perry Street, New York, New York

7

10014.

36.     In or about 1987, Plaintiff Habib and Defendants Abbas and Hamid, formed Overseas Partnership Company for the purposes of acquiring a residential building on real property located at 41 Monroe Street, New York, New York 10002. Habib, Abbas, and Hamid were equal partners in the Partnership and, therefore, had an equal ownership in the Monroe Street building.

37.     In or about 2000, without obtaining Plaintiffs' permission or consent, Defendants Abbas, Majid, and Hamid, formed Overseas Partnership Co., Inc., a corporate entity deceptively formed with a name similar to the Partnership, but in which Plaintiff had no interest or rights, and transferred the Monroe Street property from the Partnership to the newly-formed corporate entity. In doing so, the Defendants forged Plaintiff's name on the deed and transfer documents. (A true copy of the forged deed is attached hereto as Exhibit B). Plaintiff, however, much like the rest of the Real Estate Properties, provided the entire capital for the acquisition of the Monroe Street property, which has now been stolen by the Defendants.[1] (A true copy of Plaintiff's payment check for the Monroe Street property is attached hereto as Exhibit C).

38.     In or about 1996, Defendants formed Rahman NY, Inc. for the purposes of acquiring a mixed-use building on real property located at 5 West 31st Street, New York, New York 10001.

39.     In or about 1991, Defendants formed Sherin West 86th Street Corp. for the purposes of acquiring a residential building on real property located at 134 West 86th Street, New

---

[1] Defendants signed Plaintiff's name on the Deed, as "Attorney in fact, said Power of Attorney is to be recorded simultaneously herewith." Nevertheless, no such documents were simultaneously (or ever) recorded by Defendants. Moreover, Plaintiff never executed a Power of Attorney authorizing the Defendants to execute a deed or transfer property on his behalf and, in any event, any limited, pre-existing Powers of Attorney had long expired.

8

York, New York 10024

40. In or about 1985, Defendants formed Shirewil, Inc. for the purposes of acquiring a mixed-use building on real property located at 57 Fifth Avenue, New York, New York 10003.

41. In or about 1985, Defendants formed Wilshire Limited for the purposes of acquiring a residential building on real property located at 59 Fifth Avenue, New York, New York 10003.

42. Defendants issued stock certificates to Plaintiff memorializing his ownership interests in some or all of the Real Estate Properties. (True copies of Plaintiff's stock certificates are collectively attached hereto as Exhibit D).

### Defendants' Fraudulent Scheme

43. In 1973, Plaintiff and Defendant Abbas, changed the name of their corporate entity from "Houbas Oriental Rugs," to "Kermanshah Brothers Oriental Rugs." Pursuant to their long-standing agreement, Plaintiff Habib and Defendant Abbas each owned 50% interest in KBOR.

44. After Plaintiff continued to fund the Defendants' operations and expenses, Abbas, Majid, and Hamid began a systematic fraudulent scheme to convert and deprive Plaintiff of his ownership interests in the various corporate entities, including the rug companies that he co-founded and built into successful companies. While it is unclear when the scheme began, it lasted until 2007 when Plaintiff finally discovered the Defendants' fraud.

45. Thus, Plaintiff much later learned that Abbas, Majid, and Hamid had falsely advised the Saudi royal family that Plaintiff has no interest in KBOR and did not speak for the company.

46. Defendants controlled the books and records of the corporate defendants and,

9

therefore, were able to manipulate the information available to Plaintiff. Throughout the relevant period, and as recently as late 2006, Abbas, Majid, and Hamid each represented to Plaintiff, on multiple occasions, that Plaintiff was an equal owner of the rug businesses and the Real Estate Properties. These representations occurred by telephone between each and all of the Defendants, on the one hand, and Plaintiff on the other hand, and in person in the Defendants' New York offices, and in Saudi Arabia between Abbas and Plaintiff, and in the brothers' lawyer's offices, and in written documents provided by each of the Defendants to Plaintiff. The representations occurred on a regular and frequent basis - - virtually every time the brothers communicated - - through late 2006.

47. For example, in a conversation between the brothers at their New York offices, as recently as 2006, Majid and Hamid confirmed that any issues between Abbas and Plaintiff in Saudi Arabia had no relationship or impact on the brothers' American businesses, which were distinct and separate from Abbas and Plaintiff's Saudi operations. In that conversation, Majid and Hamid, again, confirmed Plaintiff's ownership interest in the rug businesses and Real Estate Properties.

48. Indeed, in a telephone conversation between Defendant Majid and members of Plaintiff's family in February 2008, Majid requested that Plaintiff withdraw this lawsuit and, once again, confirmed Plaintiff's equal ownership of the rug businesses and Real Estate Properties but suggested that the businesses had been established with the intention of allowing the four brothers' children to benefit from the proceeds of the joint businesses. Thus, Defendants' false representations continued as recently as this year.

49. In addition, until late 2006, the Defendants made payments to Plaintiff and his family, purportedly representing Plaintiff's "share" of the business. Defendants, until at least

10

2005, filed and paid Plaintiff's personal taxes and his New Jersey property taxes, mortgage, maintenance, credit card bills. These payments were presented to Plaintiff as his return on his investment - - his share of the businesses.

50.    Defendants, pursuant to their nefarious scheme, actively led Plaintiff to believe he was a partner in the businesses, both in word and in deed, thereby giving him no reason to know of Defendants' fraud.

51.    In fact, Abbas, Majid, and Hamid, in effect, either never registered Plaintiff's ownership interests in some or all of the corporate-entities or erased any evidence of Plaintiffs' ownership in some or all of the rug businesses and Real Estate Properties, including a notable "special meeting" of the board of directors of KBOR, wherein they acknowledged Plaintiff's "loans" to the Company. In exchange for the loans, Abbas, Majid, and Hamid, offered Plaintiff 160 of 200 shares in KBOR and, effectively, "eliminated" the brothers' substantial debt to Plaintiff. (A true copy of the minutes from the March 5, 1984 meeting of KBOR's board of directors is attached hereto as Exhibit E. A true copy of Plaintiff's KBOR stock certificate is attached hereto as Exhibit F).

