**N. ARI WEISBROT (NAW6029)**
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Plaintiff Habibollah Kermanshah

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HABIBOLLAH KERMANSHAH,

      Plaintiff,

v.

ABBAS KERMANSHAH, ABDOLMAJID
KERMANSHAH, a/k/a MAJID
KERMANSHAH, ABDOLHAMID
KERMANSHAH, a/k/a HAMID
KERMANSHAH, 263 WEST 30TH INC.,
BANAFSH REALTY, INC., EBRAHIM
REALTY, INC., KERMANSHAH
BROTHERS ORIENTAL RUGS, INC.,
KERMANSHAH ORIENTAL RUGS, INC.,
KERMANSHAH BROTHERS RUGS, INC.,
OVERSEAS PARTNERSHIP CO., INC.,
OVERSEAS PARTNERSHIP COMPANY,
RAHMAN NY, INC., SHERIN WEST 86TH
STREET CORP., SHIREWIL, INC., and
WILSHIRE LIMITED,

      Defendants.

CIVIL ACTION NO.: 08-CV-00409 (BSJ)
ECF Case



**FIRST AMENDED COMPLAINT and**
**JURY DEMAND**

     Plaintiff Habibollah Kermanshah, by his attorneys, Phillips Nizer LLP, complaining of

defendants Abbas Kermanshah, Abdolmajid Kermanshah, a/k/a Majid Kermanshah, Abdolhamid

Kermanshah, a/k/a Hamid Kermanshah, 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim

Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc.,

Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company, Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., and Wilshire Limited, alleges and says:

## THE PARTIES

1.      Plaintiff Habibollah Kermanshah ("Plaintiff" or "Habib") is an individual with a place of residence located at 100 Winston Drive, Unit 11A, Cliffside Park, New Jersey 07010.

2.      Upon information and belief, defendant Abbas Kermanshah ("Abbas") is an individual with a place of residence located in New York, and a principle place of business located at 57 Fifth Avenue, New York, New York 10003.

3.      Upon information and belief, defendant Abdolmajid Kermanshah, a/k/a Majid Kermanshah ("Majid") is an individual residing at 134 West 86th Street, Apt. 1, New York, New York, 10024.

4.      Upon information and belief, defendant Abdolhamid Kermanshah, a/k/a Hamid Kermanshah ("Hamid") is an individual residing at 217 East 83rd Street, Apt. 2B, New York, New York 10028.

5.      Upon information and belief, Defendant 263 West 30th Inc. ("West 30th") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. 263 West 30th owns a mixed-use building on real property located at 263 West 30th Street, New York, New York 10001.

6.      Upon information and belief, Defendant Banafsh Realty, Inc. ("Banafsh") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Banafsh owns a

2

mixed-use building on real property located at 217 East 83rd Street, New York, New York 10028.

7.    Upon information and belief, Defendant Ebrahim Realty, Inc. ("Ebrahim") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Ebrahim owns a residential building on real property located at 97 Perry Street, New York, New York 10014.

8.    Upon information and belief, Defendant Kermanshah Brothers Oriental Rugs, Inc. ("KBOR") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 290 Fifth Avenue, New York, New York 10001. KBOR is in the business of importing and selling Oriental Rugs.

9.    Upon information and belief, Defendant Kermanshah Oriental Rugs, Inc. ("KOR") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. KOR is in the business of importing and selling Oriental Rugs.

10.    Upon information and belief, Defendant Kermanshah Brothers Rugs, Inc. ("KBR") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 33 East 33rd Street, New York, New York 10016. KBR is in the business of importing and selling Oriental Rugs.

11.    Upon information and belief, Defendant Overseas Partnership Co., Inc. ("Overseas Corp.") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Overseas Corp. owns a residential building on real property located at 41 Monroe Street, New York, New York 10002.

12.    Upon information and belief, Defendant Overseas Partnership Company

3

("Overseas Partnership") is a partnership duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Upon further information and belief, Overseas Partnership, and its single real estate asset, located at 41 Monroe Street, New York, New York, were transferred to Overseas Corp.

13.    Upon information and belief, Defendant Rahman NY, Inc., ("Rahman") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Rahman owns a mixed-use building on real property located at 5 West 31st Street, New York, New York 10001.

14.    Upon information and belief, Defendant Sherin West 86th Street Corp. ("Sherin") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Sherin owns a residential building on real property located at 134 West 86th Street, New York, New York 10024.

15.    Upon information and belief, Defendant Shirewil, Inc. ("Shirewil") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Shirewil owns a mixed-use building on real property located at 57 Fifth Avenue, New York, New York 10003.

16.    Upon information and belief, Defendant Wilshire Limited ("Wilshire") is a corporation duly organized and existing under the laws of the state of New York, with a principal place of business located at 57 Fifth Avenue, New York, New York 10003. Wilshire owns a residential building on real property located at 59 Fifth Avenue, New York, New York 10003.

4

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and, with respect to certain state law claims, 28 U.S.C. § 1367.

18.     Plaintiff is a citizen of the State of New Jersey. All of the Defendants are citizens of the State of New York. Accordingly, there is complete diversity of citizenship for the purposes of 28 U.S.C. § 1332.

19.     Venue is proper under 28 U.S.C. § 1391(a) in that all of the Defendants reside in this District and the cause of action arose in this District.

## FACTUAL BACKGROUND

### The Kermanshah Brothers' Rug Businesses

20.     Plaintiff Habib and Defendants Abbas, Majid, and Hamid are brothers, born in Iran, but naturalized as United States' Citizens.

21.     In or about 1971, the two older brothers, Plaintiff Habib and Defendant Abbas opened "Kermanshah Rugs," a rug store in Tehran, Iran. By agreement, the meager profits generated were split evenly between Abbas and Habib.

22.     Shortly after opening Kermanshah Rugs, Abbas relocated to the United States and opened a Persian rug store, "Houbas Oriental Rugs," with funds taken from Kermanshah Rugs, jointly owned with Plaintiff. By agreement, all expenses, costs, losses, revenue, profit, and income generated by Houbas, or its successor, "Kermanshah Brothers Oriental Rugs," ("KBOR") were spilt evenly between Abbas and Plaintiff.

23.     During the 1970s, Plaintiff Habib supplied rugs from Iran to Abbas in the United States for sale through Houbas, or its successor, KBOR. Revenue from KBOR was used by Habib and Abbas to support the entire family, including their parents and younger brothers,

5

Defendants Majid and Hamid, who had no source of income of their own.

