# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

HABIBOLLAH KERMANSHAH,

          Plaintiff,

v.

ABBAS KERMANSHAH, ABDOLMAJID
KERMANSHAH, a/k/a MAJID
KERMANSHAH, ABDOLHAMID
KERMANSHAH, a/k/a HAMID
KERMANSHAH, 263 WEST 30TH INC.,
BANAFSH REALTY, INC., EBRAHIM
REALTY, INC., KERMANSHAH
BROTHERS ORIENTAL RUGS, INC.,
KERMANSHAH ORIENTAL RUGS, INC.,
KERMANSHAH BROTHERS RUGS, INC.,
OVERSEAS PARTNERSHIP CO., INC.,
OVERSEAS PARTNERSHIP COMPANY,
RAHMAN NY, INC., SHERIN WEST 86TH
STREET CORP., SHIREWIL, INC., and
WILSHIRE LIMITED,

          Defendants.

--------------------------------------------------------x

CIVIL ACTION NO. 1:08-cv-00409-BSJ-AJP

<br>

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ABDOLMAJID KERMANSHAH, ABDOLHAMID KERMANSHAH, 263 WEST 30TH INC., BANAFSH REALTY, INC., EBRAHIM REALTY, INC., KERMANSHAH BROTHERS ORIENTAL RUGS, INC., KERMANSHAH ORIENTAL RUGS, INC., KERMANSHAH BROTHERS RUGS, INC., OVERSEAS PARTNERSHIP CO., INC., OVERSEAS PARTNERSHIP COMPANY, RAHMAN NY, INC., SHERIN WEST 86TH STREET CORP., SHIREWIL, INC., AND WILSHIRE LIMITED'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

<br>

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10014
*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF RELEVANT ALLEGATIONS ............................................................. 5

I.      The Rug Business ................................................................................................... 5

II.     The Real Estate Business ........................................................................................ 6

III.    Allegations Regarding Plaintiff's Exclusion From The
        Rug And Real Estate Businesses. ........................................................................... 7

IV.     Discovery Of The Alleged Fraud ........................................................................... 9

LEGAL STANDARDS…………………………………….. .......................................... 10

ARGUMENT ..................................................................................................................... 12

I.      THE COURT SHOULD NOT CONSIDER THE
        CONTRADICTORY AND MANIPULATED
        ALLEGATIONS OF THE AMENDED
        COMPLAINT IN RESOLVING THE MOTION SUB
        JUDICE ................................................................................................................. 12

II.     PLAINTIFF'S AMENDED COMPLAINT MUST
        BE DISMISSED BECAUSE ALL OF HIS CLAIMS
        ARE TIME-BARRED. ........................................................................................... 15

        A.      The Statutory Period For Plaintiff's Claims Range
                From Two To Six Years. ......................................................................... 15

        B.      Each Of Plaintiff's Claims Is Based Upon Events
                That Occurred More Than Six Years Ago. ............................................. 16

        C.      Plaintiff's Sixth Cause Of Action For Fraud Is
                Time-Barred And Is Not Saved By the Discovery
                Rule ........................................................................................................ 18

                1.      All Alleged Fraudulent Acts Occurred Prior To January 2002 ............... 18

                2.      Plaintiff Was On Inquiry Notice No Later Than
                        December 27, 2005, Thus, The Discovery Rule
                        Cannot Save The Time-Barred Claims .................................................... 19

3.   If Plaintiff Had Acted With Reasonable Diligence,
     He Would Have Discovered The Alleged Fraudulent Acts......................23

D.   Plaintiff's Sixth Cause Of Action -- Fraud -- Should
     Be Dismissed Because It is Duplicative Of the
     Breach of Contract Claim .....................................................................24

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

## <u>CASES</u>

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*,
   120 F.3d 351 (2d Cir. 1997)..................................................................................16

*A. Resnick Textile Co. v. Ramapo Trading Corp.*,
   No. 570890-01, 2003 WL 1748363 (1st Dep't Mar. 13, 2003).................................23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)....................................................................................11

*Abercrombie v. Andrew College*,
   438 F. Supp.2d 243 ( S.D.N.Y. 2006)...................................................................23

*Almonte v. City of Long Beach*,
   478 F.3d 100 (2d Cir. 2007)..................................................................................11

*Alster v. Goord*,
   No. 05 Civ. 10883, 2008 WL 506406 (S.D.N.Y. Feb. 26, 2008) ...........................11

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983)....................................................................................19

*Arneil v. Ramsey*,
   550 F.2d 774 (2d Cir. 1977)..................................................................................22

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007)..........................................................................................11

*Bernstein v. LaRue*,
   501 N.Y.S.2d 896 (2d Dep't 1986).........................................................................16

*Bridge St. Homeowners Assoc. v. Brick Condo. Dev., LLC*,
   No. 26507/06, 2008 WL 344136 (2008).................................................................24

*Calcutti v. SBU, Inc.*,
   224 F. Supp. 2d. 691 (S.D.N.Y. 2002)..................................................................16

*Cantor Fitzgerald v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002)..................................................................................12

*Conley v Gibson*,
   355 U.S. 45 (1957)................................................................................................11

*Di Pace v. Figueroa*,
    637 N.Y.S.2d 222 (3d Dep't 1996)....................................................................15, 18

*Ely-Cruikshank Co. v. Bank of Montreal*,
    599 N.Y.S.2d 501 (1993) ..........................................................................................16

*Ferber v. Ehrlich*,
    No. 93 Civ. 818, 1994 WL 132168 (S.D.N.Y. Apr. 14, 1994) ................................19

*Gebhardt v. Allspect, Inc.*,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000)........................................................................11

*Glynwill Invs. v. Prudential Secs. Inc.*,
    No. 92 Civ. 9267, 1995 WL 362500 (S.D.N.Y. June 16, 1995)...............................16

*Grassmueck v. Barnett*,
    281 F. Supp. 2d 1227 (W.D. Wash. 2003)...............................................................12

*Guilbert v. Gardner*,
    480 F.3d 140 (2d Cir. 2007)................................................................................16,18

*Hammond v. Reichbach*,
    648 N.Y.S.2d 98 (1st Dep't 1996) ...........................................................................18

*Harrison v. Harlem Hosp.*,
    No. 05 Civ. 8271, 2007 WL 2822231 (S.D.N.Y. Sept. 28, 2007) ...........................11

*Helfand v. Sessler*,
    753 N.Y.S.2d 300 (N.Y. Civ. Ct. 2002)..................................................................16

*Henkind v. Brauser*,
    No. 87 Civ. 4072, 1989 WL 54109 (S.D.N.Y. May 17, 1989) ................................22

*Jones v. Bock*,
    127 S. Ct. 910 (2007) ...............................................................................................15

*Katura v. D.E. Jones, Commod., Inc.*,
    835 F.2d 966 (2d Cir. 1987).....................................................................................22

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (1st Dep't 2003) ..........................................................................16

*King v. Fox*,
    28 Fed. Appx. 95 (2d Cir. 2002) ..............................................................................24

*Klein v. Bower*,
    421 F.2d 338 (2d Cir. 1970)............................................................................22

*Mallis v. Bankers Trust Co.*,
    615 F.2d 68 (2d Cir. 1980)............................................................................23

*Manning v. Utilities Mut. Ins. Co.*,
    254 F.3d 387 (2d Cir. 2001)..........................................................................22

*Pressley v. Northeastern Conf. of Seventh-Day Adventists*,
    No. 04-CV-3476, 2006 WL 2482435 (E.D.N.Y. Aug. 25, 2006)...........................16

