UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

HABIBOLLAH KERMANSHAH,

              Plaintiff,

v.

ABBAS KERMANSHAH, ABDOLMAJID
KERMANSHAH, a/k/a MAJID
KERMANSHAH, ABDOLHAMID
KERMANSHAH, a/k/a HAMID
KERMANSHAH, 263 WEST 30TH INC.,
BANAFSH REALTY, INC., EBRAHIM
REALITY, INC., KERMANSHAH
BROTHERS ORIENTAL RUGS, INC.,
KERMANSHAH ORIENTAL RUGS, INC.,
KERMANSHAH BROTHERS RUGS, INC.,
OVERSEAS PARTNERSHIP CO., INC.,
OVERSEAS PARTNERSHIP COMPANY,
RAHMAN NY, INC., SHERIN WEST 86TH
STREET CORP., SHIREWIL, INC., and
WILSHIRE LIMITED,

              Defendants.

--------------------------------------------------------x

CIVIL ACTION NO. 1:08 -cv-0409
BJS-AJP

**REVISED REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ABDOLMAJID KERMANSHAH, ABDOLHAMID KERMANSHAH, 263 WEST 30TH INC., BANAFSH REALTY, INC., EBRAHIM REALITY, INC., KERMANSHAH BROTHERS ORIENTAL RUGS, INC., KERMANSHAH ORIENTAL RUGS, INC., KERMANSHAH BROTHERS RUGS, INC., OVERSEAS PARTNERSHIP CO., INC., OVERSEAS PARTNERSHIP COMPANY, RAHMAN NY, INC., SHERIN WEST 86TH STREET CORP., SHIREWIL, INC., AND WILSHIRE LIMITED'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

ARGUMENT ............................................................................................................. 1

I.  PLAINTIFF HAS CONCEDED THAT HIS FRAUD CLAIM IS TIME BARRED ............... 1

    A. There Is No Dispute On The Law Applicable To The Statute Of Limitations For Fraud ... 2

    B. The Legal Effect of The October 2000 Letter ..................................................... 2

    C. The Question Of When Plaintiff Was On Inquiry Notice
       Can Be Decided On A Rule 12b-6 Motion ........................................................ 5

II.  THE STATUTE OF LIMITATIONS ON PLAINTIFF'S FRAUD CLAIM IS NOT TOLLED
    BY THE DOCTRINE OF FRAUDULENT CONCEALMENT OR EQUITABLE
    ESTOPPEL ........................................................................................................ 8

III.  PLAINTIFF IS NOT ENTITLED TO AN ACCOUNTING .................................................. 11

IV.  PLAINTIFF'S OTHER CAUSES OF ACTION ARE TIME BARRED AS WELL ............. 12

V.  THE CONTRADICTORY STATEMENTS IN THE AMENDED COMPLAINT
    SHOULD BE DISREGARDED. ......................................................................... 13

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007)..................................................................................9

*Barris v. Hamilton*,
No, 96 Civ. 9541, 1999 WL 311813 (S.D.N.Y. May 17, 1999)..............................15

*Cerbone v. Int'l Ladies Garment Workers Union*,
768 F.2d 45 (2d Cir. 1985)....................................................................................9

*Danann Realty Corp. v. Harris*,
5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959)....................................10

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
747 F. Supp. 2d 922 (S.D.N.Y. 1990)..................................................................9, 10

*Ely-Cruikshank Co. v. Bank of Montreal*,
81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993)..................................12

*Fried v. Kelly*,
No. 06 Civ. 1528, 2007 WL 1821697 (S.D.N.Y. June 26, 2007)......................10, 13

*Gross v Gross*,
38 A.D.3d 893, 833 N.Y.S.2d 563 (2d Dep't 2007)...............................................11

*Guilbert v. Gardner*,
480 F.3d 140 (2d Cir. 2007)....................................................................................2

*Harrison v. Rubenstein*,
No. 02 Civ. 9356, 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) ..............................6

*Irwin v. Dep't of Veterans Affairs*,
498 U.S. 89, 111 S. Ct. 453 (1990).........................................................................9