52.    Almost immediately after fraudulently eliminating the debt to Plaintiff by offering him shares in KBOR, Abbas, Majid, and Hamid, founded a new corporate entity - - Kermanshah Oriental Rugs, Inc. ("KOR"), deliberately named in a manner to blur the relationship with KBOR - - and transferred all of KBOR's assets, business, funds, and operations from KBOR to KOR, thus leaving Plaintiff with 160 shares in a worthless company, and no valid debt to recover in exchange for his substantial investments in and funding of the rug and real estate businesses in the United States.

53.    Eventually, Abbas, Majid, and Hamid, issued a insignificant minority ownership

interest in KOR to Plaintiff but represented to Plaintiff that his interest in KOR was intended to be combined with his interests in KBOR to equal his overall 25% interest in the combined rug businesses. (A true copy of Plaintiff's KOR stock certificate is attached hereto as Exhibit G). Defendants did not advise Plaintiff, nor could he have known, however, that his interests in KBOR were rendered worthless by Defendants' fraud, leaving Plaintiff with an insignificant ownership interest in the overall rug businesses. Nevertheless, until, at least, late 2006, Defendants continued to point to the worthless stock certificate in KBOR as evidence of Plaintiff's equal ownership interests, while concealing the fact that they had, in fact, converted such interests. Shortly thereafter, the Defendants formed yet another entity, Kermanshah Brothers Rugs, Inc. ("KBR") designed to, once again, further erode Plaintiff's ownership interests in the rug businesses.

54.     Defendants' shell game has, in effect, left Plaintiff with an uncertain interest in the rug and real estate businesses for which he provided millions of dollars in funding and contributed most, if not all, of the sweat equity by building up the businesses, earning substantial revenue, and then sending that revenue to Abbas, Majid, and Hamid based on their agreement and promise to share all proceeds and profits from the rug businesses and Real Estate Properties.

55.     Abbas, Majid, and Hamid fraudulently converted Plaintiffs ownership interests in the rug businesses and Real Estate Properties.

56.     Although initially, the Defendants forwarded one-time stock certificates, and periodic bank records, and other financial or business records to Plaintiff relating to the rug businesses, the practice of sharing occasional information and documentation ebbed in the mid-1990s. Nevertheless, the practice of updating Plaintiff as to the rug businesses and other investments and making repeated representations that Plaintiff was an equal owner of the rug

businesses and Real Estate Properties continued until as recently as late 2006.

57.     Indeed, during Plaintiff's visits to the United States - - up to late 2006, Defendants regularly showed Plaintiff the healthy inventory in the rug businesses and the occupied units in the Real Estate Properties, and re-affirmed Plaintiff's ownership interests in the businesses.

58.     Thus, since the mid-1990s and through late 2006, Defendants had concealed their business activities from Plaintiff in which Plaintiff is, at the very least, a 25% owner.

**Plaintiff's Discovery of Defendants' Misconduct**

59.     Until the mid-2000s, Plaintiff had no knowledge, nor was there any reasonable basis for him to believe, that his brothers had excluded Plaintiff from his rightful ownership interests in the rug businesses or the Real Estate Properties.

60.     In or about 2006, Plaintiff discovered - - for the very first time, that Defendant Abbas had unlawfully diverted corporate assets from  a joint account maintained in Saudi Arabia relating to the Saudi rug business of Plaintiff and Abbas.  In addition, Plaintiff discovered that Defendant Abbas had been collecting Saudi receivables and depositing them into a personal account, to the exclusion of Plaintiff's rights. Thus, Plaintiff commenced a lawsuit in Saudi Arabia relating exclusively to the brothers' Saudi operations and finances.

61.     In or about 2007, in the course of litigating the Saudi Arabian lawsuit against Defendant Abbas, relating solely to Plaintiff's and Abbas's Saudi business, Plaintiff began to audit all of this business interests, including those in the United States.  In the process, Plaintiff reviewed public documents relating to the rug businesses and real properties but even those documents do not disclose membership interests, ownership shares, or any of the elements that might shed light on Defendants' wrongdoing.   Plaintiff did, however, discover that in 2001, Defendants had forged Plaintiffs name on a deed transferring one of the Real Estate Properties

13

from an entity in which he held an ownership interest to an entity in which he did not own a membership interest. (Exhibit B). This revelation, in 2007, was the first time that Plaintiff had any reason to believe that the Defendants had taken steps to divert his ownership interests in the American rug businesses and New York Real Estate Properties that he had financed. Although most of the documentation evidencing the fraud is in defendants' exclusive possession, the documents that were recovered gave rise to Plaintiff's reasonable suspicion that the Defendants have defrauded Plaintiff and breached their agreement to jointly own the rug businesses and Real Estate Properties.

### FIRST COUNT
### (Declaratory Judgment)

62. Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

63. Pursuant to the parties written and oral agreements, Plaintiff is entitled to a minimum of one-quarter ownership interest, with all rights thereto, in each of the rug businesses and in each of the Real Estate Properties.

64. Plaintiff contributed most, if not all, of the capital, labor, and funds used to purchase the Real Estate Properties and to sustain the rug businesses.

65. Defendants Majid, and Hamid contributed virtually no capital, labor, or funds used to purchase the Real Estate Properties and to sustain the rug businesses, nevertheless, they have effectively converted and misappropriated Plaintiff's ownership interests in the rug businesses and Real Estate Properties through a series of fraudulent acts and other illegal misconduct.

66. Defendants Abbas, Majid, and Hamid failed to include Plaintiff's name or ownership interests in the documents prepared and filed to form the corporate-defendants or

14

acquire the Real Estate Properties, and/or forged Plaintiff's name on certain transfer documents, and/or formed new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

**WHEREFORE**, Plaintiff demands judgment against defendants Abbas Kermanshah, Abdolmajid Kermanshah, a/k/a Majid Kermanshah, Abdolhamid Kermanshah, a/k/a Hamid Kermanshah, 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc., Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company, Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., and Wilshire Limited, jointly and severally, as follows:

(a)    Declaring Plaintiff a one-quarter owner of the Real Estate Properties and the holder of a 25% ownership interest in each of the corporate-defendants along with all the rights of ownership imposed by law or otherwise enjoyed equally by the Defendants Abbas, Majid, or Hamid;

(b)    Directing Defendants to amend any formation, incorporation, and/or registration documents filed with any governmental agency or otherwise prepared in connection with any of the corporate-defendants to reflect Plaintiff's ownership interests as set forth herein;

(c)    Temporarily, preliminarily, and permanently enjoining and restraining Defendants from taking any action to impair, limit, impede, reduce, dilute, divert, misappropriate, conceal, or convert Plaintiff's ownership interests at set forth herein;

(d)    For attorneys' fees and costs; and

(e)    For such other and further relief as this Court may deem equitable and just.