24.     In or about 1974, younger brother, Defendant Majid, emigrated from Iran to the United States.

25.     In or about 1978, Plaintiff Habib and Defendant Abbas relocated from Iran to Saudi Arabia, thereby expanding their business operations to include Saudi Arabia. Plaintiff and Abbas imported and sold Persian Rugs in Saudi Arabia and the United States. The businesses were profitable and income from operations in the United States and Saudi Arabia were shared equally between Plaintiff and Abbas, who continued to support their younger brothers.

26.     In the late 1970s and early 1980s, younger brothers, Defendants Majid and Hamid immigrated to the United States and were given jobs running the brothers' New York business operations.

27.     For the most part, the profit and income generated by Plaintiff Habib and Defendant Abbas in Saudi Arabia, a vast majority of which was generated by Habib, was sent to the United States to support Majid and Hamid.

28.     During the early 1980s, KBOR's Saudi Arabian business expanded, while the American business generated barely sufficient revenue to cover the brothers' business and living expenses. Plaintiff, and to a lesser extent Abbas, was supporting Majid and Hamid.

29.     Thereafter, during the 1980s and 1990s, Plaintiff Habib sent a vast majority of his revenue and income to his brothers in the United States, who, in turn, used the money to invest in real estate in New York. (True copies of a sampling of Plaintiff's checks are collectively attached hereto as Exhibit A).

30.     Notwithstanding the fact that a vast majority of funds used to acquire the New York real properties was supplied solely by Plaintiff, and little, if any, capital was contributed by

6

Majid and Hamid, the four brothers agreed that any and all investments would be shared equally between the four brothers, Plaintiff Habib, and Defendants Abbas, Majid, and Hamid, and each would have an equal ownership interest in all of the corporate entities organized for the purposes of acquiring the real estate properties.  The brothers further agreed that all expenses, costs, revenue, income, and losses generated by the rug businesses and the real estate investments would be shared equally by the brothers.

31.    Plaintiff Habib became a resident of the United States in 1990 and a citizen in 1997, but he and Abbas continued to conduct the brothers' Saudi Arabian operations.  Majid and Hamid were given day-to-day management responsibilities for the brothers' investments and were charged with overseeing the New York business operations.

**The Real Estate Investments**

32.    During the late 1970s, 1980s, and 1990s, using mostly Plaintiff's money, and consistent with the brothers' agreement, Defendants Abbas, Majid, and Hamid formed various corporate entities, through which they acquired various real properties in New York City (collectively, the "Real Estate Properties").

33.    In or about 1986, Defendants formed 263 West 30th Inc. for the purposes of acquiring a mixed-use building on real property located at 263 West 30th Street, New York, New York 10001.

34.    In or about 1991, Defendants formed Banafsh Realty, Inc. for the purposes of acquiring a mixed-use building on real property located at 217 East 83rd Street, New York, New York 10028.

35.    In or about 1993, Defendants formed Ebrahim Realty, Inc. for the purposes of acquiring a residential building on real property located at 97 Perry Street, New York, New York

7

10014.

36.    In or about 1987, Plaintiff Habib and Defendants Abbas and Hamid, formed

Overseas Partnership Company for the purposes of acquiring a residential building on real

property located at 41 Monroe Street, New York, New York 10002.  Habib, Abbas, and Hamid

were equal partners in the Partnership and, therefore, had an equal ownership in the Monroe

Street building.

37.    In or about 2000, without obtaining Plaintiffs' permission or consent, Defendants

Abbas, Majid, and Hamid, formed Overseas Partnership Co., Inc., a corporate entity deceptively

formed with a name similar to the Partnership, but in which Plaintiff had no interest or rights,

and transferred the Monroe Street property from the Partnership to the newly-formed corporate

entity.  In doing so, the Defendants forged Plaintiff's name on the deed and transfer documents.

(A true copy of the forged deed is attached hereto as Exhibit B).  Plaintiff, however, much like

the rest of the Real Estate Properties, provided the entire capital for the acquisition of the

Monroe Street property, which has now been stolen by the Defendants.[1]  (A true copy of

Plaintiff's payment check for the Monroe Street property is attached hereto as Exhibit C).

38.    In or about 1996, Defendants formed Rahman NY, Inc. for the purposes of

acquiring a mixed-use building on real property located at 5 West 31st Street, New York, New

York 10001.

39.    In or about 1991, Defendants formed Sherin West 86th Street Corp. for the

purposes of acquiring a residential building on real property located at 134 West 86th Street, New

---

[1] Defendants signed Plaintiff's name on the Deed, as "Attorney in fact, said Power of Attorney is
to be recorded simultaneously herewith."  Nevertheless, no such documents were simultaneously
(or ever) recorded by Defendants. Moreover, Plaintiff never executed a Power of Attorney
authorizing the Defendants to execute a deed or transfer property on his behalf and, in any event,
any limited, pre-existing Powers of Attorney had long expired.

8

York, New York 10024

40.     In or about 1985, Defendants formed Shirewil, Inc. for the purposes of acquiring a mixed-use building on real property located at 57 Fifth Avenue, New York, New York 10003.

41.     In or about 1985, Defendants formed Wilshire Limited for the purposes of acquiring a residential building on real property located at 59 Fifth Avenue, New York, New York 10003.

42.     Defendants issued stock certificates to Plaintiff memorializing his ownership interests in some or all of the Real Estate Properties. (True copies of Plaintiff's stock certificates are collectively attached hereto as Exhibit D).

**Defendants' Fraudulent Scheme**

43.     In 1973, Plaintiff and Defendant Abbas, changed the name of their corporate entity from "Houbas Oriental Rugs," to "Kermanshah Brothers Oriental Rugs." Pursuant to their long-standing agreement, Plaintiff Habib and Defendant Abbas each owned 50% interest in KBOR.

44.     After Plaintiff continued to fund the Defendants' operations and expenses, Abbas, Majid, and Hamid began a systematic fraudulent scheme to convert and deprive Plaintiff of his ownership interests in the various corporate entities, including the rug companies that he co-founded and built into successful companies. While it is unclear when the scheme began, it lasted until 2007 when Plaintiff finally discovered the Defendants' fraud.

45.     Thus, Plaintiff much later learned that Abbas, Majid, and Hamid had falsely advised the Saudi royal family that Plaintiff has no interest in KBOR and did not speak for the company.