*R.H. Damon & Co. v. Softkey Software Prod., Inc.*,
    811 F. Supp. 986 (S.D.N.Y. 1993).................................................................24

*Rattner v. York*,
    571 N.Y.S.2d 762 (2d Dep't 1991)................................................................18

*Schmidt v. Merchants Desp. Transp. Co.*,
    270 N.Y. 287 (1936) ...................................................................................16

*Sosa v. Meyers*,
    No. 15813/06, 2006 WL 3393246 (N.Y. Sup. Ct. Nov. 22, 2006) .........................19

*Spinap Corp. v. Cafango*,
    756 N.Y.S.2d 86 (2d Dep't 2003)..................................................................15

*Streit v. Bushnell*,
    424 F. Supp. 2d 633 (S.D.N.Y. 2006)............................................................12

*Sutton v. Wachovia Sec., LLC*,
    208 Fed. Appx. 27 (2d Cir. 2006) ............................................................ 11-12

*Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso*,
    637 N.Y.S.2d 342 (1995)..............................................................................15

*Wallace v. N. Y. City Dep't of Corr.*,
    1996 WL 586797 (E.D.N.Y. 1996)................................................................12

*Weizmann Inst. Of Sciences v. Neschis*,
    229 F. Supp. 2d 234 (S.D.N.Y. 2002)............................................................11

*WIT Holding Corp. v. Klein*,
    282 A.D.2d 527 (2d Dep't 2001)...................................................................24

*In re Yukos Oil Co. Sec. Litig.*,
    2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ...........................................................................11

## **STATUTES**

Fed. R. Civ. P. 11 (West 2008) ...........................................................................................4

Fed. R. Civ. P. 12(b)(6) (West 2008) ...........................................................................1, 12

N.Y. C.P.L.R. §§ 203(g) (McKinney 2008) ...........................................................16, 18

N.Y. C.P.L.R. § 213 (McKinney 2008) ...................................................................16

N.Y. C.P.L.R. § 213(1) (McKinney 2008) ...........................................................16

N.Y. C.P.L.R § 213(2) (McKinney 2008) ...........................................................16

N.Y. C.P.L.R. § 213(8) (McKinney 2008) ...................................................3, 16, 18

N.Y. C.P.L.R. § 214(3) (McKinney 2008) ...........................................................16

N.Y. B.C.L. § 1104-a (McKinney 2008) ...........................................................15, 18

Defendants Abdolmajid Kermanshah ("Majid"), Abdolhamid Kermanshah ("Hamid"), 263 West 30th Inc., Banafsh Realty, Inc., Ebrahim Realty, Inc., Kermanshah Brothers Oriental Rugs, Inc., Kermanshah Oriental Rugs, Inc., Kermanshah Brothers Rugs, Inc., Overseas Partnership Co., Inc., Overseas Partnership Company, Rahman NY, Inc., Sherin West 86th Street Corp., Shirewil, Inc., Wilshire Limited (with Abbas Kermanshah ("Abbas"), the "Defendants") [1] respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint filed by Habibollah Kermanshah ("Plaintiff") in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this family dispute, Plaintiff alleges that he is an equal partner and owner along with his three brothers -- Hamid, Majid and Abbas -- in rug businesses and real estate partnerships in the United States. The gravamen of the claims in the January 15, 2008 Complaint and Jury Demand ("Complaint" or "Compl.") sound in fraud.

On March 13, 2008 counsel for all parties appeared before this Court for a preliminary conference. At the conference, defense counsel advised the Court and Plaintiff's counsel that Defendants would be moving to dismiss the Complaint on statute of limitations grounds since the alleged fraudulent acts all occurred more than 6 years before the lawsuit was commenced. Defense counsel further noted -- in response to the Court's questions -- that Plaintiff would not be able to take advantage of the discovery rule or the doctrine of equitable tolling since he had conceded in the Complaint that, since the mid-1990s, he had received no information whatsoever from his alleged co-partners about the rug or real estate businesses and had been completely excluded from those businesses.

Plaintiff's counsel did not disagree that the statute of limitations on Plaintiff's various claims had run. Rather, Plaintiff's counsel acknowledged that, in the end, ". . . I believe it is going to come

---

[1]    In a stipulation and order dated February 21, 2008, the parties agreed that Defendant Abbas Kermanshah has not yet been served. (Declaration of F. Barbara Gluck Reid, dated May 14, 2008 ("Reid Decl."), Ex. A.)

down to a discovery rule, when [the fraud] was discovered, if it was reasonable." (Transcript of Conference dated March 13, 2008, Reid F, Ex. B at 5:12-13.)

On March 21, 2008 Defendants moved to dismiss the Complaint on the ground that all the claims were time-barred and that the discovery rule could not save the Complaint since Plaintiff had conceded that he was on inquiry notice since the mid-1990s and had failed to conduct any due diligence whatsoever.

On April 18, 2008 Plaintiff served a First Amended Complaint and Jury Demand ("Amended Complaint" or "AC"). As set forth in greater detail below, when confronted with Defendants motion to dismiss, Plaintiff blatantly changed his statement of facts, directly contradicting the essential facts Defendants had relied on to support their motion. For example, whereas in the Complaint Plaintiff repeatedly and emphatically stated that since the mid-1900s he has received no information whatsoever regarding the U.S. rug and real estate businesses, none of those statements appear anywhere in the Amended Complaint. Those statements have been replaced with statements that are directly contradictory. According to the Amended Complaint, Plaintiff continued to receive information about the businesses until late 2006. Indeed, Plaintiff now claims that, whenever he came to the United States, his brothers regularly showed him the healthy rug inventory and the occupied units in the properties owned by the real estate partnerships.

As set forth below, courts have recognized that where, as here, a plaintiff, in order to respond to a motion to dismiss, files an amended complaint which blatantly and directly contradicts factual statements made in the original complaint and those factual statements go to the essence of the claim, the contradictory statements in the amended pleading should be disregarded.

Plaintiff's pleading problems do not end there. The blatant switch out of harmful facts is just the tip of the iceberg. In addition to making statements which directly contradict critical factual statements in the Complaint, Plaintiff attempts to bolster his specious claim that his bothers forged his name

2

on a deed and transfer document (a crucial component of the alleged fraud) with allegations which, based on publicly filed records, are indisputably false. Plaintiff asserts in the Amended Complaint that there was never a Power of Attorney authorizing any of the individual defendants to transfer real property on his behalf and that the Power of Attorney that was supposed to be filed with the Bargain and Sale Deed transferring the Monroe Street property ("Monroe Deed") was never filed. This is simply not true. A Power of Attorney from Plaintiff to his brothers Majid and Hamid, which included the authority to engage in "real estate transactions," was filed in the same Reel as the Monroe Deed. Indeed, it was filed on the same day just 4 minutes before the Monroe Deed was filed seven years ago. Furthermore, the Power of Attorney is easily accessed by going to http://a836-cris.nyc.gov/Scripts/DocSearch.dll/PName.