*Kaufman v. Cohen*,
307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) .........................................5, 6

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*,
32 F.2d 195 (2d Cir. 1929), *cert denied*,
280 U.S. 579, 50 S.Ct. 32, 74 L.Ed 629 (1929) ..................................................14

*Mallis v. Bankers Trust Co.*,
615 F.2d 68 (2d Cir. 1980)....................................................................................10

*In re Merrill Lynch Ltd. Partnerships Litigation*,
    154 F.3d 56 (2d Cir. 1998) ........................................................................5

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*,
    874 F. Supp 606 (S.D.N.Y. 1995) ............................................................13

*The Limited, Inc. v. McCrory Corp.*,
    683 F. Supp 387 (S.D.N.Y. 1988) ............................................................14

*Putter v. North Shore Univ. Hosp.*,
    7 N.Y.3d 548 (2006) ................................................................................10

*United States v. McKeon*,
    738 F.2d 26 (2d Cir. 1984) .......................................................................14

*Veltri v. Building Serv. 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004) .......................................................................9

*Weisl v. Polaris Holding Co.*,
    226 A.D.2d 286, 641 N.Y.S.2d 288 (1st Dep't 1996) ................................9

*World Wrestling Entertainment v. Jakks Pacific, Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ....................................................5, 7

## STATUTES

N.Y. Bus. Corp. Law § 624(b) (McKinney 2003) ......................................11

N.Y. P'ship Law § 74 (McKinney 2006) ....................................................11

.

<u>**ARGUMENT**</u>

I.    **PLAINTIFF HAS CONCEDED THAT HIS FRAUD CLAIM IS TIME BARRED**

Defendants[1] will not devote any portion of their reply brief to answering Plaintiff's hyperbolic accusations, rhetorical flourishes, and ad hominem attacks other than to note that Plaintiff "doth protest too much."

The salient, dispositive and undisputed facts (which Plaintiff ignored in his opposition brief) are the following:

- Plaintiff commenced this action on January 16, 2008;

- Plaintiff concedes that the Complaint does not allege misconduct in the last six years (Opp. Br.[2] at 3, 18).

- Plaintiff acknowledges that he knows that his brothers told the Saudi Royal Family that he had no interest in and did not speak for KBOR (AC ¶ 45);

- On <u>October 18, 2000</u>, defendants Hamid and Majid and their parents sent a notarized letter to His Royal Highness Prince Faisal of Saudi Arabia advising the Prince that "<u>Mr. Habibollah Kermanshah is our brother but he is not our business partner nor he involves [sic] in our business and any business transactions in the Royal Kingdom of Saudi Arabia and overseas including the United States of America (emphasis added)</u>"; (Affidavit of Abdolhamid Kermanshah sworn to May 14, 2008 at Ex. A);

- Plaintiff does not allege, argue or aver that he learned of the letter to the Saudi Royal Family <u>after</u> January 16, 2006 (AC ¶ 45 and Opposition Brief);

- Plaintiff alleges that as of the mid-2000s -- in other words, that as of as early as 2003, 2004 or 2005 -- there was a reasonable basis for him to believe that his brothers had excluded him from his rightful ownership interest in the rug and real estate businesses in the United States (AC ¶ 59); and

---

[1]  Unless otherwise noted, all capitalized terms shall have the same meaning as set forth in the Memorandum of Law In Support of Defendants Motion To Dismiss Plaintiff's First Amended Complaint (hereinafter referred to as "Moving Brief" or Mov. Br.").)

[2] Citations to Opp. Br. and references to Opposition Brief shall mean Plaintiff's Memorandum of Law in Opposition to Defendants' Motion To Dismiss Plaintiff's First Amended Complaint dated May 21, 2008.

.

- Plaintiff admits that (i) he did not commence any inquiry whatsoever into the rug and real estate businesses in the United States until sometime in 2007, and (b) the inquiry was not made in response to the letter to the Saudi Royal Family (AC ¶ 61).

Simply, even if this Court were to ignore completely Plaintiff's pleading sleight of hand, the facts admitted or ignored in the First Amended Complaint require its dismissal.