## SECOND COUNT
### (Minority Shareholder Oppression, pursuant to B.C.L. § 1104-a)

67.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully

15

set forth at length herein.

68.     Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

69.     As set forth above, Defendants Abbas, Majid, and Hamid have engaged in illegal, fraudulent, and oppressive conduct with respect to Plaintiff's minority ownership interests in the corporate-defendants, by, among other things, refusing to share equally in the corporate opportunities, investments, and businesses and to include Plaintiff in any business decisions relating thereto, failing and/or refusing to provide Plaintiff with any information, accounting, or documentation relating to the substantial funds contributed by Plaintiff to the brothers' business ventures, failing to include Plaintiff's name and ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, forging Plaintiff's name on certain transfer documents, and forming new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

70.     Plaintiff, as the minority shareholder, is, and continues to be, damaged as a result of the Defendants' illegal, fraudulent, and oppressive conduct with respect to their control of the corporate-defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)     For judgment winding down and dissolving the corporate-entities, marshalling and selling their assets, paying any and all reasonable expenses of the corporate-entities, and equitably distributing any remaining assets, income, or profits between the Plaintiff and

16

Defendants Abbas, Hamid, and Majid;

(b)     For judgment appointing a provisional director, receiver, or interim director to control the operations and assets of the corporate-defendants;

(c)     For judgment directing Defendants to produce to Plaintiff for inspection the corporate-defendants' books, records, financial papers, and all other business documents;

(d)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(e)     For consequential damages in an amount to be determined at trial;

(f)     For attorneys' fees and costs; and

(g)     For such other and further relief as this Court may deem equitable and just.

## THIRD COUNT
### (Dissolution of Corporate-Defendants)

71.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

72.     Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

73.     As set forth above, Defendants Abbas, Majid, and Hamid are looting the corporate assets to enrich themselves at the expense of the minority shareholder, continuing the corporations solely to benefit those "in control," and have taken steps to deprive the minority shareholder of his rights to and interests in the corporate-defendants.

74.     Plaintiff, as the minority shareholder, is, and continues to be, damaged as a result of the Defendants' oppressive conduct with respect to their control of the corporate-defendants.

17

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)     For judgment winding down and dissolving the corporate-entities, marshalling and selling their assets, paying any and all reasonable expenses of the corporate-entities, and equitably distributing any remaining assets, income, or profits between the Plaintiff and Defendants Abbas, Hamid, and Majid;

(b)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(c)     For consequential damages in an amount to be determined at trial;

(d)     For attorneys' fees and costs; and

(e)     For such other and further relief as this Court may deem equitable and just.

### FOURTH COUNT
### (Breach of Fiduciary Duty)

75.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

76.     Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

77.     Pursuant to New York Law, Defendants Abbas, Majid, and Hamid owe Plaintiff, as a minority shareholder of the corporate-defendants, a fiduciary duty to treat all shareholders, majority and minority, fairly.

78.     Pursuant to New York Law, Defendants Abbas, Majid, and Hamid owe Plaintiff, as a minority shareholder of the corporate-defendants, a fiduciary duty to act with candor,

18

prudence, fairness, morality, and honesty of purpose and to exercise good judgment in the management of the corporations.

79.    By virtue of the misconduct set forth herein, Defendants Abbas, Majid, and Hamid breached their fiduciary duty to Plaintiff.

80.    Plaintiff sustained substantial damages as a result of Defendants' breach of their fiduciary duty.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

## FIFTH COUNT
### (Breach of Contract)

81.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

82.    Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements to share equally in the corporate opportunities, investments, and businesses and to include Plaintiff in any business decisions relating thereto. In addition, Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements by failing and/or refusing to provide Plaintiff with any information, accounting, or documentation relating to the substantial funds contributed by Plaintiff to the brothers' business ventures. Moreover, Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements

19

by failing to include Plaintiff's name and ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, forging Plaintiff's name on certain transfer documents, and forming new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

83. Plaintiff has sustained substantial damages as a result of Defendants' breaches of the parties written and oral agreements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a) For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b) For consequential damages in an amount to be determined at trial;

(c) For attorneys' fees and costs; and

(d) For such other and further relief as this Court may deem equitable and just.

## SIXTH COUNT
### (Fraud)

84. Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

85. As a result of the activities described above, the Defendants falsely represented to Plaintiff that he was a equal partner and owner of the rug businesses and Real Estate Properties and that he was entitled to 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties, issued stock certificates to Plaintiff that were designed to mislead Plaintiff into believing he held an equity ownership of some or all of the corporate-defendants, while, in fact, rendering those stock certificates worthless. In addition, Defendants

20

falsely represented to the public that Plaintiff did not own an interest in the rug businesses or the Real Estate Properties. Moreover, Defendants forged Plaintiff's name on certain transfer documents and other business records and documents.

86. Each of the above representations was materially false.

87. The defendants knew that their representations were false and misleading, and intended that Plaintiff would rely on the misrepresentations by contributing and continuing to contribute substantial assets, equity, labor, and funds to the rug businesses and Real Estate Properties.

88. Plaintiff reasonably relied on the Defendants' false representations to his detriment by contributing and continuing to contribute substantial assets, equity, labor, and funds to the rug businesses and Real Estate Properties.

89. The Defendants' actions, collectively, have damaged Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a) For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b) For consequential damages in an amount to be determined at trial;

(c) For attorneys' fees and costs; and

(d) For such other and further relief as this Court may deem equitable and just.

### SEVENTH COUNT
**(Conversion)**

90. Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

91. Plaintiff made substantial payments and contributions to the Defendants based upon the Defendants' promises and contractual obligations to maintain Plaintiff's equal partnership and ownership interests in the rug businesses and Real Estate Properties and to share with Plaintiff 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties.