46.     Defendants controlled the books and records of the corporate defendants and,

9

therefore, were able to manipulate the information available to Plaintiff. Throughout the relevant period, and as recently as late 2006, Abbas, Majid, and Hamid each represented to Plaintiff, on multiple occasions, that Plaintiff was an equal owner of the rug businesses and the Real Estate Properties.    These representations occurred by telephone between each and all of the Defendants, on the one hand, and Plaintiff on the other hand, and in person in the Defendants' New York offices, and in Saudi Arabia between Abbas and Plaintiff, and in the brothers' lawyer's offices, and in written documents provided by each of the Defendants to Plaintiff. The representations occurred on a regular and frequent basis - - virtually every time the brothers communicated - - through late 2006.

47.    For example, in a conversation between the brothers at their New York offices, as recently as 2006, Majid and Hamid confirmed that any issues between Abbas and Plaintiff in Saudi Arabia had no relationship or impact on the brothers' American businesses, which were distinct and separate from Abbas and Plaintiff's Saudi operations.  In that conversation, Majid and Hamid, again, confirmed Plaintiff's ownership interest in the rug businesses and Real Estate Properties.

48.    Indeed, in a telephone conversation between Defendant Majid and members of Plaintiff's family in February 2008, Majid requested that Plaintiff withdraw this lawsuit and, once again, confirmed Plaintiff's equal ownership of the rug businesses and Real Estate Properties but suggested that the businesses had been established with the intention of allowing the four brothers' children to benefit from the proceeds of the joint businesses.  Thus, Defendants' false representations continued as recently as this year.

49.    In addition, until late 2006, the Defendants made payments to Plaintiff and his family, purportedly representing Plaintiff's "share" of the business.  Defendants, until at least

10

2005, filed and paid Plaintiff's personal taxes and his New Jersey property taxes, mortgage, maintenance, credit card bills. These payments were presented to Plaintiff as his return on his investment - - his share of the businesses.

50.    Defendants, pursuant to their nefarious scheme, actively led Plaintiff to believe he was a partner in the businesses, both in word and in deed, thereby giving him no reason to know of Defendants' fraud.

51.    In fact, Abbas, Majid, and Hamid, in effect, either never registered Plaintiff's ownership interests in some or all of the corporate-entities or erased any evidence of Plaintiffs' ownership in some or all of the rug businesses and Real Estate Properties, including a notable "special meeting" of the board of directors of KBOR, wherein they acknowledged Plaintiff's "loans" to the Company. In exchange for the loans, Abbas, Majid, and Hamid, offered Plaintiff 160 of 200 shares in KBOR and, effectively, "eliminated" the brothers' substantial debt to Plaintiff. (A true copy of the minutes from the March 5, 1984 meeting of KBOR's board of directors is attached hereto as Exhibit E. A true copy of Plaintiff's KBOR stock certificate is attached hereto as Exhibit F).

52.    Almost immediately after fraudulently eliminating the debt to Plaintiff by offering him shares in KBOR, Abbas, Majid, and Hamid, founded a new corporate entity - - Kermanshah Oriental Rugs, Inc. ("KOR"), deliberately named in a manner to blur the relationship with KBOR - - and transferred all of KBOR's assets, business, funds, and operations from KBOR to KOR, thus leaving Plaintiff with 160 shares in a worthless company, and no valid debt to recover in exchange for his substantial investments in and funding of the rug and real estate businesses in the United States.

53.    Eventually, Abbas, Majid, and Hamid, issued a insignificant minority ownership

11

interest in KOR to Plaintiff but represented to Plaintiff that his interest in KOR was intended to be combined with his interests in KBOR to equal his overall 25% interest in the combined rug businesses. (A true copy of Plaintiff's KOR stock certificate is attached hereto as Exhibit G). Defendants did not advise Plaintiff, nor could he have known, however, that his interests in KBOR were rendered worthless by Defendants' fraud, leaving Plaintiff with an insignificant ownership interest in the overall rug businesses.   Nevertheless, until, at least, late 2006, Defendants continued to point to the worthless stock certificate in KBOR as evidence of Plaintiff's equal ownership interests, while concealing the fact that they had, in fact, converted such interests. Shortly thereafter, the Defendants formed yet another entity, Kermanshah Brothers Rugs, Inc. ("KBR") designed to, once again, further erode Plaintiff's ownership interests in the rug businesses.

54.    Defendants' shell game has, in effect, left Plaintiff with an uncertain interest in the rug and real estate businesses for which he provided millions of dollars in funding and contributed most, if not all, of the sweat equity by building up the businesses, earning substantial revenue, and then sending that revenue to Abbas, Majid, and Hamid based on their agreement and promise to share all proceeds and profits from the rug businesses and Real Estate Properties.

55.    Abbas, Majid, and Hamid fraudulently converted Plaintiffs ownership interests in the rug businesses and Real Estate Properties.

56.    Although initially, the Defendants forwarded one-time stock certificates, and periodic bank records, and other financial or business records to Plaintiff relating to the rug businesses, the practice of sharing occasional information and documentation ebbed in the mid-1990s.    Nevertheless, the practice of updating Plaintiff as to the rug businesses and other investments and making repeated representations that Plaintiff was an equal owner of the rug

12

businesses and Real Estate Properties continued until as recently as late 2006.

57.     Indeed, during Plaintiff's visits to the United States - - up to late 2006, Defendants regularly showed Plaintiff the healthy inventory in the rug businesses and the occupied units in the Real Estate Properties, and re-affirmed Plaintiff's ownership interests in the businesses.

58.     Thus, since the mid-1990s and through late 2006, Defendants had concealed their business activities from Plaintiff in which Plaintiff is, at the very least, a 25% owner.

**Plaintiff's Discovery of Defendants' Misconduct**

59.     Until the mid-2000s, Plaintiff had no knowledge, nor was there any reasonable basis for him to believe, that his brothers had excluded Plaintiff from his rightful ownership interests in the rug businesses or the Real Estate Properties.

60.     In or about 2006, Plaintiff discovered - - for the very first time, that Defendant Abbas had unlawfully diverted corporate assets from a joint account maintained in Saudi Arabia relating to the Saudi rug business of Plaintiff and Abbas.  In addition, Plaintiff discovered that Defendant Abbas had been collecting Saudi receivables and depositing them into a personal account, to the exclusion of Plaintiff's rights. Thus, Plaintiff commenced a lawsuit in Saudi Arabia relating exclusively to the brothers' Saudi operations and finances.