Moreover, in an attempt to save his time-barred claims, Plaintiff now blithely alleges that it was not until 2007 that he discovered the alleged fraud. That, however, is not enough to save those claims. For purposes of this motion, the dispositive date is not the date Plaintiff discovered the alleged fraud, but the date Plaintiff was put on inquiry notice triggering his duty to commence due diligence. Furthermore, it is Plaintiff's burden to establish that he was not aware of any events triggering inquiry notice prior to January 16, 2006, the measuring date under CPLR § 213(8). Plaintiff has not met his burden. Although the Amended Complaint pleads events that should have suggested to Plaintiff the probability that he had been defrauded thus putting him on inquiry notice, the crucial inquiry notice dates are either hopelessly vague or incorrect. For example, Plaintiff alleges that it was not until the mid 2000s that he learned or even had reason to believe that his brothers had excluded him from his rightful ownership interest in the United States rug and real estate businesses. Mid 2000s -- which includes 2003, 2004, 2005 -- is simply not specific enough where, as here, any date prior to January 16, 2006 would render Plaintiff's claims time-barred.

Moreover, Plaintiff acknowledges that he knows that his brothers told the Saudi Royal Family that he had no interest in the American rug business in which he alleges he is an equal partner. Plaintiff, however, does not specify when he learned about his brothers' communication with the Saudi Royal Family.  As to that critical date, Plaintiff simply says he learned of the communication "much later." However, the letter to the Saudi Royal Family about which Plaintiff complains was written in 2000, 8 years ago.

Last, but not least, Plaintiff alleges that it was not until "in or about 2006," as a result of litigation with Abbas in Saudi Arabia that he learned of his ouster from the United States rug business.  The fact is that Plaintiff filed a <u>counterclaim</u> against Abbas in Saudi Arabia on <u>December 27, 2005</u> -- a date more than 2 years before Plaintiff commenced this lawsuit --in which Plaintiff tries to convince the Saudi court that he is a partner in the U.S. rug business.  That  is precisely the same claim made here.

Clearly, as of December 27, 2005 (and perhaps much earlier) the Plaintiff was on notice that his ownership interests in the United States rug business was in doubt.  Thus, Plaintiff was put on inquiry notice and had 2 years from December 27, 2005 to file this lawsuit.  He failed to do so.

Despite the Court's admonition at the March 13, 2008 conference that allegations made in an amended complaint must not run afoul of Rule 11, the liberties taken by Plaintiff's counsel in the Amended Complaint -- ranging from affirmatively and deliberately misleading the Court regarding the facts surrounding the alleged forgery of Plaintiff's name on a deed, to the unprincipled wholesale deletion of critical "bad" facts which are then replaced with contradictory "good" facts, to unabashedly pleading critical dates either incorrectly or with such a lack of specificity -- calls into question the bona fides of the Amended Complaint and the measures taken by counsel to fulfill its Rule 11 obligations. [2]

---

[2]     Defendants reserve the right to move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

For those reasons, as more fully set forth below, the Amended Complaint should be dismissed in its entirety.

## STATEMENT OF RELEVANT ALLEGATIONS

**I.     The Rug Business**

According to the Amended Complaint, in 1971 Plaintiff and his brother Abbas opened a rug store in Iran called Kermanshah Rugs.  (AC ¶ 21.)  Shortly thereafter, Abbas relocated to the United States and opened a rug store called Houbas Oriental Rugs.  (AC ¶ 22.)  Plaintiff alleges that he and Abbas agreed that they would share equally in the profits from the two rug stores.  ( *Id.*)  During the 1970's, Plaintiff supplied rugs from Iran to be sold at the store Abbas opened.  (AC ¶ 23.)

According to the Amended Complaint, in or about 1978, Plaintiff and Abbas moved to Saudi Arabia and expanded their Persian rug business there.  (AC ¶ 25.)  In the late 1970's and early 1980's, Majid and Hamid emigrated from Iran to the United States (AC ¶¶ 24, 26), and were "charged with overseeing the New York business operations" (AC ¶ 31).

In 1972, Abbas formed Houbas Oriental Rugs, Inc. ("Houbas").  (Houbas Oriental Rugs, Inc., Certificate of Incorporation, dated July 11, 1972, Reid Decl., Ex. C.)  In 1973, Plaintiff and Abbas changed the name of their corporate entity from Houbas to Kermanshah Brothers Oriental Rugs, Inc. ("KBOR").  (AC ¶ 43; Houbas Oriental Rugs, Inc, Amendment to the Certificate of Incorporation, dated Jan. 29, 1973, Reid Decl., Ex. D.)  Plaintiff makes no claims against Houbas, and KBOR was dissolved in 1999.  (New York Secretary of State, Corporations Public Inquiry System, Current Status Information form for Kermanshah Brothers Oriental Rugs, Inc., dated Feb. 19, 2008, Reid Decl., Ex. E.)

Plaintiff alleges that in 1986 Defendants Abbas, Majid and Hamid gave the Plaintiff 160 shares of KBOR (out of 200) in exchange for satisfaction of his financial contributions, which were deemed loans.  (AC ¶ 51.)  On October 15, 1986, Defendants Abbas, Majid and Hamid formed Kermanshah

Oriental Rugs, Inc. ("KOR") and purportedly fraudulently conveyed KBOR's assets to KOR.  (AC ¶ 52;

Kermanshah Oriental Rugs, Inc., Certificate of Incorporation, dated Oct. 15, 1986, Reid Decl., Ex. F.)

Plaintiff alleges that Defendants Abbas, Majid and Hamid subsequently gave him a

minority ownership interest in KOR.  (AC ¶ 53.)  Plaintiff further alleges that in July 1995 Defendants

formed Kermanshah Brothers Rugs, Inc. ("KBR") to "further erode Plaintiff's ownership interests in the rug

business" in some unspecified way.  (*Id.*; Kermanshah Brothers Rugs, Inc., Certificate of Incorporation,

dated July 21, 1995, Reid Decl., Ex. G.)

## II.    The Real Estate Business

Plaintiff asserts that during the 1980's and 1990's, he sent income from his Saudi Arabian

rug operations to his brothers, Hamid and Majid, who used the money to purchase real estate in New York.

(AC ¶¶ 28-29.)  The four brothers purportedly agreed that any and all investments would be shared equally

between them.  (AC ¶ 30.)  During the late 1970's, 1980's and 1990's, Abbas, Majid and Hamid – but not

Plaintiff – formed various corporate entities through which they acquired real property in New York City.

(AC ¶¶ 32-35, 38-41.)

Plaintiff contends that in or about 1987, he and his brothers, Majid and Hamid, formed a

company called Overseas Partnership Company to acquire a residential building in New York City.  (AC ¶

36.)  In 2000, his brothers formed Overseas Partnership Co., Inc.  (AC ¶ 37.)  Plaintiff alleges that later that

year, his brothers transferred the real property held by Overseas Partnership Company to Overseas

Partnership Co., Inc., and, in doing so, forged Plaintiff's name on the deed and transfer documents.  (AC ¶

37.)  By May 2001, that sale had been recorded with the Office of the City Register of New York City.

(Bargain and Sale Deed By and Between Overseas Partnership Company and Overseas Partnership Co.,

Inc., dated Jan. 24, 2001 ("Monroe Deed"), Reid Decl., Ex. H).

In the Amended Complaint Plaintiff acknowledges that he gave the Defendants a Power of

Attorney.  (AC ¶ 37, fn. 1.)  Plaintiff then alleges that the Power of Attorney did not authorize Defendants

6

to execute a deed or transfer property on his behalf.  (*Id.*)  Contrary to Plaintiff's claim, the Power of

Attorney Plaintiff gave to defendants Majid and Hamid Kermanshah included "real estate transactions"

without any limitation.  ("General Power of Attorney executed June 13, 1985 ("GPOA"), Reid Decl., Ex. I..)