### A.    There Is No Dispute On The Law Applicable To The Statute Of Limitations For Fraud

The parties agree that the statute of limitations for a claim sounding in fraud is six years from the date of the fraud or two years from either the discovery of the fraud, or when the fraud could have been discovered with reasonable diligence. *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (Opp. Br. at 18.).  Nor does Plaintiff dispute or deny that he "bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action." *Id*. at 147 (2d Cir. 2007) (Mov. Br. at 18.)  Accordingly, the only issue before this Court is whether Plaintiff has met his burden by pleading facts which establish that he could not have discovered the fraud before January 16, 2006.  As set forth below, Plaintiff has not met that burden.

### B.    The Legal Effect of The October 2000 Letter

In their Moving Brief, Defendants argued that Plaintiff failed to meet his burden of proving that the alleged fraud -- wrongfully depriving Plaintiff of his ownership interests in the United States rug and real estate businesses -- could not have been discovered before January 16, 2006.  One basis for that argument is Plaintiff's allegation (both in the original and amended complaints) that he is aware of the fact that his brothers had advised the Saudi Royal Family that he had no interest in KBOR -- the United States rug business in which he claims he owns 160 shares of stock (AC ¶ 45).  In fact, the communication referenced in paragraph 45 of the First Amended Complaint-- properly considered by this Court because it is incorporated by reference

-2-

.

in the Amended Complaint -- is the signed and notarized letter dated October 18, 2000 from Hamid and Majid Kermanshah and their parents to Prince Faisal of Saudi Arabia in which they state "<u>Mr. Habibollah Kermanshah is our brother but he is not our business partner nor he involves [sic] in our business and any business transactions in the Royal Kingdom of Saudi Arabia and overseas including the United States of America (emphasis added).</u>"

Even with a second bite at the apple, Plaintiff does not allege that he learned of his brothers' communication with the Saudi Royal Family after January 16, 2006. Rather Plaintiff simply and insufficiently alleges that he learned of the October 2000 communication "much later." (AC ¶ 45.) Indeed even with a third bite at the apple, Plaintiff has not met his burden. Defendants' note that Plaintiff submitted what purports to be an Affidavit in opposition to the instant motion in which he set forth additional facts. Plaintiff, however, does not state in his Affidavit that he had in fact learned of the letter after January 16, 2006 or that the letter is not the document referred to in paragraph 45 of the Amended Complaint. Indeed, he says nothing about it.

Nor does Plaintiff address this glaring -- and motion dispositive -- deficiency in his Opposition Brief. As a matter of fact, other than setting forth the text of paragraph 45 of the Amended Complaint in the Statement Of Facts, Plaintiff does not even mention the critical letter to the Saudi Royal Family. Plaintiff does not deny or dispute that the October 2000 letter to the Saudi Royal Family is in fact the communication being referred to in paragraph 45 of the Amended Complaint. Moreover, Plaintiff does not argue or even suggest that the phrase "much later" actually means sometime after January 16, 2002 or that such a vague allegation is sufficient for pleading purposes. Obviously, the October 2000 letter is more than merely a

.

reasonable basis on which to require inquiry notice. It is in fact <u>actual</u> notice of the alleged fraud stripping Plaintiff of his claimed ownership interest in those businesses.

   If that were not enough, Defendants pointed to the allegation in paragraph 59 of the Amended Complaint which states that by the mid-2000s, Plaintiff had a reasonable basis to believe his brothers had excluded him from his rightful share of the United States businesses. Defendants therefore argued in their Moving Brief that Plaintiff has admitted that he was on inquiry notice as early as perhaps 2003 or 2004. (Mov. Br. at 20.)  Plaintiff does not address this argument either.  Indeed, Plaintiff does not deny or dispute that he was on inquiry notice as early as 2003 or 2004 and admits that he failed to make any inquiry whatsoever until 2007.