92. Defendants accepted Plaintiff's payments and contributions but have failed and/or refused to maintain Plaintiff's equal partnership and ownership interests in the rug businesses and Real Estate Properties or to share with Plaintiff 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties.

93. Defendants have, in effect, stolen Plaintiff's funds and ownership interests.

94. In unlawfully accepting Plaintiff's contributions and payments, but failing to include Plaintiff as an equal partner and member in the rug businesses and Real Estate Properties, Defendants have, without permission or authority, assumed and exercised the rights of ownership over the monies, properties, assets, corporate entities, rents, opportunities, and businesses rightfully belonging to Plaintiff, and converted the same to their own uses and purposes to the exclusion of Plaintiff's ownership rights.

95. The Defendants' improper exercise of the rights of ownership over the Plaintiffs' monies, properties, assets, corporate entities, rents, opportunities, and businesses is inconsistent with Plaintiff's ownership rights to same and constitutes the unlawful conversion of Plaintiff's property.

96. As a direct and proximate result, Plaintiff has been damaged by the wrongful acts of the Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and

1040973.1

severally, as follows:

(a)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)     For consequential damages in an amount to be determined at trial;

(c)     For attorneys' fees and costs; and

(d)     For such other and further relief as this Court may deem equitable and just.

### EIGHTH COUNT
### (Accounting)

97.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

98.     Defendants' have a duty pursuant to the parties written and oral agreements, as well as imposed by law (B.C.L. § 624), to allow Plaintiff to examine, inspect, and receive the corporate-defendants' financial information, including books, records, and accounts.

99.     Defendants have diverted, misappropriated and converted millions of dollars from Plaintiff without accounting for the funds or for Plaintiff's ownership interests in the resulting investments and businesses.

100.    As a result, Defendants owe restitution, reimbursement, and equity payments to Plaintiff in an amount unknown to Plaintiff and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from the Defendants.

101.    Moreover, pursuant to New York law, Defendants are required to provide Plaintiff with "an annual balance sheet, and profit and loss statement, as well as other related business records.

23

102.     Since the mid-1990s and through, at least late 2006, Defendants had successfully concealed their business activities from Plaintiff and ceased providing Plaintiff with any accurate or truthful information or documentation relating to the brothers' business activities, in which Plaintiff is, at the very least, a 25% owner.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)     For an accounting and audit of any and all funds, payments, and contributions made by Plaintiff to any of the Defendants or Defendant-entities;

(b)     For an accounting and audit of all business records, formation and incorporation documents, revenue statements, profit & loss statements, bank records, asset information, rents, loans, debts, and income, relating to, or arising from, any corporation, investment, or business in which Defendants Abbas, Majid, and/or Hamid has or had an ownership interests, jointly or severally, since 1970;

(c)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(d)     For consequential damages in an amount to be determined at trial;

(e)     For attorneys' fees and costs; and

(f)     For such other and further relief as this Court may deem equitable and just.

## NINTH COUNT
## (Unjust Enrichment)

103.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

104. By the conduct alleged herein, the Defendants have been and continue to be unjustly enriched at the expense of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a) For an accounting and audit of any and all funds, payments, and contributions made by Plaintiff to any of the Defendants or Defendant-entities;

(b) For an accounting and audit of all business records, formation and incorporation documents, revenue statements, profit & loss statements, bank records, asset information, rents, loans, debts, and income, relating to, or arising from, any corporation, investment, or business in which Defendants Abbas, Majid, and/or Hamid has or had an ownership interests, jointly or severally, since 1970;

(b) For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(c) For consequential damages in an amount to be determined at trial;

(d) For attorneys' fees and costs; and

(e) For such other and further relief as this Court may deem equitable and just.

### TENTH COUNT
**(Breach of the Covenant of Good Faith and Fair Dealing)**

105. Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

106. Pursuant to the parties' agreements and relationship, Defendants had an affirmative duty of good faith and fair dealing with respect to their relationship with Plaintiff and in connection with the rug businesses and real properties.

1040973.1

107.    By breaching the parties' agreements, by making material misrepresentations and omissions, by converting, diverting, and misappropriating Plaintiff's assets, funds, contributions, and equity, Defendants have breached their obligation of good faith and fair dealing.

108.    As a result of the Defendants' breach of their implied covenant of good faith and fair dealing, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

**PHILLIPS NIZER LLP**
Attorneys for Plaintiff
Habibollah Kermanshah

By: _____
      N. Ari Weisbrot  (NW6029)

666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700

Dated: April 18, 2008

1040973.1

# EXHIBIT A

PAY ANY BANK, BKR. OR
TRUST CO., P.E.G.
THE MERCHANTS BANK
OF NEW YORK
1-679        1-679

PAY TO THE ORDER OF
The Merchants Bank of N. Y.
Kermanshah Brothers
Oriental Rugs, Inc.
5-006.284

PAY ANY BANK, BKR. OR
TRUST CO., P.E.G.
THE MERCHANTS BANK
OF NEW YORK
1-679        1-679

CMB

PAY ANY BANK, BKR. OR
TRUST CO., P.E.G.
The Merchants Bank
of New York
1-679        1-679

CMB

PAY ANY BANK, BKR. OR
TRUST CO., P.E.G.
THE MERCHANTS BANK
OF NEW YORK
1-679        1-679

PAY TO THE ORDER OF
The Merchants Bank of N. Y.
Kermanshah Brothers Original
Rugs, Inc.
5-006284

PAY ANY BANK, BKR. OR
TRUST CO., P.E.G.
THE MERCHANTS BANK
OF NEW YORK
1-679        1-679

PAY TO THE ORDER OF
The Merchants Bank of N. Y.
Kermanshah Brothers Or.
Rugs, Inc.
5-006284



**HABIBOLLAH KERMANSHAH**
245 5TH AVENUE   SUITE 1809
NEW YORK, NY 10016

204
BLK-09

Feb-14th - 19 84

PAY TO THE ORDER OF: KERMANSHAH BROS. O/R. INC    $ 25000 00/xx

Twenty Five Thousand Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Avenue at 26th Street, New York, N.Y. 10010