61.     In or about 2007, in the course of litigating the Saudi Arabian lawsuit against Defendant Abbas, relating solely to Plaintiff's and Abbas's Saudi business, Plaintiff began to audit all of this business interests, including those in the United States.  In the process, Plaintiff reviewed public documents relating to the rug businesses and real properties but even those documents do not disclose membership interests, ownership shares, or any of the elements that might shed light on Defendants' wrongdoing.   Plaintiff did, however, discover that in 2001, Defendants had forged Plaintiffs name on a deed transferring one of the Real Estate Properties

13

from an entity in which he held an ownership interest to an entity in which he did not own a membership interest. (Exhibit B). This revelation, in 2007, was the first time that Plaintiff had any reason to believe that the Defendants had taken steps to divert his ownership interests in the American rug businesses and New York Real Estate Properties that he had financed. Although most of the documentation evidencing the fraud is in defendants' exclusive possession, the documents that were recovered gave rise to Plaintiff's reasonable suspicion that the Defendants have defrauded Plaintiff and breached their agreement to jointly own the rug businesses and Real Estate Properties.

## FIRST COUNT
### (Declaratory Judgment)

62.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

63.    Pursuant to the parties written and oral agreements, Plaintiff is entitled to a minimum of one-quarter ownership interest, with all rights thereto, in each of the rug businesses and in each of the Real Estate Properties.

64.    Plaintiff contributed most, if not all, of the capital, labor, and funds used to purchase the Real Estate Properties and to sustain the rug businesses.

65.    Defendants Majid, and Hamid contributed virtually no capital, labor, or funds used to purchase the Real Estate Properties and to sustain the rug businesses, nevertheless, they have effectively converted and misappropriated Plaintiff's ownership interests in the rug businesses and Real Estate Properties through a series of fraudulent acts and other illegal misconduct.

66.    Defendants Abbas, Majid, and Hamid failed to include Plaintiff's name or ownership interests in the documents prepared and filed to form the corporate-defendants or

14

acquire the Real Estate Properties, and/or forged Plaintiff's name on certain transfer documents, and/or formed new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

**WHEREFORE**, Plaintiff demands judgment against defendants Abbas Kermanshah, Abdolmajid Kermanshah, a/k/a Majid Kermanshah, Abdolhamid Kermanshah, a/k/a Hamid Kermanshah, 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc., Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company, Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., and Wilshire Limited, jointly and severally, as follows:

(a)    Declaring Plaintiff a one-quarter owner of the Real Estate Properties and the holder of a 25% ownership interest in each of the corporate-defendants along with all the rights of ownership imposed by law or otherwise enjoyed equally by the Defendants Abbas, Majid, or Hamid;

(b)    Directing Defendants to amend any formation, incorporation, and/or registration documents filed with any governmental agency or otherwise prepared in connection with any of the corporate-defendants to reflect Plaintiff's ownership interests as set forth herein;

(c)    Temporarily, preliminarily, and permanently enjoining and restraining Defendants from taking any action to impair, limit, impede, reduce, dilute, divert, misappropriate, conceal, or convert Plaintiff's ownership interests at set forth herein;

(d)    For attorneys' fees and costs; and

(e)    For such other and further relief as this Court may deem equitable and just.

## SECOND COUNT
### (Minority Shareholder Oppression, pursuant to B.C.L. § 1104-a)

67.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully

set forth at length herein.

68.    Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

69.    As set forth above, Defendants Abbas, Majid, and Hamid have engaged in illegal, fraudulent, and oppressive conduct with respect to Plaintiff's minority ownership interests in the corporate-defendants, by, among other things, refusing to share equally in the corporate opportunities, investments, and businesses and to include Plaintiff in any business decisions relating thereto, failing and/or refusing to provide Plaintiff with any information, accounting, or documentation relating to the substantial funds contributed by Plaintiff to the brothers' business ventures, failing to include Plaintiff's name and ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, forging Plaintiff's name on certain transfer documents, and forming new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

70.    Plaintiff, as the minority shareholder, is, and continues to be, damaged as a result of the Defendants' illegal, fraudulent, and oppressive conduct with respect to their control of the corporate-defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For judgment winding down and dissolving the corporate-entities, marshalling and selling their assets, paying any and all reasonable expenses of the corporate-entities, and equitably distributing any remaining assets, income, or profits between the Plaintiff and

16

Defendants Abbas, Hamid, and Majid;

(b)     For judgment appointing a provisional director, receiver, or interim director to control the operations and assets of the corporate-defendants;

(c)     For judgment directing Defendants to produce to Plaintiff for inspection the corporate-defendants' books, records, financial papers, and all other business documents;

(d)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(e)     For consequential damages in an amount to be determined at trial;

(f)     For attorneys' fees and costs; and

(g)     For such other and further relief as this Court may deem equitable and just.

### THIRD COUNT
### (Dissolution of Corporate-Defendants)

71.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

72.     Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

73.     As set forth above, Defendants Abbas, Majid, and Hamid are looting the corporate assets to enrich themselves at the expense of the minority shareholder, continuing the corporations solely to benefit those "in control," and have taken steps to deprive the minority shareholder of his rights to and interests in the corporate-defendants.

74.     Plaintiff, as the minority shareholder, is, and continues to be, damaged as a result of the Defendants' oppressive conduct with respect to their control of the corporate-defendants.

1040973.1

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)     For judgment winding down and dissolving the corporate-entities, marshalling and selling their assets, paying any and all reasonable expenses of the corporate-entities, and equitably distributing any remaining assets, income, or profits between the Plaintiff and Defendants Abbas, Hamid, and Majid;

(b)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(c)     For consequential damages in an amount to be determined at trial;

(d)     For attorneys' fees and costs; and

(e)     For such other and further relief as this Court may deem equitable and just.

### FOURTH COUNT
### (Breach of Fiduciary Duty)

75.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

76.     Defendants Abbas, Majid, and Hamid are all directors, members and shareholders of the corporate-defendants. Defendants Abbas, Majid, and Hamid own a majority interest in the corporate-defendants and are "in control of the corporations" in all respects. Plaintiff is a minority shareholder in the corporate-defendants.

77.     Pursuant to New York Law, Defendants Abbas, Majid, and Hamid owe Plaintiff, as a minority shareholder of the corporate-defendants, a fiduciary duty to treat all shareholders, majority and minority, fairly.