Plaintiff also alleges that the Power of Attorney was never recorded by Defendants. (AC ¶ 37, fn. 1.)  In

fact, the Power of Attorney was recorded with the City Register, County of New York at Reel 3288 PG1178

on May 15, 2001 at 11:48 a.m. (GPOA, Reid Decl., Ex. I).)  The Monroe Deed was recorded 4 minutes later

-- May 15, 2001 at 11:52 a.m. -- at Reel 3288 PG1186.  (Reid Decl., Ex. H.)

        Plaintiff alleges that at some unspecified time Defendants issued stock certificates to him

memorializing his ownership interest in some or all of the Real Estate Properties.  (AC ¶ 42.)  None of the

stock certificates are dated and only one certificate -- Kermanshah Brothers Oriental Rugs, Inc. -- is signed.

(AC at Exs. C and G.)[3]

        There are no allegations in the Complaint of any misconduct involving the Kermanshah

brothers' real estate holdings after 2000.

## III.    Allegations Regarding Plaintiff's Exclusion From The Rug And Real Estate Businesses

        The factual allegations regarding Plaintiff's total exclusion fmo the rug and the

real estate businesses were blatantly changed in the Amended Complaint.  For example:

- Plaintiff alleged in the Complaint that "Abbas, Majid and Hamill [sic] refused to account to Plaintiff or to provide Plaintiff with any information or documentation relating to the rug business or the Real Estate properties."  (Compl. ¶ 45.)  Plaintiff deleted this factual allegation from the Amended Complaint and replaced it with the following contradictory statement:  "Indeed during Plaintiff's visits to the United States -- up to late 2006, Defendants regularly showed Plaintiff the healthy inventory in the rug business and the occupied units in the Real Estate Properties, and reaffirmed Plaintiff's ownership interests in the businesses." (AC ¶ 57.)

---

[3]    Plaintiff, however, is aware that defendants Abbas and Hamid have stated in sworn affidavits filed in the Saudi litigation that their signatures on the certificate were forged.  (Affidavit of Abbas Kermanshah sworn to February 12, 2006 and Affidavit of Abdolhamid Kermanshah sworn to December 28, 2005, annexed as Ex. C to Affidavit of Abdolhamid Kermanshah sworn to May 14, 2008 ("H. Kermanshah Aff.").)

- Plaintiff alleged in the Complaint that "since the mid-1990s Defendants had concealed their business activities from Plaintiff and ceased providing Plaintiff with any information or documentation relating to the brothers' business activities, in which, Plaintiff is, at the very least, a 25% owner." (Compl. ¶ 52.)  Plaintiff contradicted this statement in the Amended Complaint by deleting the words "and ceased providing Plaintiff with any information or documentation relating to the brothers' business activities." (AC ¶ 58.)

- Plaintiff alleged in the Complaint that "[a]lthough initially, the Defendants forwarded stock certificates, bank records, and other financial or business records to Plaintiff, the practice of sharing information and documentation grounded [sic] to a halt in the mid-1990s." (Comp. ¶ 51.)  In the Amended Complaint, Plaintiff replaced this factual allegation with the following contradictory statement:   "Although initially, the Defendants forwarded one-time stock certificates and periodic bank records and other financial or business records to Plaintiff relating to the rug businesses, the practice of sharing occasional information and documentation ebbed in the mid 1990s.  Nevertheless, the practice of updating Plaintiff as to the rug business and other investments and making repeated representations that Plaintiff was an equal owner of the rug businesses and Real Estate Properties continued until as recently as late 2006." (AC ¶ 56.)

- Plaintiff alleged in the Complaint that "Abbas, Majid and Hamid refused to share any of the revenues, proceeds or profit from the rug businesses or the Real Estate Properties even though Plaintiff contributed most, if not all, of the funds to acquire the Real Estate Properties and spent most of the 1970s - 1990s building up the rug businesses to generate sufficient income to allow the brothers to acquire the Real Estate Properties." (Compl. ¶ 45.)  In the Amended Complaint, Plaintiff replaced this factual allegation with the following contradictory statement:   "In addition, until late 2006, the Defendants made payments to Plaintiff and his family, purportedly representing Plaintiff's share of the business.  Defendants, until at least 2005, filed and paid Plaintiffs personal taxes and his New Jersey property taxes, mortgage, maintenance, credit card bills.  The payments were presented to Plaintiff as his return on his investment -- his share of the businesses." (AC ¶ 49.)

- Plaintiff alleged in the Complaint that "[s]ince the mid-1990s, Defendants had concealed their business activities from Plaintiff and ceased providing Plaintiff with any information or documentation relating to the brothers' business activities, in which Plaintiff is, at the very least, a 25% owner." (Compl. ¶ 93.)  Plaintiff contradicted this statement in the Amended Complaint by adding the words "accurate or truthful' before the word information.  (AC ¶ 102.)

- In the Complaint Plaintiff alleged that by 1995 the Defendants had stripped him of any ownership rights in KOR "including decision-making, management, access to documents or information, or any share in revenue or profit." (Compl. ¶ 48.)  Plaintiff contradicted this statement in the Amended Complaint by deleting the words "including decision-making, management, access to documents or information, or any share in revenue or profit." (AC ¶ 53.)

Plaintiff nevertheless continues to concede that since the mid 1990s through 2006 "Defendants had concealed their business activities from Plaintiff . . .."  (AC ¶ 58.)

## IV.   <u>Discovery Of The Alleged Fraud</u>

Discovery of the alleged fraud -- wrongfully depriving Plaintiff of his ownership interests in the rug and real estate businesses in the United States -- is addressed for the first time in the Amended Complaint.  (AC ¶¶ 44, 45, 50, 59-61.)

Plaintiff acknowledges in the Complaint that defendants Abbas, Majid and Hamid "falsely advised the Saudi royal family that Plaintiff has no interest in KBOR and did not speak for the company." (Compl. ¶ 44.)  With respect to when he learned of this critical communication with the Saudi Royal Family, Plaintiff very cryptically states in the Amended Complaint that he learned about the allegedly false statement "much later." (AC ¶ 45.)  In fact, the Saudi Royal Family was notified in writing in October 2000 that Plaintiff had no interest in any Kermanshah business, including businesses in the United States. Specifically, in a notarized letter dated October 18, 2000, Hamid and Majid and their parents advised His Royal Highness Prince Abdulalh Faisal Alsaud that "Habibollah Kermanshah is our brother but he is not our business partner nor he [sic] involves [sic] in our business and any business transactions in the Royal Kingdom of Saudi Arabia and overseas including the United States of America."  (Letter dated October 18, 2000, annexed as Ex. A to H. Kermanshah Aff.)

Plaintiff also cryptically alleges that "until the mid-2000s," he had no knowledge, nor was there any reasonable basis for him to believe, that his brothers had excluded him from his ownership interests in the rug and real business and the real estate businesses.  (AC ¶ 59.)  Plaintiff next alleges that "in or about 2006,"after he discovered that defendant Abbas had diverted receivables from their Saudi business operations into a personal account, Plaintiff commenced a law suit against Abbas in Saudi Arabia.  (AC ¶ 60.)  Plaintiff actually filed a counter claim in Saudi Arabia against Abbas on <u>December 27, 2005</u> ("Saudi

Counterclaim").  In the Saudi Counterclaim Plaintiff argues that he and defendant Abbas are "partners in the trade of carpets whether in the Saudi Arabia or outside of Saudi Arabia."  (Pleading by Thanyan Said Bin Thanyan, annexed as Ex. B to M. Kermanshah Aff.)