   Plaintiff has not satisfied his pleading burden by alleging that he did not discover the fraud until 2007, and no matter how many times he repeats the same argument in his opposition papers it does not change that fact.  Similarly, and with all respect to  Plaintiff's counsel, the argument that the December 27, 2005 Saudi counterclaim proves that Plaintiff still thought he was a partner is not helpful.  (Opp. Br. at 3.)  The only thing it proves is that Plaintiff was on inquiry notice that his partnership interests had been attacked.

   In sum, Plaintiff's silence regarding the October 2000 letter to the Saudi Royal Family coupled with his silence regarding the admission that he had a reason to be suspect that his status as an equal partner was in doubt as early as perhaps 2003 or 2004, coupled with his admission that he did nothing to investigate his suspicions or the allegation in the October 2000 letter until 2007 compels the conclusion that he has not met his pleading burden and the fraud claim must be dismissed.

.

### C.    The Question Of When Plaintiff Was On Inquiry Notice Can Be Decided On A Rule 12b-6 Motion

Plaintiff also contends  that the question of when a plaintiff is on inquiry notice is a question of fact that cannot be decided on a motion to dismiss or even a motion for summary judgment.  (Opp. Br. at 19-21.)  The case law does not support the argument.  "Where . . . the facts needed for determination of when a reasonable [person] of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint, resolution of the issue on a motion to dismiss is appropriate."  *World Wrestling Entertainment v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 528 (S.D.N.Y. 2007).  *In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56,  60 (2d Cir. 1998) ("We have held that the question of inquiry notice need not be left to a finder of fact.")

The undisputed facts which the Court needs to determine in order to ascertain when Plaintiff would have been aware of the existence of the alleged fraud can be readily gleaned from the face of the Amended Complaint and the documents included by reference or integral to the Amended Complaint.  The communication to the Saudi Royal Family -- which Plaintiff acknowledges he was aware of -- is all that a reasonable person would need to know to conclude that his brothers were, as he now claims, wrongfully depriving him of his ownership interests in the United States rug and real estate businesses.

Plaintiff cites a state court case, *Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003), for the proposition that inquiry notice is not a question that can be resolved on a motion to dismiss.  In *Cohen*, partners sued a co-partner for breach of fiduciary duty and fraud for advising them that the partnership's property was being sold in foreclosure, and could not be salvaged, while secretly organizing with others to acquire the property.  The trial court held that a letter sent to plaintiffs stating that all future correspondence and payments

-5-

.

should be sent to a new management company to the attention of the defendant's daughter, put

them on inquiry notice and dismissed their fraud claim on statute of limitations grounds.  The

First Department reversed on the ground that a "question of fact exists as to whether plaintiffs

could reasonably have inferred from the April 1994 letter, or from public documents relating to

the foreclosure sale that a fraud was perpetrated on them."  *Cohen*, 760 N.Y.S.2d at 123.  By

contrast, in this case, where the alleged fraud is the wrongful exclusion of Plaintiff from his

alleged ownership interest in the United States rug and real estate businesses, there can be no

question of fact that from the moment Plaintiff read the letter to the Saudi Royal Family or

learned of its contents that Plaintiff not only could have discovered the fraud, but in fact had

discovered the alleged fraud.

     Moreover, *Harrison v. Rubenstein*, No. 02 Civ. 9356, 2007 WL 582955

(S.D.N.Y. Feb. 26, 2007), another case Plaintiff relies on in support of his argument that that it

would be premature to rule on a notice inquiry question at the motion to dismiss stage, also is

readily distinguishable.  In *Harrison,* the plaintiff alleged that after he was placed on inquiry

notice, he diligently investigated the possibility of fraud and detailed the steps he took to try and

uncover the complex fraud in the one-year window allowed.  The *Harrison* court held that, given

plaintiff's allegations of prompt due diligence, it was inappropriate to decide at the motion-to-

dismiss stage at what point in the investigation plaintiff reasonably should have known of the

fraud.  The first and most obvious distinction is that here, unlike in *Harrison*, Plaintiff has not

alleged that he commenced <u>any</u> inquiry after he learned that his brothers told the Saudi Royal

Family that he was not their partner in any business venture, be it in Saudi Arabia or the United

States.  Indeed, since the October 2000 letter to the Saudi Royal Family is evidence of the fraud

.

itself; no further inquiry was necessary.  Plaintiff concedes that he did not begin auditing his

United States business interests until sometime in 2007 -- hardly an example of diligence.