FOR loan to Kermanah Bros.    H-Kermanshah

⑈021000021⑈ 027 1 113748⑈ 0204 ⑈000250000⑈

---



**HABIBOLLAH KERMANSHAH**
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

262

SEP - 16   19 83

PAY TO THE ORDER OF: KERMANSHAH Bros O/L Inc.    $ 16000 =

Sixteen Thousand Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR loan to Kermanshah Bros. o/L    H-Kermanshah

⑈021000021⑈ 027 1 103558⑈ 0262 ⑈000160000⑈

---



**HABIBOLLAH KERMANSHAH**
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

PAID

258
BLK-09

Sep - 07 - 19 83

PAY TO THE ORDER OF: KERMANSHAH BROS. O/R INC.    $ 10,000 =

Ten Thousand Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR loan.    Najat Kermanshah

⑈021000021⑈ 027 1 103558⑈ 0258 ⑈000100000⑈

---

**HABIBOLLAH KERMANSHAH**
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

254

29 Aug - 19 83

PAY TO THE ORDER OF: KERMANSHAH BROS. INC    $ 5000 XX/XX

Five Thousand only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR    Najat Kermanshah

⑈021000021⑈ 027 1 103558⑈ 0254 ⑈000050000⑈

**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

PAID

$2262

1-2/210

Jan-31- 19 83

PAY TO THE ORDER OF: Kermanshah Bros O/R Inc. $2676

Twenty Six Hundred and seventy Six Dollars Only DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10016
CHASE

FOR Habib Shipment to Nagfate Exp—  Naghi Kermanshah

⑊021000021⑊ 027 1 103558⑊ 0226 ⑊0000267600⑊

---

**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

2136

Dec-10th 19 82

1-2/210
27

PAY TO THE ORDER OF: KERMANSHAH BROS. O/R INC. $ 10,000

TEN THOUSAND DOLLARS ONLY DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10016
CHASE

FOR LOAN  Naghi Kermanshah

⑊021000021⑊ 027 1 103558⑊ 0213 ⑊0001000000⑊

---

**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

2202

Nov-15th 19 82

1-2/210
27

PAY TO THE ORDER OF: KERMANSHAH. BROS. O/R INC $ 5000

FIVE. THOUSANDS DOLLARS ONLY DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10016
CHASE

FOR Transfer, loan to Kermanshah Bros.  Naghi Kermanshah

⑊021000021⑊ 027 1 103558⑊ 0202 ⑊0000500000⑊

---



**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

205

Nov-04- 19 82

1-2/210
27

PAY TO THE ORDER OF: KERMANSHAH BROS. O.R. INC. $ 10,000

TEN THOUSANDS DOLLARS ONLY DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10016
CHASE

FOR loan  Naghi Kermanshah

⑊021000021⑊ 027 1 103558⑊ 0205 ⑊0001000000⑊



**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

BLK-03
245

1-2/210
27

5/23 19 83

PAY TO THE ORDER OF: Kermanshah Bros — $ 100,000

One Handred thousand — DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR: Transfer To Merchant

⑆021000021⑆ 027 1 103558⑈ 0245 ⑆0040000000⑆

---

**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

236

1-2/210
27

MARCH-8TH-19 83

PAY TO THE ORDER OF: KERMANSHAH BROS. O/R INC. — $ 35000

THIRTY FIVE THOUSADS DOLLARS ONLY — DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR: LOAN

⑆021000021⑆ 027 1 103558⑈ 0236 ⑆0003500000⑆

---

**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

BLK-03
232

1-2/210
27

March 4 19 83

PAY TO THE ORDER OF: Kermanshah Bros O/R Inc $ 10,000

Ten Thousands Dollars only — DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR: Loan

⑆021000021⑆ 027 1 103558⑈ 0232 ⑆0001000000⑆

---



**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

227

1-2/210
27

February 02 19 83

PAY TO THE ORDER OF: Kermanshah Bros. O/R Inc. — $ 10,000

Ten Thousands Dollars Only — DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR: Loan

⑆021000021⑆ 027 1 103558⑈ 0227 ⑆0001000000⑆



FOR DEPOSIT ONLY

Kermanshah Brothers
Oriental Rugs Inc.
A/C #: 027-1-048059
Chase Manhattan Bank

PAY TO THE ORDER OF N.Y.
Kermanshah Brothers
Oriental Rugs, Inc.
S-006284

The Merchants Bank of N.Y.

CMB

PAY ANY BANK, BKR. OR
TRUST CO., P.E.G.
The Merchants Bank
of New York
1-679





**Check 1:**
HABIBOLLAH KERMANSHAH
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016
PAID
Jan-31- 1983
PAY TO THE ORDER OF: Kermanshah Bros O/R Inc. $2676
Twenty Six Hundred and Seventy Six Dollars Only DOLLARS
The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010
Night Shipment to Nadet Express
:021000021: 027 1 103558" 0226 0000262500

**Check 2:**
HABIBOLLAH KERMANSHAH
245 5TH AVENUE SUITE 1809
NEW YORK, N.Y. 10016
PAID
245
BLK-08
5/23 1983
PAY TO THE ORDER OF: Kermanshah Bros $100,000
oHundred Thousand DOLLARS
The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010
Transfer To Merchant
:021000021: 027 1 103558" 0245 00100000

**Check 3:**
HABIBOLLAH KERMANSHAH
245 5TH AVENUE SUITE 1809
NEW YORK, NY 10016
PAID
001
204
BLK-09
Feb-14th 1984
PAY TO THE ORDER OF: KERMANSHAH Bros U/R Inc. $25000
Twenty Five Thousand Dollars Only
DOLLARS
The Chase Manhattan Bank, N.A.
Madison Avenue at 26th Street, New York, N.Y. 10010
loan to Kermansh Bros. H-Kermanshah
:021000021: 027 1 113748" 0204 000 2500000

**Check 4:**
HABIBOLLAH KERMANSHAH
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016
262
SEP- 16 1983
PAY TO THE ORDER OF: KERMANSHAH Bros U/R Inc. $16000
Sixteen Thousand Dollars Only DOLLARS
The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010
Loan to Kermanshah Bros Inc. H-Kermanshah
:021000021: 027 1 103558" 0262 000 1600000