78.     Pursuant to New York Law, Defendants Abbas, Majid, and Hamid owe Plaintiff, as a minority shareholder of the corporate-defendants, a fiduciary duty to act with candor,

18

prudence, fairness, morality, and honesty of purpose and to exercise good judgment in the management of the corporations.

79.    By virtue of the misconduct set forth herein, Defendants Abbas, Majid, and Hamid breached their fiduciary duty to Plaintiff.

80.    Plaintiff sustained substantial damages as a result of Defendants' breach of their fiduciary duty.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

### FIFTH COUNT
### (Breach of Contract)

81.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

82.    Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements to share equally in the corporate opportunities, investments, and businesses and to include Plaintiff in any business decisions relating thereto. In addition, Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements by failing and/or refusing to provide Plaintiff with any information, accounting, or documentation relating to the substantial funds contributed by Plaintiff to the brothers' business ventures. Moreover, Defendants Abbas, Majid, and Hamid have breached the brothers' written and oral agreements

19

by failing to include Plaintiff's name and ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, forging Plaintiff's name on certain transfer documents, and forming new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug businesses and real properties.

83.     Plaintiff has sustained substantial damages as a result of Defendants' breaches of the parties written and oral agreements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)     For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)     For consequential damages in an amount to be determined at trial;

(c)     For attorneys' fees and costs; and

(d)     For such other and further relief as this Court may deem equitable and just.

### SIXTH COUNT
### (Fraud)

84.     Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

85.     As a result of the activities described above, the Defendants falsely represented to Plaintiff that he was a equal partner and owner of the rug businesses and Real Estate Properties and that he was entitled to 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties, issued stock certificates to Plaintiff that were designed to mislead Plaintiff into believing he held an equity ownership of some or all of the corporate-defendants, while, in fact, rendering those stock certificates worthless. In addition, Defendants

1040973.1

falsely represented to the public that Plaintiff did not own an interest in the rug businesses or the Real Estate Properties. Moreover, Defendants forged Plaintiff's name on certain transfer documents and other business records and documents.

86.    Each of the above representations was materially false.

87.    The defendants knew that their representations were false and misleading, and intended that Plaintiff would rely on the misrepresentations by contributing and continuing to contribute substantial assets, equity, labor, and funds to the rug businesses and Real Estate Properties.

88.    Plaintiff reasonably relied on the Defendants' false representations to his detriment by contributing and continuing to contribute substantial assets, equity, labor, and funds to the rug businesses and Real Estate Properties.

89.    The Defendants' actions, collectively, have damaged Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

### SEVENTH COUNT
### (Conversion)

90.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

91.    Plaintiff made substantial payments and contributions to the Defendants based upon the Defendants' promises and contractual obligations to maintain Plaintiff's equal partnership and ownership interests in the rug businesses and Real Estate Properties and to share with Plaintiff 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties.

92.    Defendants accepted Plaintiff's payments and contributions but have failed and/or refused to maintain Plaintiff's equal partnership and ownership interests in the rug businesses and Real Estate Properties or to share with Plaintiff 25% of all profits, rents, proceeds, and income generated by the rug businesses and Real Estate Properties.

93.    Defendants have, in effect, stolen Plaintiff's funds and ownership interests.

94.    In unlawfully accepting Plaintiff's contributions and payments, but failing to include Plaintiff as an equal partner and member in the rug businesses and Real Estate Properties, Defendants have, without permission or authority, assumed and exercised the rights of ownership over the monies, properties, assets, corporate entities, rents, opportunities, and businesses rightfully belonging to Plaintiff, and converted the same to their own uses and purposes to the exclusion of Plaintiff's ownership rights.

95.    The Defendants' improper exercise of the rights of ownership over the Plaintiffs' monies, properties, assets, corporate entities, rents, opportunities, and businesses is inconsistent with Plaintiff's ownership rights to same and constitutes the unlawful conversion of Plaintiff's property.

96.    As a direct and proximate result, Plaintiff has been damaged by the wrongful acts of the Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and

22

severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

### EIGHTH COUNT
### (Accounting)

97.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

98.    Defendants' have a duty pursuant to the parties written and oral agreements, as well as imposed by law (B.C.L. § 624), to allow Plaintiff to examine, inspect, and receive the corporate-defendants' financial information, including books, records, and accounts.

99.    Defendants have diverted, misappropriated and converted millions of dollars from Plaintiff without accounting for the funds or for Plaintiff's ownership interests in the resulting investments and businesses.

100.    As a result, Defendants owe restitution, reimbursement, and equity payments to Plaintiff in an amount unknown to Plaintiff and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from the Defendants.

101.    Moreover, pursuant to New York law, Defendants are required to provide Plaintiff with "an annual balance sheet, and profit and loss statement, as well as other related business records.

1040973.1

102.    Since the mid-1990s and through, at least late 2006, Defendants had successfully concealed their business activities from Plaintiff and ceased providing Plaintiff with any accurate or truthful information or documentation relating to the brothers' business activities, in which Plaintiff is, at the very least, a 25% owner.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)    For an accounting and audit of any and all funds, payments, and contributions made by Plaintiff to any of the Defendants or Defendant-entities;

(b)    For an accounting and audit of all business records, formation and incorporation documents, revenue statements, profit & loss statements, bank records,  asset information, rents, loans, debts, and income, relating to, or arising from, any corporation, investment, or business in which Defendants Abbas, Majid, and/or Hamid has or had an ownership interests, jointly or severally, since 1970;

(c)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(d)    For consequential damages in an amount to be determined at trial;

(e)    For attorneys' fees and costs; and

(f)    For such other and further relief as this Court may deem equitable and just.

### NINTH COUNT
### (Unjust Enrichment)

103.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

1040973.1

104.    By the conduct alleged herein, the Defendants have been and continue to be unjustly enriched at the expense of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)    For an accounting and audit of any and all funds, payments, and contributions made by Plaintiff to any of the Defendants or Defendant-entities;

(b)    For an accounting and audit of all business records, formation and incorporation documents, revenue statements, profit & loss statements, bank records, asset information, rents, loans, debts, and income, relating to, or arising from, any corporation, investment, or business in which Defendants Abbas, Majid, and/or Hamid has or had an ownership interests, jointly or severally, since 1970;

(b)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(c)    For consequential damages in an amount to be determined at trial;

(d)    For attorneys' fees and costs; and

(e)    For such other and further relief as this Court may deem equitable and just.