Finally, despite conceding awareness of the October 2000 letter from his brothers to the Saudi Royal Family which unequivocally stated that Plaintiff was not their business partner in Saudi Arabia or the United States, Plaintiff alleges that it was not until "[i]n or about 2007", while in the midst of the Saudi Arabian lawsuit against Abbas, that he began to audit all of his business interests, including his businesses in the United States, and it was then that he learned for the first time that in 2001 defendants Hamid and Majid had forged his name on the Monroe Deed.  (AC ¶ 61.)  As noted above, the Monroe Deed was recorded in May  2001.

Plaintiff further alleges -- for the first time in the Amended Complaint -- that "virtually every time the brothers communicated," '[t]hroughout the relevant time period and as recently as late 2006," Abbas, Majid and Hamid each told Plaintiff, that he was an equal owner of the rug and real estate businesses in the Untied States.  (AC ¶ 46.)  Plaintiff alleges that those statements were made over the telephone, in person in both New York (by Hamid and Majid) and in Saudi Arabia (by Abbas) and in "written documents provided by each of the Defendants to Plaintiff." ( *Id.*.)[4]  Plaintiff further alleges that during one in-person meeting that occurred in New York in 2006, Hamid and Majid reassured Plaintiff that the issues in Saudi Arabia had no impact or relationship to the brothers' businesses in the United States. (AC ¶ 47.)  Finally, Plaintiff alleges that until, at least late 2006, Defendants pointed to the worthless stock certificate in KBOR as evidence of Plaintiff's equal ownership interest in the rug business.  (AC ¶ 53.)

---

[4]    Although Plaintiff annexed various documents to the Amended Complaint, he did not annex any of the documents in which he claims his brothers stated that he is an equal partner with them in the rug and real estate businesses in the United States.

## <u>LEGAL STANDARDS</u>

The standard for a motion to dismiss "is no longer that a complaint can be dismissed only if there is no 'set of facts' that plaintiff could prove which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (*quoting Conley v Gibson*, 355 U.S. 45-46 (1957)). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd* ., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In determining a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court will "accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor." *Alster v. Goord*, No. 05 Civ. 10883, 2008 WL 506406, at *2 (S.D.N.Y. Feb. 26, 2008). However, a court will accept as true only well-pleaded factual allegations and will not sustain a complaint that consists of "conclusory allegations or legal conclusions masquerading as factual conclusions." *Harrison v. Harlem Hosp.*, No. 05 Civ. 8271, 2007 WL 2822231, at *2 (S.D.N.Y. Sept. 28, 2007) (quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)). Furthermore, at the motion to dismiss stage, the Court need not accept as true allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice. *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024 *12 (S.D.N.Y. Oct. 25, 2006).

Further, in deciding a motion to dismiss, a court is not limited to the face of the complaint but "may consider documents . . . incorporated by reference [into the complaint], as well as any documents that are integral to, or explicitly referenced in, the pleading." *Weizmann Inst. Of Sciences v. Neschis*, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002). Courts also routinely take judicial notice of documents filed in other courts to establish the fact of such litigation. *Id.* A court also may take judicial notice of information contained in the public record. *Almonte v. City of Long Beach*, 478 F.3d 100, 104 n.2 (2d Cir. 2007); *see also Sutton v. Wachovia Sec., LLC*, 208 Fed. Appx. 27, 29 (2d Cir. 2006) ("It is well established that a

district court may rely on matters of public record in deciding a motion to dismiss under rule 12(b)(6)."). Accordingly, it is appropriate for the Court to consider corporate documents and deeds that are readily available from the New York Secretary of State's office or city agencies.  *See Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (articles of incorporation "fall directly into the category of items that the [court] generally considers proper for judicial notice . . . as part of a 12(b)(6) motion").

In a diversity action, as here, a federal court sitting in New York will apply New York law to determine the applicable statute of limitations.  *See Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) ("[I]t is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period.").

## ARGUMENT

### I.    THE COURT SHOULD NOT CONSIDER THE CONTRADICTORY AND MANIPULATED ALLEGATIONS OF THE AMENDED COMPLAINT IN RESOLVING THE MOTION SUB JUDICE.

Where a plaintiff blatantly amends his statement of facts to respond to a motion to dismiss and directly contradicts allegations set forth in the original complaint, the Court should accept the facts as described in the original, not the amended, complaint when ruling on a motion to dismiss.  *Wallace v. N. Y. City Dep't of Corr.,* 1996 WL 586797 (E.D.N.Y. 1996); *accord Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 (S.D.N.Y. 2006) (court declined to follow *Wallace* because the amended complaint simply modified some aspects of the pleading; had changes directly contradicted essential elements of claim they could have been disregarded).

In *Wallace* the defendants moved to dismiss plaintiff's complaint alleging Eighth Amendment violations on the ground that plaintiff failed to allege any practice or policy of the Department of Corrections or of the correctional facility which caused the constitutional violation.  After defendants filed their motion to dismiss, plaintiff filed an amended complaint in which "he blatantly change[d] his statement of facts in order to respond to defendants' motion to dismiss."  *Id* at.*2.  Wallace alleged that the

12

correctional facility in fact had a specific policy concerning the issue in that case, thus directly contradicting the facts set forth in the original complaint.

Here, as in *Wallace*, Plaintiff filed the Amended Complaint after Defendants filed their motion to dismiss.  Further, it is beyond peradventure that here, as in *Wallace*, Plaintiff blatantly changed his statement of facts to respond to Defendants' motion to dismiss.

In their original motion to dismiss, Defendants argued that the Complaint should be dismissed because all of the claims were time-barred.  Further, Defendants argued that the discovery rule could not save the Complaint because Plaintiff had alleged that (a) since the mid 1990s, he had been excluded from all decisions regarding the Kermanshah brothers' businesses and had received no information whatsoever from his brothers regarding the businesses in which he claimed to be an equal partner, and (b) the individual defendants had refused to share any of the profits from those businesses.  Accordingly, Defendants argued that Plaintiff had been on inquiry notice for more than a decade before commencing this law suit.

Remarkably, but not accidentally, the allegations Defendants relied upon in support of their motion to dismiss the Complaint have been blatantly and directly contradicted by new allegations in the Amended Complaint.  Gone is the allegation that "Abbas, Majid and Hamill [sic] refused to account to Plaintiff or to provide Plaintiff with any information or documentation relating to the rug business or the Real Estate properties."  Gone is the allegation that the Defendants' "practice of sharing information and documentation grounded [sic] to a halt in the mid-1990s."  Indeed, all of the statements to the effect that the Defendants stopped providing financial or other information about the businesses have vanished.  In place of those allegations, Plaintiff now inexplicably alleges that the information did not cease; rather, it simply "ebbed," or it continued to flow, but was not accurate or truthful.  Indeed, Plaintiff now alleges that

13

whenever he visited the United States the individual defendants regularly showed him the healthy inventory in the rug business and the occupied units in the real estate business.

Gone too is the allegation that Abbas, Majid and Hamid "refused to share any of the revenues, proceeds or profit from the rug or the real estate businesses even though Plaintiff contributed most, if not all, of the funds to acquire the real estate properties and spent most of the 1970s to the 1990s building up the rug businesses. . . ."  Plaintiff now inexplicably alleges that until late 2006 Defendants made payments to Plaintiff and his family, purportedly representing Plaintiff's share of the business.