The fact that Plaintiff acknowledges that he failed to engage in any due diligence

after learning that his brothers told the Saudi Royal Family that he was not a partner with them in

any businesses, including businesses in the United States, is particularly important because "a

plaintiff who fails to adequately allege due diligence throughout the entire time to be tolled is

imputed to be aware of the misconduct at the time of the injury as if he had been reasonably

diligent."  *World Wrestling Entertainment v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 530

(S.D.N.Y. 2007) (court rejected plaintiff's argument that the dispute over due diligence could not

be resolved through motions to dismiss and held that plaintiff's claim that it acted diligently in

uncovering the scheme after litigation began in another case and the difficulty it had in

uncovering some of the defendants' efforts to conceal the plot was unavailing since plaintiff

failed to allege any due diligence for two years during the period it sought to be tolled.)

Plaintiff also argues that the weight of the evidence militates against a finding that

he was on inquiry notice of Defendants' misconduct because "[i]n an action for actual fraud, the

discovery that gives rise to accrual of the action for limitations purposes must be discovery of the

facts constituting the fraud itself and not those merely constituting evidence of them."  (Opp. Br.

at 21.)  This argument, too, is unavailing.  Plaintiffs' argument is fatally flawed because he

erroneously claims that Defendants' motion to dismiss is based entirely upon Plaintiff's assertion

that Defendants stopped sending certain documents regarding the rug business.  That, however,

is not true.  As discussed in detail in Section I, *supra*, Defendants' motion to dismiss also was

predicated on the October 2000 letter to the Saudi Royal Family and Plaintiff's admission that he

was aware that his brother had told the Royal Family that he, Plaintiff, had no interest in the

.

United States rug business; a letter that clearly put him on notice of the actual alleged fraud and not merely of some possible fraud. Rather than address the issue of his admission in paragraph 45 of the Amended Complaint, coupled with October 2000 letter to the Saudi Royal Family head-on, Plaintiff coyly and disingenuously argues, "Is there any indication that Plaintiff had knowledge of the 'fraudulent acts' prior to 2007?" (Opp. Br. at 21.) The answer to that question obviously and unequivocally, is YES.

Next, Plaintiff argues that in a case such as this one, which involves privately held companies, Plaintiff had no obligation to obtain publicly available information that would have revealed the alleged fraud. (Opp. Br. at 22.) Plaintiff further argues that Defendants are misguided because the issue is not whether Plaintiff could have inquired of publicly available documents, but rather, whether he had a reason to. Plaintiff's excuse: there was no reason to inquire since, allegedly, he was receiving money from his investments every year and was being reassured by his brothers that he was an equal partner.

Plaintiff's argument ignores his own allegations in paragraphs 45 and 59 of the Amended Complaint, where he admits that (i) he knew that his brothers didn't consider him their partner because they made that declaration in a notarized letter to the Saudi Royal Family, and (ii) he had a reasonable belief as early as 2003 or 2004 that his brothers had excluded him from the U.S. businesses. Turning a blind eye to those problematic facts will not save Plaintiff's time-barred fraud claim.

## II.  THE STATUTE OF LIMITATIONS ON PLAINTIFF'S FRAUD CLAIM IS NOT TOLLED BY THE DOCTRINE OF FRAUDULENT CONCEALMENT OR EQUITABLE ESTOPPEL

Contrary to Plaintiff's assertion, a statue of limitations is not automatically "tolled where the Defendants fraudulently concealed the existence of the cause of action or where the plaintiff is ignorant of the cause of action because of the defendant's fraudulent concealment."

.

(Opp. Br. at 22.)  The burden of demonstrating that either equitable tolling or equitable estoppel applies lies with the plaintiff. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).  Plaintiff has not met his burden.