**Check 5:**
HABIBOLLAH KERMANSHAH
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016
PAID
BLK-08
258
SEP-07- 1983
PAY TO THE ORDER OF: KERMANSHAH Bros U/R Inc. $10,000
Ten Thousand Dollars Only DOLLARS
The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010
Loan
:021000021: 027 1 103558" 0258 000 1000000

**Check 6 (right column):**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016
PAY TO THE ORDER OF: KERMANSHAH Bros. Inc. $5060
Five Thousand only
The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010
FOR
29 Aug 1983
DOLLARS
:021000021: 027 1 103558" 025 000500000

**Check 7 (right column):**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016
PAY TO THE ORDER OF: KERMANSHAH Bros. O/R Inc. $35000
THIRTY FIVE THOUSANDS DOLLARS Only
The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010
FOR LOAN
MARCH 8th 1983
DOLLARS
:021000021: 027 1 103558"



**HABIBOLLAH KERMANSHAH** 00-12-02    232
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

March 4 19 83    1-2/210
27

PAY TO THE
ORDER OF  Kermanshah Bros o/R Inc $ 10,000

Ten Thousands Dollars only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Loan

⑆02⑊000021⑆ 027  1 103558⑆ 0232 ⑆000100000⑆

---

**HABIBOLLAH KERMANSHAH**    PAID    227
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

February 02 19 83    1-2/210
27

PAY TO THE
ORDER OF  Kermanshah Bros. O/R Inc. $ 10,000

Ten Thousands Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Loan

⑆02⑊000021⑆ 027  1 103558⑆ 0227 ⑆000100000⑆

---

**HABIBOLLAH KERMANSHAH**    205
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

Nov-04- 19 82    1-2/210
27

PAY TO THE
ORDER OF  Kermanshah Bros c/R Inc. $ 10,000

Ten Thousands Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Loan

⑆02⑊000021⑆ 027  1 103558⑆ 0205 ⑆000100000⑆

---

**HABIBOLLAH KERMANSHAH**    202
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

Nov-15ᵗʰ 19 82    1-2/210
27

PAY TO THE
ORDER OF  Kermanshah Bros o/R Inc. $ 5000

Five Thousands Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Transfer Loan to Kermanshah Bros.

⑆02⑊000021⑆ 027  1 103558⑆ 0202 ⑆000050000⑆

---



**HABIBOLLAH KERMANSHAH**    213
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

Nov-16ᵗʰ 19 82    1-2/210
27

PAY TO THE
ORDER OF  Kermanshah Bros o/R Inc. $ 10,000

Ten Thousands Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010





PAY TO THE ORDER OF
The Merchants Bank of N.Y.
Kermanshah Brothers Oriental Rugs, Inc.
5-006284

PAY ANY BANK, BKR. OR TRUST CO., P.E.G.
THE MERCHANTS BANK OF NEW YORK
1-679 1-679

FB '83' 03

CMB

1879 03-09-09 PAID 004 5-01 BLK-12

---

LD10 82347

PAY ANY BANK, BKR. OR TRUST CO., P.E.G.
THE MERCHANTS BANK OF NEW YORK
1-679 1-679

DE 82 13

MB

1859 03-18-11 PAID 009 5-01 BLK-12

PAY TO THE ORDER OF
The Merchants Bank of N.Y.
Kermanshah Brothers Oriental Rugs, Inc.
5-006284

---

LD10 82320

PAY ANY BANK, BKR. OR TRUST CO., P.E.G.
THE MERCHANTS BANK OF NEW YORK
1-679 1-679

NO '82' 16

1896 03-20-04 PAID 003 5-01 BLK-12

PAY TO THE ORDER OF
The Merchants Bank of N.Y.
Kermanshah Brothers Oriental Rugs, Inc.
5-006234

---

PAY ANY BANK, BKR. OR TRUST CO., P.E.G.
The Merchants Bank of New York
1-679 1-679

NO '82' 05

CMB

1896 03-20-04 PAID 005 5-01 BLK-12

# EXHIBIT B

Nº 8005 - Bargain and Sale Deed with Covenant against Grantor's Acts. Individual or Corporation (Single Sheet) (NYBTU 8002)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT — THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY**

**THIS INDENTURE**, made the 24th day of January, in the year 2001
**BETWEEN** OVERSEAS PARTNERSHIP COMPANY, with offices at 57 Fifth Avenue, New York, New York 10003

party of the first part, and    OVERSEAS PARTNERSHIP CO., INC., with offices at 57 Fifth Avenue, New York, New York 10003

party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE SCHEDULE A, ATTACHED HERETO

Tax Map
Designation

Dist.

Sec.  (4)

Blk.  276

Lot(s)  21

41 Monroe Street
New York, N.Y.

**TOGETHER** with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above-described premises to the center lines thereof; **TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises; **TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been incumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:    OVERSEAS PARTNERSHIP COMPANY, By:

Habibollah Kermanshah
By

Abbas Kermanshah

Abdolmajid Kermanshah

a. Hamid Kermanshah
Attorney in fact
Said Power of Attorney is
to be recorded simultaneously
herewith.

SO IN ORIGINAL

USE ACKNOWLEDGMENT FORM BELOW WITHIN NEW YORK STATE ONLY:

**State of New York, County of** } ss.:

On the   day of   in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

ACKNOWLEDGMENT FORM FOR USE WITHIN NEW YORK STATE ONLY:
(New York Subscribing Witness Acknowledgment Certificate)

**State of New York, County of** } ss.:

On the   day of   in the year
before me, the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom I am
personally acquainted, who, being by me duly sworn, did depose and
say that he/she/they know(s)

(if the place of residence is in a city, include the street and street number, if
any, thereof); that he/she/they reside(s) in

to be the individual described in and who executed the foregoing
instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed
his/her/their name(s) as a witness thereto.