### TENTH COUNT
**(Breach of the Covenant of Good Faith and Fair Dealing)**

105.    Plaintiff repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

106.    Pursuant to the parties' agreements and relationship, Defendants had an affirmative duty of good faith and fair dealing with respect to their relationship with Plaintiff and in connection with the rug businesses and real properties.

25

107.    By breaching the parties' agreements, by making material misrepresentations and omissions, by converting, diverting, and misappropriating Plaintiff's assets, funds, contributions, and equity, Defendants have breached their obligation of good faith and fair dealing.

108.    As a result of the Defendants' breach of their implied covenant of good faith and fair dealing, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(a)    For compensatory damages in an amount to be determined at trial, but not less than $25 million, plus accrued interest;

(b)    For consequential damages in an amount to be determined at trial;

(c)    For attorneys' fees and costs; and

(d)    For such other and further relief as this Court may deem equitable and just.

**PHILLIPS NIZER LLP**
Attorneys for Plaintiff
Habibollah Kermanshah

By:    _N. Ari Weisbrot  (NW6029)_

666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700

Dated: April 18, 2008

26

1040973.1

# EXHIBIT A





**HABIBOLLAH KERMANSHAH**
245 5TH AVENUE   SUITE 1809
NEW YORK, NY 10016

001                204
BLK-09

Feb-14th 1984

PAY TO THE ORDER OF  KERMANSHAH BROS. O/R Inc.   $25000 00

Twenty Five Thousand Dollars Only                DOLLARS

The Chase Manhattan Bank, N.A.
Madison Avenue at 26th Street, New York, N.Y. 10010

FOR loan to Kermanshah Bros.         H. Kermanshah

⑆021000021⑆ 027 1 113748⑆ 0204 ⑈000 2500000⑈


**HABIBOLLAH KERMANSHAH**
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

262

SEP 16 1983

PAY TO THE ORDER OF  KERMANSHAH Bros. O/L Inc.   $ 16000

Sixteen Thousand Dollars Only                DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR loan to Kermanshah Bro. c/L.         H. Kermanshah

⑆021000021⑆ 027 1 103558⑆ 0262 ⑈000 1600000⑈


**HABIBOLLAH KERMANSHAH**
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

PAID                258
BLK-09

SEP-07 1983

PAY TO THE ORDER OF  KERMANSHAH BROS. O/R Inc.   $ 10,000

Ten Thousand Dollars Only                DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y. N.Y. 10010

FOR loan

⑆021000021⑆ 027 1 103558⑆ 0258 ⑈000 1000000⑈


**HABIBOLLAH KERMANSHAH**
245 5TH AVE.   SUITE 1809
NEW YORK, N.Y. 10016

254

29 Aug. 1983

PAY TO THE ORDER OF  KERMANSHAH BORS. Inc   $ 5000 XX XX

Five Thousand only                DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR

⑆021000021⑆ 027 1 103558⑆ 0254 ⑈000 0500000⑈

HABIBOLLAH KERMANSHAH
245 5TH AVE.  SUITE 1809
NEW YORK, N.Y. 10016

PAID

2262

Jan - 31 - 1983

1-2/210

PAY TO THE ORDER OF Kermanshah Bros O/R Inc.    $2676

Twenty Six Hundred and seventy Six Dollars Only    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR Habib Shipment to Narted Express

⑆021000021⑆ 027 1 103558⑆ 0226 ⑈000267600⑈

---

HABIBOLLAH KERMANSHAH
245 5TH AVE.  SUITE 1809
NEW YORK, N.Y. 10016

2136

Dec - 10th - 1982

1-2/210
27

PAY TO THE ORDER OF KERMANSHAH. BROS. O/R Inc.    $ 10,000

TEN THOUSANDS DOLLARS ONLY    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR LOAN.

⑆021000021⑆ 027 1 103558⑆ 0213 ⑈001000000⑈

---

HABIBOLLAH KERMANSHAH
245 5TH AVE.  SUITE 1809
NEW YORK, N.Y. 10016

K202

Nov - 15th 1982

1-2/210
27

PAY TO THE ORDER OF KERMANSHAH. BROS. O/R Inc.    $ 5000

FIVE. THOUSANDS DOLLARS ONLY    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR Transfer loan to Kermanshah Bros.

⑆021000021⑆ 027 1 103558⑆ 0202 ⑈000500000⑈

---

HABIBOLLAH KERMANSHAH
245 5TH AVE.  SUITE 1809
NEW YORK, N.Y. 10016

205

Nov - 04 - 1982

1-2/210
27

PAY TO THE ORDER OF KERMANSHAH BROS. O/R. Inc.    $ 10,000

TEN THOUSANDS DOLLARS ONLY    DOLLARS

The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

CHASE

FOR loan.

⑆021000021⑆ 027 1 103558⑆ 0205 ⑈001000000⑈



**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

PAID
BLK-08
245
1-2/210
27

1/23 19 83

PAY TO THE ORDER OF Kermanshah Bros     $ 100,000

One Handered thousand     DOLLARS

CHASE  The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Transfer To Merchant

⑈021000021⑈ 027 1 103558⑈ 0245 ⑈00100000000⑈

---



**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

1-2/210
27

MARCH-8TH-19 83.

PAY TO THE ORDER OF KERMANSHAH BROS. O/R INC.     $ 35000 00

THIRTY FIVE THOUSADS DOLLARS ONLY     DOLLARS

CHASE  The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR LOAN

⑈021000021⑈ 027 1 103558⑈ 0236 ⑈000350000⑈

---



**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

PAID
BLK-08
232
1-2/210
27

March 4 19 83

PAY TO THE ORDER OF Kermanshah Bros O/R     $ 10,000

Ten Thousands Dollars only     DOLLARS

CHASE  The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Loan

⑈021000021⑈ 027 1 103558⑈ 0232 ⑈000100000⑈

---

**HABIBOLLAH KERMANSHAH**
245 5TH AVE. SUITE 1809
NEW YORK, N.Y. 10016

PAID
1-2/210
27

February 02 19 83

PAY TO THE ORDER OF Kerman Shah Bros. O/R Inc.     $ 10,000

Ten Thousands Dollars Only     DOLLARS

CHASE  The Chase Manhattan Bank, N.A.
Madison Ave. at 26th St., N.Y., N.Y. 10010

FOR Loan

⑈021000021⑈ 027 1 103558⑈ 0227 ⑈000100000⑈



























# EXHIBIT B

Nº 1005 - Bargain and Sale Deed with Covenant against Grantor's Acts  Individual or Corporation (Single Sheet) (NYBTU 8002)    CTSY . 98Bc-NY

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 24th day of January , in the year 2001
BETWEEN OVERSEAS PARTNERSHIP COMPANY, with offices at 57 Fifth Avenue.
New York, New York 10003

party of the first part, and    OVERSEAS PARTNERHSIP CO., INC., with offices at
57 Fifth Avenue, New York, New York 10003

party of the second part,
WITNESSETH, that the party of the first part, in consideration of Ten Dollars and other valuable consideration
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or
successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying
and being in the

SEE SCHEDULE A, ATTACHED HERETO

Tax Map
Designation

Dist.