The Court should not reward Plaintiff for filing what amounts to a sham pleading.  Plaintiff cannot explain how it is that in January 2008 he was certain that he had not received a penny from the Kermanshah rug and real estate businesses in the United States, but a scant three months later he claims to have received payments from those businesses through late 2006.  Nor can Plaintiff explain his 180 degree reversal on the question of withholding financial information.  How is it that in January 2008 Plaintiff was certain that all information regarding the brothers' United States businesses had ground to a halt in the mid-1990s, yet, in April 2008, he alleges that he received such information, indeed he regularly received information about the rug and real estate businesses whenever he visited the United Sates?  The only explanation is that Plaintiff changed his story to avoid dismissal.

The ramifications of Plaintiff's game of bait and switch (with respect to <u>facts</u> that are not subject to interpretation) are exacerbated by Plaintiff's other pleading machinations.  It is not an accident that Plaintiff's allegations regarding the all important inquiry notice date are so obtuse.  Given Plaintiff's pleading burden, it is unconscionable to allege that Plaintiff learned of the 2000 letter to the Saudi royal family "much later."  Nor is it an accident that Plaintiff used the phrase "in or about 2006" when describing the Saudi litigation against Abbas and failed to mention the December 2005 Saudi Counterclaim.  Further,

14

given the easy access through the internet to information regarding the Monroe Deed, there is no excuse for alleging that the Power of Attorney that was filed simultaneously with the Monroe Deed was never filed.

Consequently, the Court should reject the allegations set forth in paragraphs 49, 56, 57, and 102 of the First Amended Complaint and accept the facts as described in paragraphs 45, 48, 49, 51, 52 and 93 of the Complaint.

## II.    PLAINTIFF'S FIRST AMENDED COMPLAINT MUST BE DISMISSED BECAUSE ALL OF HIS CLAIMS ARE TIME-BARRED.

All of Plaintiff's claims are barred by the applicable statutes of limitations.  "If the allegations [of a complaint] show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  *Jones v. Bock*, 127 S. Ct. 910, 920-921 (2007).

### A.    The Statutory Period For Plaintiff's Claims Range From Two to Six Years.

Under New York law, a cause of action accrues as of the date when "all of the facts necessary to the cause of action" have occurred.  *Spinap Corp. v. Cafango*, 756 N.Y.S. 2d 86, 87 (2d Dep't 2003).  Plaintiff asserts ten causes of action.  The statutory periods for those causes of action range from two to six years:

- The statute of limitations for declaratory judgment, is based on the statute of limitations of the underlying claim.  *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso*, 637 N.Y.S.2d 342, 344 (1995).  As explained below, the statute of limitations for each of Plaintiff's other claims is no more than six years.

- A claim for shareholder oppression pursuant to New York Business Corporation Law Section 1104-a, is subject to a six-year statute of limitations, accruing from the date of the oppressive conduct or wrongdoing.  *See Di Pace v. Figueroa*, 637 N.Y.S.2d 222, 224 (3d Dep't 1996).

- Equitable causes of action, such as Plaintiff's cause of action for corporate dissolution, are governed by a six-year statute of limitations, accruing from the date of the wrongful conduct. *See* N.Y. C.P.L.R. § 213(1).

- The period of limitations for Plaintiff's breach of fiduciary duty claim seeking money damages, is three years from the date of the breach.[5]  *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (1st Dep't 2003).

- The statute of limitations for Plaintiff's fifth cause of action, breach of contract, is six years from the date of the breach.  *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (citing N.Y. C.P.L.R § 213(2)).

- Plaintiff's sixth cause of action, fraud, has a statute of limitations of six years from the date of the fraud or two years from either discovery of the fraud, or when the fraud could have been discovered with reasonable diligence.  *See Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (citing N.Y. C.P.L.R. §§ 203(g), 213(8)).  "The Plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action."  *Id.*

- Plaintiff's seventh cause of action, conversion, is subject to a three-year statute of limitations, accruing from the date of the conversion.  *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d. 691, 702 (S.D.N.Y. 2002) (citing N.Y. C.P.L.R. § 214(3)).

- Plaintiff's eighth cause of action, for an accounting, is subject to a six-year period of limitations, accruing from the date on which the duty to pay arises.  *Glynwill Invs. v. Prudential Secs. Inc.*, No. 92 Civ. 9267, 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (citing *Bernstein v. LaRue*, 501 N.Y.S.2d 896, 898 (2d Dep't 1986)).

- The period of limitations for Plaintiff's ninth cause of action, unjust enrichment, is six years, accruing from the date of the wrongful act giving rise to the duty of restitution.  *Helfand v. Sessler*, 753 N.Y.S.2d 300, 302 (N.Y. Civ. Ct. 2002) (citing N.Y. C.P.L.R. § 213(1)).

- Plaintiff's tenth cause of action, breach of the covenant of good faith and fair dealing, is subject to a six-year statute of limitations, accruing from the date of the breach.  *Pressley v. Northeastern Conf. of Seventh-Day Adventists*, No. 04-CV-3476, 2006 WL 2482435, at *4 (E.D.N.Y. Aug. 25, 2006) (citing N.Y. C.P.L.R. § 213).

Plaintiff filed his Complaint on January 16, 2008.  Accordingly, any claim that accrued prior to January 16, 2002 is barred by the statute of limitations.  "Except in cases of fraud . . . the statutory period of limitations begins to run from the time when liability for the wrong has arisen even though the injured party may be ignorant of the existence of the wrong."  *Ely-Cruikshank Co. v. Bank of Montreal*, 599 N.Y.S.2d 501, 503 (1993) (quoting *Schmidt v. Merchants Desp. Transp. Co.*, 270 N.Y. 287, 300 (1936)).

---

[5]    To the extent that Plaintiff's breach of fiduciary duty claim is based on fraud, the statute of limitations is six years from the date of the fraud or two years from the date of actual or constructive discovery of the facts constituting the fraud.  *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 167 (1st Dep't 2003).

**B.**     **Each Of Plaintiff's Claims Is Based Upon Events That Occurred More Than Six years Ago.**

For each cause of action, Plaintiff complains exclusively of events that occurred well before January 2002.  For example, in Plaintiff's claim for Declaratory Judgment, Plaintiff identifies the following actions of the Defendants as the basis for relief:

> Defendants Abbas, Majid and Hamid failed to include Plaintiff's name or ownership interests in the documents prepared and filed to form the corporate-defendants or acquire the Real Estate Properties, and/or forged Plaintiff's name on certain transfer documents, and/or formed new entities to the deliberate exclusion of Plaintiff's ownership rights and interests in the rug business and real properties.

(AC ¶ 66.)  According to the First Amended Complaint, the last Kermanshah brother entity created was Overseas Partnership Co. Inc., which was created in 2000.  (AC ¶ 37.)  The other entities of which Plaintiff complains were created in the 1970's, 1980's or 1990's.  (AC ¶¶ 32-35, 38-41, 47-48.)  Accordingly, any malfeasance in association with the formation of any Kermanshah-affiliated entity occurred outside the statutory period.

In Plaintiff's Second Count, minority shareholder oppression, he additionally complains that Abbas, Majid and Hamid refused to allow him to participate in their business ventures.  (AC ¶ 73.) Likewise, in his claim for breach of contract, Plaintiff again complains of his brothers' refusal "to provide Plaintiff with any information, accounting or documentation relating to . . . the brothers' business ventures." (AC ¶ 82.)  And, again in his claim for conversion, Plaintiff complains that Abbas, Majid and Hamid "fail[ed] to include Plaintiff as an equal partner and member in the rug business and Real Estate Properties." (AC ¶ 85.)  The allegations which this Court should accept as true for purposes of this motion makes plain that Plaintiff's exclusion from the Kermanshah brothers' business occurred in the mid-1990's, well before January 2002.  (Compl. ¶¶ 45, 48, 51.)