Equitable tolling involves cases where the plaintiff is ignorant of a cause of action because of defendant's fraudulent concealment.  *Cerbone v. Int'l Ladies Garment Workers Union*, 768 F.2d 45, 49-50 (2d Cir. 1985).  Furthermore, because "[e]quitable tolling is an extraordinary measure [it] applies <u>only</u> when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances (emphasis added)." *Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453 (1990)[3]  Where a plaintiff is on actual notice, as in this case, "there can be no claim of fraudulent concealment warranting a tolling of the Statute of Lim  itations."  *See Weisl v. Polaris Holding Co*., 226 A.D.2d 286, 641 N.Y.S.2d 288, 289 (1st Dep't 1996) (court held there was no fraudulent concealment as a matter of law where plaintiff was on inquiry notice; here the facts are even stronger since Plaintiff was on actual notice of the alleged fraud, not simply inquiry notice.)

Nor can the doctrine of equitable estoppel -- which involves cases where the plaintiff knew of the existence of the cause of action but defendant's conduct caused him to delay in bringing a timely lawsuit, *Cerbone,* 768 F.2d at 49-50 -- save Plaintiff's time-barred fraud claim.  Defendants alleged repeated oral statements reassuring him of his status a an equal partner and the alleged payments over the years to cover Plaintiff's living expenses is not enough; Plaintiff is required to show that his reliance on the alleged misrepresentations was

---

[3] The federal equitable tolling doctrine tolls the statute of limitations with respect to federally created causes of action sounding in fraud or federally created causes of action which have been fraudulently concealed.  *Dep't of Econ. Dev. v. Arthur Andersen & Co*., 747 F. Supp. 2d 922, 943 (S.D.N.Y. 1990).  Thus, the doctrine does not apply to Plaintiff's fraud claim or any of his other claims, all of which are state-law based.

.

<u>reasonable</u>.  *Fried v. Kelly*, No. 06 Civ. 1528, 2007 WL 1821697 (S.D.N.Y. June 26, 2007)

(citing *Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552-53 (2006)); *Dep't of Econ. Dev. v.*

*Arthur Andersen & Co.*, 747 F.Supp.2d 922, 943 (S.D.N.Y. 1990).  As Defendants argued in

their Moving Brief (Mov. Br. 23), it is well settled that reliance on representations is not

reasonable where Plaintiff is placed on guard or practically faced with adverse facts.  *Mallis v.*

*Bankers Trust Co.*, 615 F.2d 68, 81 (2d Cir. 1980).  There can be no doubt that Plaintiff not only

was placed on his guard, but also practically faced with adverse facts after learning that his

brothers told the Saudi Royal Family that Plaintiff was not a partner in any of their business

enterprises, anywhere.  The fact that the letter was sent to the Saudi Royal Family, as opposed to

an individual one-time purchaser of a rug in New York or Iran, adds further significance to the

letter.  This was notice to a very public figure.  Further, the import of the letter is underscored by

the fact that it was notarized and signed by Plaintiff's parents as well.

   The analogy here is to a situation where a plaintiff alleges reliance on oral

representations which are contradicted by an agreement or writing.  It is well settled that in that

case there is no reasonable reliance. *See Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184

N.Y.S.2d 599, 157 N.E.2d 597 (1959).

   In the face of undisputed documentary evidence that Plaintiff knew that

Defendants did not consider him their business partner coupled with the fact that "Plaintiff

continue to maintain that Defendants did not provide any documentation or information after the

1990s" (Opp. Br. at 17), there can be no reasonable reliance as a matter of law on subsequent

oral representations, particularly, where, as here, Plaintiff does not allege that he ever asked any

of his brothers point-blank about the letter to the Saudi Royal Family and the statement therein.

.

## III.    PLAINTIFF IS NOT ENTITLED TO AN ACCOUNTING

Citing section 624 of the New York Business Corporation Law and Section 74 of the New York Partnership Law, Plaintiff contends that he has "an absolute right to an accounting of the partnership books and records and of his ownership interests in the corporate entities."[4] (Opp. Br. at 24.)  Neither statutory provision, however, supports Plaintiff's claim.