USE ACKNOWLEDGMENT FORM BELOW WITHIN NEW YORK STATE ONLY:

**State of New York, County of** New York } ss.:

On the 29th day of January   in the year 2004
before me, the undersigned, personally appeared   Abbas Kermanshah
Abdolmajid Kermanshah and Abdolhamid Kermanshah
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.
MARSHA HABER
Notary Public, State of New York
No. 41-4982378
Qualified in Queens County
Commission Expires June 3, 2004

ACKNOWLEDGMENT FORM FOR USE OUTSIDE NEW YORK STE ONLY:
(Out of State or Foreign General Acknowledgment Certificate)

(Complete Venue with State, Country, Province or Municipality) } ss.:

On the   day of   in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual made such appearance before the undersigned
in the

(Insert the city or other political subdivision and the state or country or
other place the acknowledgment was taken).

---

**BARGAIN & SALE DEED**
WITH COVENANTS AGAINST GRANTOR'S ACTS

TITLE NO.

Overseas Partnership Company

**TO**

Overseas Partnership Co., Inc.

**FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK**
INCORPORATED 1928
"Experience the Fidelity Difference"
Member New York State Land Title Association

| DISTRICT | |
|---|---|
| SECTION | 276 |
| BLOCK | 21 |
| LOT | |
| COUNTY OR TOWN | |

RECORDED AT REQUEST OF
**Fidelity National Title Insurance Company of New York**
RETURN BY MAIL TO

Michael J. Roberts
401 Broadway
New York, New York 10013

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City and State of New York, and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Monroe Street, with the westerly side of Market Street; thence running northerly along the westerly side of Market Street, eighteen feet; thence westerly parallel with Monroe Street, eighty one feet; thence southerly parallel with Market Street, eighteen feet to the northerly side of Monroe Street; thence easterly along the northerly side of Monroe Street, eighty one feet to the point or place of beginning.

SUBJECT however to existing liens and to such a state of facts as an accurate survey would show.

Being the same premises described in deed recorded in Liber 5094 cp. 317.

This is a true and correct copy of the original document recorded in the Office of the City Register of New York as attested by on the 19th day of November 2007. (not valid unless signed and dated)

# EXHIBIT C



HABIBOLLAH KERMANSHAH
246 5TH AVENUE SUITE 1809
NEW YORK N.Y. 10016

141

1-2/210
27

MAY-23-19 85

PAY TO THE
ORDER OF ____ SANTANGELO & COHEN ____ $ *170,000*⁰⁰⁄₁₀₀

ONE HUNDRED SEVENTY THOUSAND DOLLARS ONLY ____ DOLLARS

**CERTIFIED**
THE CHASE MANHATTAN BANK
LOS ANGELES, CALIFORNIA
MAY 23 1985
PAYABLE THROUGH
NEW YORK CLEARING HOUSE
IF PROPERLY ENDORSED AND
IF UNALTERED SINCE
The Chase Manhattan Bank, N.A.
Fifth Avenue at 43rd St., New York, N.Y. 10016

CHASE

Final Purchase Payment for          H. Kermanshah
for Building. 41 PARK ST
N.Y N.Y -10002.

DO NOT DESTROY

⑆021000021⑆ ⑈1137⑉ 0141



Payment Approval

George W. Santangelo

(signatures)

# EXHIBIT D

s a true copy

H. Kermanshah

ate County of NY
on the on MAY 31, 2007

PHILIPPE HANNA
Notary Public, State of New York
No. 01HA6100743
Qualified in New York
Commission Expires ...

PHILIPPE HANNA
Service Officer

THE CORPORATION IS AUTHORIZED TO ISSUE 200 COMMON SHARES WITHOUT PAR VALUE

263 WEST 30TH INC.

**This Certifies That** Habib Kermanshah is the owner of

Ten (10) fully paid and

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK



# Kermanshah Brothers Oriental Rugs, Inc.

**TOTAL AUTHORIZED ISSUE**
**200 SHARES WITHOUT PAR VALUE**
**COMMON STOCK**

SEE REVERSE FOR
CERTAIN DEFINITIONS

*This is to Certify that* _____ *is the owner of*

x x x x x x x x x x x x ONE HUNDRED AND SIXTY x x x x x x x x x x x x *fully paid and*

HABIBOLLAH KERMANSHAH

*non-assessable shares of the above Corporation transferable only on the books*
*of the Corporation by the holder hereof in person or by duly authorized Attorney*
*upon surrender of this Certificate properly endorsed.*

*Witness, the seal of the Corporation and the signatures of its duly authorized officers.*

*Dated* _____



PRECISE CORPORATE PRINTING, N.Y.





INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# SHIREWIL, INC.

THE CORPORATION IS AUTHORIZED TO ISSUE 200 COMMON SHARES WITHOUT PAR VALUE

Number

SHARES

**This Certifies that**

HABIBOLLAH KERMANSHAH

is the owner of

THIRTY (30) fully paid and

non-assessable Shares of the above Corporation transferable only on the

books of the Corporation by the holder hereof in person or by duly authorized

Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed

by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated



NUMBER 1

SHARES 30

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# SHIREWIL, INC.

THE CORPORATION IS AUTHORIZED TO ISSUE 200 COMMON SHARES WITHOUT PAR VALUE

**This Certifies that** HABIBOLLAH KERMANSHAH

is the owner of

THIRTY (30)

fully paid and non-assessable Shares of the above Corporation transferable only on the books of this Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated



**This Certifies That**

HABIBOLLAH KERMANSHAH

THIRTY (30)

is the owner of _____ fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated _____

# EXHIBIT E

# EXHIBIT F

MINUTES OF SPECIAL MEETING

OF

BOARD OF DIRECTORS

OF

KERMANSHAH BROTHERS ORIENTAL RUGS, INC.

A Special Meeting of the Board of Directors of Kermanshah Brothers Oriental Rugs, Inc., was held at the Offices of the Corporation, 245 Fifth Avenue, New York, New York on March 5, 1984 at 10:00 o'clock A.M.

The following persons, constituting a quorum of the Board of Directors of the Corporation, were present:

ABBAS KERMANSHAH

ABDUL HAMID KERMANSHAH

Mr. Abbas Kermanshah acted as Chairman of the Meeting, and Mr. Abdul Hamid Kermanshah acted as Secretary of the Meeting.