Sec.   (9C

Blk.   276      41 Monroe Street
              New York, N. Y.
Lot(s)  21

TOGETHER with all right, title and interest, if any, of the party of the first part of, in and to any streets and
roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances
and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD
the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby
the said premises have been incumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the improvement before using any part of the total of the same for any other
purpose.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:          OVERSEAS PARTNERSHIP COMPANY, By:
          Habibollah Kermanshah
BY
          A. Hy 2-Ke             Abbes Kermanshah
          Abdolhamid Kermanshah
          Attorney in fact
          said Power of attorney is          Abdolmajid Kermanshah
          to be recorded simultaneously
          herewith.             A. Hy 2-Ke

USE ACKNOWLEDGMENT FORM BELOW WITHIN NEW YORK STATE ONLY:

State of New York, County of _____ } ss.:

On the ____ day of _____ in the year ____
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

ACKNOWLEDGMENT FORM FOR USE WITHIN NEW YORK STATE ONLY:
(New York Subscribing Witness Acknowledgment Certificate)
State of New York, County of _____ } ss.:

On the ____ day of _____ in the year ____
before me, the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom I am
personally acquainted, who, being by me duly sworn, did depose and
say that he/she/they reside(s) in

(If the place of residence is in a city, include the street and street number, if
any, thereof); that he/she/they know(s)

to be the individual described in and who executed the foregoing
instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed
his/her/their name(s) as a witness thereto.

USE ACKNOWLEDGMENT FORM BELOW WITHIN NEW YORK STATE ONLY:

State of New York, County of New York } ss.:

On the ___ day of January in the year 2002
before me, the undersigned, personally appeared Abbas Kermanshah
Abdolmajid Kermanshah and Abdolhamid Kermanshah
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

MARSHA HABER
Notary Public, State of New York
No. 41-4882378
Qualified in Queens County
Commission Expires June 3, 2001

ACKNOWLEDGMENT FORM FOR USE OUTSIDE NEW YORK STATE ONLY:
(Out of State or Foreign General Acknowledgment Certificate)
(Complete Venue with State, County, Province or Municipality) } ss.:

On the ____ day of _____ in the year ____
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), that he/she/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual made such appearance before the undersigned
in the

(Insert the city or other political subdivision and the state or country or
other place the acknowledgment was taken).

BARGAIN & SALE DEED
WITH COVENANTS AGAINST GRANTOR'S ACTS

TITLE NO. _____

Overseas Partnership Company

TO

Overseas Partnership Co., Inc.

FIDELITY NATIONAL TITLE INSURANCE
COMPANY OF NEW YORK
INCORPORATED 1928

DISTRICT
SECTION        276
BLOCK          21
LOT
COUNTY OR TOWN

RECORDED AT REQUEST OF
Fidelity National Title Insurance Company of New York
RETURN BY MAIL TO

Michael J. Roberts
401 Broadway
New York, New York 10013

REEL 3 2 8 8 PG 1 1 8 8

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City and State of New York, and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Monroe Street, with the westerly side of Market Street; thence running northerly along the westerly side of Market Street, eighteen feet; thence westerly parallel with Monroe Street, eighty one feet; thence southerly parallel with Market Street, eighteen feet to the northerly side of Monroe Street; thence easterly along the northerly side of Monroe Street, eighty one feet to the point or place of beginning.

SUBJECT however to existing liens and to such a state of facts as an accurate survey would show.

Being the same premises described in deed recorded in Liber 5094 cp. 317.

This is a true and correct copy of the original document recorded in the Office of the City Register of New York as attested by _____ on the 19th day of November 2007. (not valid unless signed and dated)

# EXHIBIT C



HABIBOLLAH KERMANSHAH                                    141
ZEE 5TH AVENUE    SUITE 1809
NEW YORK, N.Y. 10016                   MAY-23-19 85      1-2/210
                                                        27

PAY TO THE                                              $ 170,000 00/xx
ORDER OF  KANTANGELO, DiANTANGELO Y COHEN

CERTIFIED

MAY 23 1985
PAYABLE THROUGH
NEW YORK CLEARING HOUSE

ONE HUNDRED SEVENTY THOUSAND DOLLARS ONLY ± 0/— DOLLARS

IF PROPERLY ENDORSED AND
IF UNALTERED SINCE
The Chase Manhattan Bank, N.A.

CHASE  Broadway Avenue at 38th Street, New York, N.Y. 10016

Final / Purchase payment for
FOR Building, 41 MONROE ST
N.Y. N.Y. — 10002.              H. Kermanshah

⑆021000021⑆ 022 ⑈ 11371⑈⑆  0141

DO NOT DESTROY

# EXHIBIT D

is a true copy

H. Kermanshah

[signature]

...ose County of NY

...om me on MAY 31, 2007

PHILIPPE HANNA
Notary Public, State of New York
No. 01HA6100743
Qualified in New York
Commission Expires [...]

PPE HANNA
Service Officer



**This Certifies that** Habib Kermanshah

Ten (10)

THE CORPORATION IS AUTHORIZED TO ISSUE 200 COMMON SHARES WITHOUT PAR VALUE



INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# Kermanshah Brothers Oriental Rugs, Inc.

**TOTAL AUTHORIZED ISSUE
200 SHARES WITHOUT PAR VALUE
COMMON STOCK**

SEE REVERSE FOR
CERTAIN DEFINITIONS

This is to Certify that _____

HABIBOLLAH KERMANSHAH

is the owner of

x x x x x x x x x x x x x x x ONE HUNDRED AND SIXTY x x x x x x x x x x x x x x x x _____ fully paid and

non-assessable shares of the above Corporation transferable only on the books

of the Corporation by the holder hereof in person or by duly authorized Attorney

upon surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated _____



PRECISE CORPORATE PRINTING, N.Y.