Further, Plaintiff's alleged status as a current shareholder does not affect the statute of limitations applicable to his claim under New York Business Corporation Law Section 1104-a or otherwise

17

absolve Plaintiff of his obligation to diligently pursue his claims. *See Di Pace v. Figueroa*, 637 N.Y.S.2d 222, 224 (3d Dep't 1996) (denying a current shareholder's petition for dissolution based on New York Business Corporation Law section 1104-a because no wrongdoing occurred within the six-year statute of limitation period).

      Having failed to allege any action after January 2002, Plaintiff's claims should be dismissed in their entirety.

C. **Plaintiff's Sixth Cause Of Action For Fraud Is Time-Barred And Is Not Saved By the Discovery Rule.**

      Fraud, Plaintiff's sixth cause of action, has a statute of limitations of six years from the date of the fraud or two years from either discovery of the fraud, or when the fraud could have been discovered with reasonable diligence. *See Guilbert*, 480 F.3d 140, 147 (citing N.Y. C.P.L.R. §§ 203(g), 213(8)). "The Plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action." *Id*. "[W]here it conclusively appears that the plaintiff has knowledge of facts which should have caused her to inquire and discover the alleged fraud" the Complaint should be dismissed. *Rattner v. York*, 571 N.Y.S.2d 762, 765 (2d Dep't 1991); *see also Hammond v. Reichbach*, 648 N.Y.S.2d 98, 98-99 (1st Dep't 1996).

1. **All Alleged Fraudulent Acts Occurred Prior To January 2002.**

      With respect to his fraud claim, Plaintiff has alleged that

> the Defendants . . . , issued stock certificates to Plaintiff that were designed to mislead Plaintiff into believing he held an equity ownership of some or all of the corporate-defendants, while, in fact, rendering those stock certificates worthless.

(AC ¶ 85.) As recited in the Statement of Allegations and explained above, all of the purported frauds occurred well before January 2002. There are no allegations that the Defendants took any action against Plaintiff's purported interest in the Kermanshah brothers' rug business after 1995. Furthermore, with respect to the real estate business, Plaintiff points to one alleged fraudulent act in 2000 -- the use of a forged deed to

transfer the Monroe Street property.  For the reasons set forth in section II of the Statement of Relevant

Allegations, *supra*, the allegations regarding the forgery of the Monroe Deed should not be deemed true for

purposes of this motion, but in any event occurred more than six years before the Complaint  was filed..

> **2.      Plaintiff Was On Inquiry Notice No Later Than December 27, 2005,
> Thus, The Discovery Rule Cannot Save The Time-Barred Claims.**

The test for diligence is well established.

> The test as to when fraud should with reasonable diligence have been
> discovered is an objective one. . . .  'Where the circumstances are such as
> to suggest to a person of ordinary intelligence the probability that he has
> been defrauded, a duty of inquiry arises, and if he omits that inquiry when
> it would have developed the truth, and shuts his eyes to the facts which
> call for investigation, knowledge of the fraud will be imputed to him.'

*Ferber v. Ehrlich*, No. 93 Civ. 818, 1994 WL 132168, at *6 (S.D.N.Y. Apr. 14, 1994) (quoting  *Armstrong*

*v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983)).  "The issue of when a plaintiff could have discovered an

alleged fraud turns upon whether the plaintiff possessed knowledge of facts from which he or she could

reasonably have inferred that fraud had occurred.  A plaintiff may not shut his or her eyes to facts which call

for investigation."  *Sosa v. Meyers*, 2006 WL 3393246, No. 15813/06, 2006 WL 3393246, at *5.  (N.Y.

Sup. Ct. Nov. 22, 2006).

With respect to the fraud claim -- the gravamen of this lawsuit -- Plaintiff's counsel hit the

nail on the head when he told this Court at the preliminary conference that whether Plaintiff can survive a

motion to dismiss will "come down to a discovery rule, when [the alleged fraud] was discovered, if it was

reasonable."  For purposes of this motion there are in fact two critical dates; first, the date Plaintiff learned

of the alleged fraud and second, the date Plaintiff was placed on inquiry notice.  Although Plaintiff claims

that he first discovered the fraud in 2007, that is not enough to save this lawsuit from dismissal.  It is not

enough because there are ample facts which called for investigation, thus triggering the inquiry notice

period.   Plaintiff has not met his burden with respect to the latter date because the inquiry notice dates are

wrong or  hopelessly vague.

In the Amended Complaint Plaintiff refers to an action he commenced in Saudi Arabia "in or about 2006" against his brother Abbas. (AC ¶ In fact, Plaintiff commenced litigation against Abbas (via counterclaim) in Saudi Arabia in December 2005. The Saudi Counterclaim dated December 27, 2005, prepared by Plaintiff's Saudi Arabian attorneys, is one long diatribe in which Plaintiff tries to convince the Saudi courts that he and his brother Abbas are partners in the rug business not only in Saudi Arabia but in the United States as well. Among other things, the Saudi Counterclaim repeatedly refers to the 160 shares Plaintiff claims to own in KBOR. It is obvious that Plaintiff's claims of ownership would have been on his mind before engaging counsel to sue, but certainly by December 2005, Plaintiff felt the need to defend in the Saudi courts his alleged ownership interest in the United States rug business. Thus, clearly by December 2005, at the latest, Plaintiff was on inquiry notice and had a duty to commence due diligence with respect to all his alleged business interests with his brothers in the United States. Yet, Plaintiff concedes in paragraph 61 of the First Amended Complaint that he did not commence an inquiry into the United States businesses until 2007.

December 2005, however, may not be the correct date for triggering inquiry notice. Inquiry notice, it appears, was triggered years earlier. First, Plaintiff alleges that "<u>until the mid-2000s</u> ", he had no knowledge, nor was there any reasonable basis for him to believe, that his brothers had excluded Plaintiff from his rightful ownership interests in the U.S. rug and real estate businesses. (AC ¶ 59.) This allegation is simply too vague to sustain a complaint where Plaintiff knows that defendants have asserted that the claims are time-barred. The "mid 2000s" includes 2003 through 2006, an implicit concession. Plaintiff has conceded through his deliberately imprecise pleading that he was on inquiry notice as early as 2003, 2004 or 2005, well before the January 2006 cut-off date.

Second, Plaintiff alleges that he is aware that Abbas, Majid and Hamid "falsely advised the Saudi royal family that Plaintiff has no interest in KBOR and did not speak for the company." (AC ¶ 45.)

Inasmuch as this case is all about Plaintiff's claim that his brothers Majid, Hamid and Abbas wrongfully excluded him from the United States rug and real estate businesses, the date that Plaintiff became aware of this communication with the Saudi Royal Family is critical. With respect to this pivotal date, Plaintiff not only fails to provide the date of the communication to the Saudi family, Plaintiff compounds the problem by stating that he learned of the communication "<u>much later.</u>" "Much later" is simply too vague where, as here, the letter to the Saudi Royal Family clearly put Plaintiff on inquiry notice, and Plaintiff bears the burden of pleading that there was no event that put him on inquiry notice.

Moreover, the Court has before it documentary evidence establishing that the communication with the Saudi royal family occurred on October 18, 2000 --nearly 8 years before this lawsuit was filed-- when defendants Hamid and Majid sent a notarized letter to Prince Faisal advising him that Plaintiff had no interest in any Kermanshah business, including businesses in the United States. The only reasonable inference to be drawn from Plaintiff's calculated decision to plead this critical fact so imprecisely is that Plaintiff learned about the communication long before January 2006 and is hiding that fact from the Court to avoid dismissal.