Section 74 of the Partnership Law provides that "[t]he right to an account of his interest shall accrue to any partner . . . , as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of an agreement to the contrary."  N.Y. P'ship Law § 74 (McKinney 2006).  Since there has been no dissolution and plaintiff has not alleged that his alleged oral and written agreements require an accounting at any specified time, Plaintiff cannot rely on this provision to demand an accounting.

Section 624(b) of the Business Corporation Law requires a shareholder to make a written demand prior to being allowed to inspect the books and records of the corporation.  N.Y. Bus. Corp. Law § 624(b) (McKinney 2003).  Plaintiff does not allege that he ever made a demand in writing or orally to any of his brothers or to any of the corporate entities.  (*See* AC ¶¶ 20-61, 97-102.)  Consequently, he has failed to state a claim for an accounting and may not demand one now.

Even if the Court were to construe the eighth cause of action as a demand for an equitable remedy, Plaintiff is still not entitled to the relief sought because he has failed to allege that he demanded the Defendants account and that they refused.  *Gross v Gross*, 38 A.D.3d 893, 833 N.Y.S.2d 563 (2d Dep't 2007).

---

[4] In the First Amended Complaint Plaintiff seeks an accounting pursuant only to Section 624 of the Business Corporation Law.  (AC at ¶ 98.)

.

## IV.    PLAINTIFF'S OTHER CAUSES OF ACTION ARE TIME BARRED AS WELL

Plaintiff contends that his claims for declaratory judgment, breach of fiduciary duty, breach of contract, conversion and unjust enrichment are all timely, citing Defendants' alleged fraud as tolling the relevant statutes of limitation.  (Opp, Br. at 23.)  Inasmuch as Plaintiff's fraud claim is not timely as a matter of law, the other claims, all of which rely on and stem from the alleged fraud, are not timely either.

Plaintiff also contends that his claims for breach of contract, oppression and dissolution have not expired because those claims too are tolled by the doctrine of equitable estoppel.  (Opp.Br. at 23.)  For all of the reasons set forth above, Plaintiff cannot rely on the doctrine of equitable estoppel to salvage those claims and, they too, are time barred.

Alternatively, Plaintiff argues -- without any legal precedent whatsoever -- that his "claims for oppression and dissolution cannot possibly, under any theory, be subject to an expired six (6) year limitation period."  (Opp. Br. at 24.)  In fact, "Statutes of Limitation are statutes of repose representing a legislative judgment that occasional hardship is outweighed by the advantage of barring stale claims (internal quotation marks omitted)." *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 404, 599 N.Y.S.2d 501, 504, 615 N.E.2d 985, 986 (1993).

Furthermore, Plaintiff does not dispute that a cause of action for oppression and dissolution accrues from the date of the oppressive conduct.  (Mov. Br. at 15.)  Here the quintessential oppressive act occurred on October 18, 2000, nearly 8 years before this lawsuit was commenced, when defendants Majid and Hamid Kermanshah advised the Saudi Royal Family that Plaintiff was not their partner.  Plaintiff ignores this act of "oppression" and focuses instead on other alleged oppressive acts -- being frozen out of any corporate decision making and not receiving an accounting or access to information.  Those acts, however, are not helpful since those too occurred more than 6 years before Plaintiff brought this lawsuit.  Indeed, Plaintiff

.

states that he never received written documentation or detailed information about the real estate businesses (Opp. Br. at 17) and he concedes that he never received any accounting for either business (see Opp. Br. at 24). Plaintiff cannot resuscitate this claim by picking and choosing between oppressive acts. To do so renders the statute of limitations meaningless.

Finally, Plaintiff's attempt to revive the stale breach of contract claim by focusing the Court's attention on Defendants' alleged failure to allow Plaintiff to equally share in the profits and revenues of the rug and real estate businesses also is unavailing. (Opp. Br. at 25.) Plaintiff's argument is without merit because the undisputed evidence before this Court negates the existence of an essential element of a breach of contract claim -- a meeting of the minds demonstrating the parties mutual intent to be bound. *Fried v. Kelly*, No. 06 Civ. 1528, 2007 WL 1821697 at * 2 (S.D.N.Y. June 26, 2007) (quoting *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F. Supp. 606, 611 (S.D.N.Y. 1995)). The October 2000 letter is indisputable evidence that at least one of the parties to the alleged agreement did not think there was an agreement, and said so at least 8 years before suit was filed.