The Chairman of the Meeting informed the Meeting that, as of the date of the Meeting, the entire amount of the Note issued by the Corporation to Habibollah Kermanshah in the total principal sum of $ 456,590     dated July 1, 1983, together with accrued interest at the rate of fourteen (14%) percent per annum remained entirely unpaid.  He further

informed the Meeting that, since the Annual Meeting of
July 1, 1983, the Corporation had obtained advances from
Habibollah Kermanshah in the additional amount of $56,000
Thus, the total indebtedness of the Corporation to
Habibollah Kermanshah was $512,590.  The Chairman stated
that Habibollah Kermanshah no longer wanted to continue
to extend credit to the Corporation but had proposed
instead that he convert his loan to the Corporation to
capital stock.  He advised the Meeting that, Habibollah
Kermanshah had offered to cancel the indebtedness of the
Corporation in the total sum of $512,590 plus accrued
interest at the rate of fourteen (14%) percent per annum
in exchange for the issuance of one hundred and sixty
(160) shares of the Corporation's common no par capital
stock.  After discussion, the following resolution was
unaminously adopted:

> RESOLVED, that the offer of Habibollah
> Kermanshah to convert his loan of
> $512,590 with accrued interest at the
> annual rate of 14% into 160 shares of
> the Corporation's common no par capital
> stock be and the same hereby is accepted;
> and that the Secretary of the Corporation
> be authorized to issue a new Certificate
> to Habibollah Kermanshah evidencing his
> ownership of 160 no par common shares of
> the Corporation's capital stock.

The Chairman informed the Meeting that, in
anticipation of Mr. Habibollah Kermanshah's proposal to
convert his loan to capital shares of the Corporation,

2

Mr. Majid Kermanshah had tendered his resignation from the Office of Vice-President. The Chairman stated that, accordingly, it was in order to elect a new Vice-President to serve until the next Annual Meeting of the Board of Directors or until his successor can be duly elected. After discussion, Habibollah Kermanshah was unaminously elected Vice-President of the Corporation.

There being no further business to come before the Meeting, it was upon motion duly made and seconded, adjourned.

_____
Secretary of the Meeting

3

CHECKS ADVANCED BY HABIBOLLAH KERMANSHAN
TO OR ON BEHALF OF KERMANSHAH ORIENTAL RUGS,
INC., DRAWN ON THE CHASE MANHATTAN BANK,
N.A., BETWEEN JULY 1, 1983 AND MARCH 5, 1984

CHECKS ADVANCED TO KERMANSHAH BROTHERS ORIENTAL RUGS, INC.

| Check No. | Date | Amount of Check |
|---|---|---|
| 254 | August 29, 1983 | $ 5,000 |
| 258 | September 7, 1983 | $ 10,000 |
| 262 | September 16, 1983 | $ 16,000 |
| 204 | February 14, 1984 | $ 25,000 |
| | | $ 56,000 |

Total Amount Advanced by Habibollah
Kermanshah on behalf of Kermanshah
Brothers Oriental Rugs, Inc.,
between July 1, 1983 and March 5,
1984                                        $ 56,000

Total Amount Advanced by Habibollah
Kermanshah on behalf of Kermanshah
Brothers Oriental Rugs, Inc.,
through July 1, 1983                         $456,590

              TOTAL SUMS ADVANCED            $512,590

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK



# Kermanshah Brothers Oriental Rugs, Inc.

**TOTAL AUTHORIZED ISSUE
200 SHARES WITHOUT PAR VALUE
COMMON STOCK**

SEE REVERSE FOR
CERTAIN DEFINITIONS

This is to Certify that _____ is the owner of

x x x x x x x x x x x ONE HUNDRED AND SIXTY x x x x x x x x x x x x x fully paid and

non-assessable shares of the above Corporation transferable only on the books

of the Corporation by the holder hereof in person or by duly authorized Attorney

upon surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated

HABIBOLLAH KERMANSHAH



PRECISE CORPORATE PRINTING, N.Y.

# EXHIBIT G



INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

The Corporation is authorized to issue 200 Common Shares Without Par Value

NUMBER

SHARES

**This Certifies that**

HABIBOLLAH KERMANSHAH

is the owner of

Ten (10)

fully paid and non-assessable Shares of the above Corporation transferable only upon the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its seal to be hereunto affixed.

Dated

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| HABIBOLLAH KERMANSHAH, | : | Civil Action No.: 1:-08-cv-00409-BSJ-AJP |
|  | : | ECF Case |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| ABBAS KERMANSHAH, ABDOLMAJID KERMANSHAH, a/k/a MAJID KERMANSHAH, ABDOLHAMID KERMANSHAH, a/k/a HAMID KERMANSHAH, 263 WEST 30TH INC., BANAFSH REALTY, INC., EBRAHIM REALTY, INC., KERMANSHAH BROTHERS ORIENTAL RUGS, INC., KERMANSHAH ORIENTAL RUGS, INC., KERMANSHAH BROTHERS RUGS, INC., OVERSEAS PARTNERSHIP CO., INC., OVERSEAS PARTNERSHIP COMPANY, RAHMAN NY, INC., SHERIN WEST 86TH STREET CORP., SHIREWIL, INC., and WILSHIRE LIMITED, | : | **AFFIDAVIT OF SERVICE** |
| Defendants. | : |  |

STATE OF NEW JERSEY )
                                        : ss.
COUNTY OF BERGEN      )

N. ARI WEISBROT, an attorney at law, duly admitted to practice law in the State of New York affirms the following statements to be true under the penalties of perjury pursuant to 28 U.S.C. §1746: Deponent is not a party to this action; is over 18 years of age and maintains offices in Hackensack, New Jersey.

On April 18, 2008, deponent served by Federal Express, priority overnight mail, a copy

of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's

Complaint, and Declaration of N. Ari Weisbrot, upon:

      Robert M. Abrahams, Esq.
      Gregory A. Kasper, Esq.
      Schulte Roth & Zabel, LLP
      919 Third Avenue
      New York, New York 10022
      Attorneys for Defendants

_____
N. Ari Weisbrot

Sworn to before me on this 18th
Day of April, 2008

_____
Notary Public

**ELIZABETH VALENTIN**
**NOTARY PUBLIC OF NEW JERSEY**
**MY COMMISSION EXPIRES DEC. 24, 2011**

2

1041637.1