The Corporation is authorized to issue 200 Common Shares Without Par Value

**This Certifies that**

Ten (10)

HABIBOLLAH KERMANSHAH

is the owner of

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated



SHREWIL INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK.

THE CORPORATION IS AUTHORIZED TO ISSUE 200 COMMON SHARES WITHOUT PAR VALUE

NUMBER

SHARES

This Certifies that

HABIBOLLAH    KERMANSHAH

is the owner of

THIRTY (30)

fully paid and

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated



**SHIREWIL, INC.**

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

THE CORPORATION IS AUTHORIZED TO ISSUE 200 COMMON SHARES WITHOUT PAR VALUE

This Certifies that

THIRTY (30)

HABIBOLLAH KERMANSHAH

is the owner of

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated



This Certifies that

**THIRTY (30)**

**HABIBOLLAH KERMANSHAH**

is the owner of
fully paid and
non-assessable Shares of the above Corporation, transferable only on the
books of the Corporation by the holder hereof in person or by duly authorized
Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated

# EXHIBIT E

MINUTES OF SPECIAL MEETING

OF

BOARD OF DIRECTORS

OF

KERMANSHAH BROTHERS ORIENTAL RUGS, INC.

A Special Meeting of the Board of Directors of Kermanshah Brothers Oriental Rugs, Inc., was held at the Offices of the Corporation, 245 Fifth Avenue, New York, New York on March 5, 1984 at 10:00 o'clock A.M.

The following persons, constituting a quorum of the Board of Directors of the Corporation, were present:

. ABBAS KERMANSHAH

ABDUL HAMID KERMANSHAH

Mr. Abbas Kermanshah acted as Chairman of the Meeting, and Mr. Abdul Hamid Kermanshah acted as Secretary of the Meeting.

The Chairman of the Meeting informed the Meeting that, as of the date of the Meeting, the entire amount of the Note issued by the Corporation to Habibollah Kermanshah in the total principal sum of $ 456,590       dated July 1, 1983, together with accrued interest at the rate of fourteen (14%) percent per annum remained entirely unpaid.  He further

informed the Meeting that, since the Annual Meeting of

July 1, 1983, the Corporation had obtained advances from

Habibollah Kermanshah in the additional amount of $56,000

Thus, the total indebtedness of the Corporation to

Habibollah Kermanshah was $512,590.  The Chairman stated

that Habibollah Kermanshah no longer wanted to continue

to extend credit to the Corporation but had proposed

instead that he convert his loan to the Corporation to

capital stock.  He advised the Meeting that, Habibollah

Kermanshah had offered to cancel the indebtedness of the

Corporation in the total sum of $512,590 plus accrued

interest at the rate of fourteen (14%) percent per annum

in exchange for the issuance of one hundred and sixty

(160) shares of the Corporation's common no par capital

stock.  After discussion, the following resolution was

unaminously adopted:

> RESOLVED, that the offer of Habibollah
> Kermanshah to convert his loan of
> $512,590 with accrued interest at the
> annual rate of 14% into 160 shares of
> the Corporation's common no par capital
> stock be and the same hereby is accepted;
> and that the Secretary of the Corporation
> be authorized to issue a new Certificate
> to Habibollah Kermanshah evidencing his
> ownership of 160 no par common shares of
> the Corporation's capital stock.

The Chairman informed the Meeting that, in

anticipation of Mr. Habibollah Kermanshah's proposal to

convert his loan to capital shares of the Corporation,

2

. Majid Kermanshah had tendered his resignation from the Office of Vice-President. The Chairman stated that, accordingly, it was in order to elect a new Vice-President to serve until the next Annual Meeting of the Board of Directors or until his successor can be duly elected. After discussion, Habibollah Kermanshah was unaminously elected Vice-President of the Corporation.

There being no further business to come before the Meeting, it was upon motion duly made and seconded, adjourned.

_____
Secretary of the Meeting

3

CHECKS ADVANCED BY HABIBOLLAH KERMANSHAN
TO OR ON BEHALF OF KERMANSHAH ORIENTAL RUGS,
INC., DRAWN ON THE CHASE MANHATTAN BANK,
N.A., BETWEEN JULY 1, 1983 AND MARCH 5, 1984

CHECKS ADVANCED TO KERMANSHAH BROTHERS ORIENTAL RUGS, INC.

| Check No. | Date | Amount of Check |
|---|---|---|
| 254 | August 29, 1983 | $ 5,000 |
| 258 | September 7, 1983 | $ 10,000 |
| 262 | September 16, 1983 | $ 16,000 |
| 204 | February 14, 1984 | $ 25,000 |
| | | $ 56,000 |

Total Amount Advanced by Habibollah
Kermanshah on behalf of Kermanshah
Brothers Oriental Rugs, Inc.,
between July 1, 1983 and March 5,
1984 — $ 56,000

Total Amount Advanced by Habibollah
Kermanshah on behalf of Kermanshah
Brothers Oriental Rugs, Inc.,
through July 1, 1983 — $456,590

TOTAL SUMS ADVANCED — $512,590

# EXHIBIT F

Case 1:06-cv-... Document ... Filed ... Page 58 of 60

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# Kermanshah Brothers Oriental Rugs, Inc.

**TOTAL AUTHORIZED ISSUE**
**200 SHARES WITHOUT PAR VALUE**
**COMMON STOCK**



SEE REVERSE FOR
CERTAIN DEFINITIONS

This is to Certify that _____ HABIBOLLAH KERMANSHAH _____ is the owner of

x x x x x x x x x x x x ONE HUNDRED AND SIXTY x x x x x x x x x x x x *fully paid and*

*non-assessable shares of the above Corporation transferable only on the books*

*of the Corporation by the holder hereof in person or by duly authorized Attorney*

*upon surrender of this Certificate properly endorsed.*

*Witness, the seal of the Corporation and the signatures of its duly authorized officers.*

*Dated*



PRECISE CORPORATE PRINTING, N.Y.

# EXHIBIT G



The Corporation is authorized to issue 200 Common Shares Without Par Value

**This Certifies that**

**HABIBOLLAH KERMANSHAH**

is the owner of _____ fully paid and non-assessable Shares of the above Corporation transferable on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its seal to be hereunto affixed this _____

Dated _____

**Ten (10)**