Finally, if the Court disregards the patently contrived allegations in paragraphs 49, 56, 57,and 102 of the First Amended Complaint and accepts as true the facts set forth in paragraphs 45, 48, 49, 51, 52 and 93 of the Complaint, it is abundantly clear, as evidenced by the following allegations, that the Plaintiff sat on his hands for well over a decade despite obvious and plentiful reasons to be concerned for his alleged investment.

- Plaintiff began sharing profits with his brother Abbas in 1971 and his other brothers by the late 1970's (AC ¶¶ 21-22, 26-27) and during the 1980's and 1990's, Plaintiff "sent a vast majority of his revenue and income to his brothers in the United States who . . . used the money to invest in real estate in New York" (AC ¶ 29);

- In 1986, Plaintiff's brothers defrauded him into forgiving "loans" to them in exchange for an 80% interest in a company that turned out to be worthless (AC ¶¶ 46-47), and they refused to share <u>any</u> of the revenue, proceeds or profit from the rug or real estate businesses despite his

significant contributions to both businesses. (Compl. 45.) and in 1995, Plaintiff was given shares in another worthless company (AC ¶ 48); and

- In the mid-1990's, Plaintiff was excluded from any and all decisions involving the Kermanshah brothers' business (Compl. ¶ 48) and, contrary to past practice "he was thereafter denied any information about those businesses (Compl. ¶¶ 51-52).

Indeed, failure to receive required or requested documents alone triggers a duty to inquire. In *Henkind v. Brauser*, No. 87 Civ. 4072, 1989 WL 54109 (S.D.N.Y. May 17, 1989), plaintiffs, limited partners, asserted several fraud-based claims against defendants. Plaintiff alleged that defendants failed to issue periodic statements required under an agreement between them. *Id*. at *7. The court held that a "reasonable investor would have inquired into the reasons for defendants' failure to comply." *Id*. at 8. The court noted that "[u]nawareness of facts or law, alone, does not justify suspending the statute of limitations" and "[c]ommencement of the statutory period will not await plaintiff's leisurely discovery of the full details of the alleged scheme." *Id*. (quoting *Arneil v. Ramsey,* 550 F.2d 774, 781 (2d Cir. 1977) and *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970)).

Further, the allegations in the Amended Complaint to the effect that throughout the relevant time period and up until late 2006, his brothers repeatedly reassured Plaintiff that he was an equal partner with them in the U.S. rug and real estate businesses, do not save this time-barred claim because Plaintiff's reliance on the alleged misrepresentations was not reasonable. Under New York law, reasonable reliance on the alleged misrepresentations is an essential element of common law fraud. *Katura v. D.E. Jones, Commod., Inc*., 835 F.2d 966, 970-71 (2d Cir. 1987). Reliance on the same alleged misrepresentation for more than a decade, as Plaintiff did here, is not reasonable. *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387 (2d Cir. 2001) (in the context of reviewing a motion to dismiss the Second Circuit held "we simply cannot accept that plaintiff [a former employee seeking payment of pension benefits he was allegedly promised at the time of employment] reasonably relied on [the statement that there would have to be an accounting before benefits could be resumed] for 18 years before bringing a fraud claim. . . .") Where, as

22

here, Plaintiff concedes that he had been locked out of all aspects of the rug and real estate businesses since

the mid-1990s and had received no revenue whatsoever from those enterprises waiting nearly 15 years to

bring a fraud claim is simply unreasonable.  Further, reliance is not reasonable where, as here, Plaintiff was

placed on guard by the letter to the Saudi family, the fact that the stock certificates were highly irregular in

that they were not signed or dated, and that he felt compelled to file the Saudi Counterclaim to establish his

ownership status.  *Mallis v. Bankers Trust Co*., 615 F.2d 68, 81 (2d Cir. 1980) ("Decisions holding that

reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard

or practically faced with the facts.")

### 3.    If Plaintiff Had Acted With Reasonable Diligence, He Would Have Discovered The Alleged Fraudulent Acts.

First, Plaintiff does not allege that he could not have discovered the alleged fraud with due

diligence.  Rather, he alleges -- albeit incorrectly -- that he had no reason to inquire until late 2006.

Second, a party cannot plead ignorance of a public record to which he has access.

*Abercrombie v. Andrew College*, 438 F. Supp.2d 243, 267 ( S.D.N.Y. 2006).  Plaintiff could have obtained

publicly available information that would have revealed the alleged frauds.  Had Plaintiff made reasonable

inquiries, he easily could have found information from the New York Secretary of State regarding the

allegedly fraudulent corporate entities and information from the New York City Register about allegedly

fraudulently conveyed real estate.  Plaintiff complains about the Defendants creation of KOR (AC ¶ 47);

had he checked with the New York Secretary of State he would have discovered that the entity was created

in 1986 (Kermanshah Oriental Rugs, Inc., Certificate of Incorporation, dated Oct. 15, 1986 (Reid Decl. Ex.

E)).  *See A. Resnick Textile Co. v. Ramapo Trading Corp.*, No. 570890-01, 2003 WL 1748363, at *2 (1st

Dep't Mar. 13, 2003) (noting that plaintiff could have exercised due diligence by making a simple inquiry to

the Secretary of State, which inquiry would have made certain facts readily discoverable to plaintiff).

Plaintiff asserts claims against KBOR, but a simple check of the Secretary of State records would have

23

revealed that the corporation was dissolved nine years ago.  (New York Secretary of State, Corporations

Public Inquiry System, Current Status Information form for Kermanshah Brothers Oriental Rubs, Inc., dated

Feb. 19, 2008 (Reid  Decl., Ex. D).)

        To the extent Plaintiff claims that his breach of fiduciary duty claim is based on fraud, his

failure to make any effort to discover facts constituting the fraud also bars his breach of fiduciary duty

claims.  *See King v. Fox*, 28 Fed. Appx. 95, 99 (2d Cir. 2002).

    **D.**    **Plaintiff's Sixth Cause Of Action -- Fraud --Should Be Dismissed Because
It Is Duplicative Of The Breach of Contract Claim.**

        It is well-settled doctrine that a cause of action for fraud does not lie where the only fraud

claim relates to a breach of contract.  *Bridge St. Homeowners Assoc. v. Brick Condo. Dev., LLC* , 2008

WL344136, No. 26507/06 *4 (2008) (citing  *WIT Holding Corp. v. Klein* , 282 A.D.2d 527, 528 (2d Dep't

2001)). An examination of the sixth cause of action -- fraud -- and the fifth cause of action -- breach of

contract reveals that the allegations substantially track one another.  It is also well settled that a fraud claim

is not separately maintainable where plaintiff does not "allege that he sustained damages distinct from

contract damages.  *R.H. Damon & Co. v. Softkey Software Prod., Inc* ., 811 F. Supp 986, 992 (S.D.N.Y.

1993). Here, the demand for damages is identical for both the fraud and the contract causes of action.

24

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court issue an order dismissing the Amended Complaint in its entirety, with prejudice, and granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       May 14, 2008

SCHULTE ROTH & ZABEL LLP

By: /s/ F. Barbara Gluck Reid_____
    Robert M. Abrahams
    F. Barbara Gluck Reid

    919 Third Avenue
New York, New York  10022
(212) 756-2000
robert.abrahams@srz.com
barbara.reid@srz.com

Attorneys for Defendants

25