## V.    THE CONTRADICTORY STATEMENTS IN THE AMENDED COMPLAINT SHOULD BE DISREGARDED.

In Alice-In-Wonderland fashion, Plaintiff argues that statements highlighted by Defendants in their Moving Brief (Mov. Br. at 7-8) are not contradictory of the earlier complaint. For example, without belaboring a very obvious point, no amount of hyperbole or double talk can alter the fact that the statement in the First Amended Complaint -- "since the mid 1990s Defendants . . . ceased providing Plaintiff with any accurate or truthful information or documentation relating to the brother's business activities" squarely contradicts the statement in the original Complaint that "since the mid 1990s Defendants . . . ceased providing Plaintiff with any information or documentation relating to the brother's business activities." Similarly, no

.

amount of double talk can alter the fact that the statements in the Amended Complaint that "In addition, until late 2006, the Defendants made payments to Plaintiff and his family, purportedly representing Plaintiff's share of the business. Defendants, until at least 2005, filed and paid Plaintiff's personal taxes and his New Jersey property taxes, mortgages and maintenance, credit card bills [and t]he payments were presented to Plaintiff as his return on his investment -- his share of the business" squarely contradict the statement in the Complaint that "Abbas, Majid and Hamid refused to share any of the revenues, proceeds or profits from the rug business or the Real Estate Properties . . . " If this Court were to get beyond the uncontested facts noted above, all of which mandate dismissal, then it would need to address the legal impact of these grossly contradictory statements.

During the telephone conference on May 2, 2008 we advised the Court that we had identified two cases -- *Wallace* and *Barris* -- regarding the issue of how to handle such blatantly contradictory pleadings. *Wallace* is a case from the Eastern District of New York while *Barris* is a case decided by Judge Batts of this District. Neither decision, however, is binding on this Court. Nor is *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp 387, 395 n. 5 (S.D.N.Y. 1988) binding on this Court. *The Limited* decision does in fact include a citation to a Second Circuit case -- *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984). *McKeon*, however, is a criminal case. Notably, the *McKeon* court relied on *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929), *cert denied*, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed 629 (1929). In *Kunglig,* the case that seems to be the underpinning for *The Limited* and *Barris*, the court was not asked to rule on the issue in this case -- whether blatantly contradictory allegations in an Amended Complaint, filed after Defendants served their brief in support of a motion to dismiss, should be disregarded. Rather, the *Kunglig* court was confronted with an

-14-

.

evidentiary issue; specifically, whether the trial court erred when it received into evidence the original complaint for purposes of establishing ratification of a contract and agency.

In any event, if the Court were to reach this issue, we respectfully submit that the *Wallace* case is factually close to the case at bar.  In *Wallace*, relying on the earlier pleadings, the Court dismissed the case.  In *Barris* the court simply noted that there is no hard-and-fast rule in this regard.  Rather there is an "option," and the "the more usual and benevolent option is to accept the superceded pleadings but allow the fact finder to consider the earlier pleadings as admissions. . . ." *Barris v. Hamilton,* No. 96 Civ. 9541, 1999 WL 311813 at * 2 (S.D.N.Y. May 17, 1999).  Where as here, the contradictions are so numerous and extraordinary and the earlier pleading is consistent with the uncontested facts --like the October 2000 Letter to the Saudi Royal Family, we think that *Wallace* is the correct approach.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that this Court issue an order dismissing the Complaint in its entirety, with prejudice, and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York        SCHULTE ROTH & ZABEL LLP
      May 30, 2008

                                        By: _/s/ F. Barbara Gluck Reid_____
                                            Robert M. Abrahams
                                            F. Barbara Gluck Reid

                                        919 Third Avenue
                                        New York, New York  10022
                                        (212) 756-2000
                                        robert.abrahams@srz.com
                                        barbara.reid@srz.com

                                        Attorneys for Defendants