UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HABIBOLLAH KERMANSHAH,                  :

           Plaintiff,                  :        08 Civ. 0409 (BSJ) (AJP)

      -against-                  :        **OPINION AND ORDER**

ABBAS KERMANSHAH, et al.,                  :

          Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

      Plaintiff Habibollah ("Habib") Kermanshah[1] brings this diversity action against his three younger brothers – all former business partners – and their corporations and partnership, asserting claims of declaratory judgment (Dkt. No. 34: Am. Compl. ¶¶ 62-66), minority shareholder oppression (id. ¶¶ 67-70), corporate dissolution (id. ¶¶ 71-74), breach of fiduciary duty (id. ¶¶ 75-80), breach of contract (id. ¶¶ 81-83), fraud (id. ¶¶ 84-89), conversion (id. ¶¶ 90-96), accounting (id. ¶¶ 97-102), unjust enrichment (id. ¶¶ 103-04), and breach of the covenant of good faith and fair dealing (id. ¶¶ 105-08).

      Presently before the Court is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 36: Defs. Notice of Motion), on the grounds that:  (1) Habib's claims are time-barred by the applicable statutes of limitations (Dkt. No. 37: Defs. Br. at 15-24); and (2) Habib's sixth cause of action, for fraud, should

---

[1]    To distinguish plaintiff and the three defendants, all of whom are brothers who share the last name Kermanshah, they will be referred to by their first names.  No disrespect is intended.

be dismissed as duplicative of the fifth cause of action for breach of contract (Defs. Br. at 24).  The parties have consented to decision of this motion by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 24.)

For the reasons set forth below, defendants' motion to dismiss is GRANTED with respect to Habib's claims for:  (1) corporate accounting, (2) minority shareholder oppression, (3) corporate dissolution, and (4) breach of the covenant of good faith and fair dealing.  Defendants' motion to dismiss is DENIED with respect to Habib's other claims, for breach of fiduciary duty, breach of contract, fraud, conversion, unjust enrichment, partnership accounting and declaratory judgment.

## **FACTS**

The facts alleged in Habib's amended complaint and the exhibits thereto are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "Habib alleges."

**The Defendants**

Defendants Abbas Kermanshah ("Abbas"), Abdolmajid Kermanshah ("Majid") and Abdolhamid Kermanshah ("Hamid") are plaintiff Habib's three younger brothers, and are Iranian-born, naturalized United States citizens, with their residences (and principal places of business) in Manhattan.  (Dkt. No. 34: Am. Compl. ¶¶ 2-4, 20.)

The corporate defendants all are New York corporations with a principal place of business in New York City.  (Am. Compl. ¶¶ 5-16.)  Defendants Kermanshah Brothers Oriental

Rugs, Inc. ("KBOR"), Kermanshah Oriental Rugs, Inc. ("KOR") and Kermanshah Brothers Rugs, Inc. ("KBR") import and sell oriental rugs.  (Am. Compl. ¶¶ 8-10.)

Defendants 263 West 30th Inc., Rahman NY, Inc. and Shirewil, Inc. own mixed-use buildings in Manhattan.  (Am. Compl. ¶¶ 5, 6, 15, 33-34, 40.)  Defendants Ebrahim Realty, Inc., Sherin West 86th Street Corp. and Wilshire Limited own residential buildings in Manhattan.  (Am. Compl. ¶¶ 7, 14, 16, 35, 39, 41.)

Defendant Overseas Partnership Co., Inc. ("Overseas Corp.") owns a residential building at 41 Monroe Street in Manhattan.  (Am. Comp. ¶¶ 11, 37.)  Defendant Overseas Partnership Company ("Overseas Partnership") owned the residential property but transferred it to Overseas Corp.  (Am. Compl. ¶¶ 12, 36-37.)

**The Parties' Business History**

Around 1971, plaintiff Habib and defendant Abbas opened "Kermanshah Rugs," a rug store in Tehran, Iran, agreeing to evenly split the profits.  (Dkt. No. 34: Am. Compl. ¶ 21.)  Shortly after opening this store, Abbas moved to the United States and used funds from "Kermanshah Rugs" to open a Persian rug store, "Houbas Oriental Rugs."  (Am. Compl. ¶ 22.)  By agreement, Habib and Abbas were 50-50 owners and equally split all "expenses, costs, losses, revenue, profit, and income generated by Houbas or its [1973] successor, Kermanshah Brothers Oriental Rugs ('KBOR')."  (Am. Compl. ¶¶ 22, 43.)  During the 1970s, plaintiff Habib supplied rugs from Iran to Abbas for sale through KBOR.  (Am. Compl. ¶ 23.)  Around 1978, Habib and Abbas relocated to and began importing and selling rugs in Saudi Arabia, continuing to equally share the business' profits and income.  (Am. Compl. ¶ 25.)

In the late 1970s and early 1980s, the youngest brothers, Majid and Hamid, moved to the United States to help run Habib's and Abbas' New York business operations.  (Am. Compl. ¶ 26.)  During the 1980s and 1990s, plaintiff Habib sent substantial revenue and income from KBOR to his brothers in the United States to invest in New York City real estate, agreeing that all investments would be shared equally among the four brothers, and that each brother would have an equal 25% ownership interest in any corporate entity created to acquire real estate properties.  (Am. Compl. ¶¶ 29-30, 32; see also Am. Compl. Ex. A: Copies of Checks.)  The four brothers agreed to equally share "all expenses, costs, revenue, income, and losses generated by the rug businesses and the real estate investments."  (Am. Compl. ¶ 30.)  In 1990, plaintiff Habib moved to the United States (he resides in New Jersey and became a citizen in 1997), and continued to run the Saudi Arabian operations with Abbas, while Majid and Hamid had day to day management of the New York City real estate investments.  (Am. Compl. ¶¶ 1, 31.)

Abbas, Majid, and Hamid formed various business entities[2/] throughout the late 1970s, 1980s and 1990s, through which they acquired New York City real estate properties.  (Am. Compl. ¶ 32.)  In or about 1987,  Habib, Abbas and Hamid formed Overseas Partnership to acquire a residential building at 41 Monroe Street, for which Habib provided all of the capital.  (Am. Compl. ¶¶ 36-37 & Ex. C: 5/23/85 Check.)  Habib, Abbas and Hamid were equal partners in Overseas Partnership and thus equal owners of 41 Monroe Street.  (Am. Compl. ¶ 36.)  In or about 2000,

---

[2/]     Between 1985 and 2000, defendants created nine different business entities – eight corporations and one partnership – in order to acquire residential and mixed use buildings in New York City.  (Am. Compl. ¶¶ 32-41.)  Defendants issued Habib stock certificates memorializing his ownership in several of the real estate corporations.  (Am. Compl. ¶ 42 & Ex. D: Stock Certificates.)

Abbas, Hamid and Majid formed Overseas Corp., a corporation in which Habib had no interests or

rights, and transferred the 41 Monroe Street property to defendants' new corporation.  (Am. Compl.

¶ 37.)  Abbas, Hamid and Majid forged Habib's name on the deed and transfer documents.[3]  (Am.

Compl. ¶ 37 & Ex. B: Deed.)

**Defendants' Fraudulent Scheme**

   The amended complaint alleges that defendants Abbas, Majid and Hamid fraudulently

schemed, from an undetermined date, to "convert and deprive Plaintiff [Habib] of his ownership

interests in the various corporate entities, including the rug companies that he co-founded." (Dkt.

No. 34: Am. Compl. ¶ 44.)[4]  Defendants Abbas, Majid and Hamid  controlled the companies' books

and records and "manipulate[d] the information available to Plaintiff" Habib.  (Am. Compl. ¶ 46.)

"[A]s recently as late 2006," defendants Abbas, Majid and Hamid each represented to plaintiff

Habib, by telephone and in person in New York and Saudi Arabia, that Habib "was an equal owner

of the rug businesses and the Real Estate Properties."  (Am. Compl. ¶ 46.)  For example, in 2006,

Majid and Hamid confirmed plaintiff Habib's ownership interest in the U.S. rug businesses and real

estate properties when confirming "that any issues between Abbas and Plaintiff [Habib] in Saudi

Arabia had no relationship or impact on the brothers' American businesses."  (Am. Compl. ¶ 47.)

---

[3] Defendants signed Habib's name on the 41 Monroe Street deed followed by:  "Attorney in fact[,] said Power of Attorney is to be recorded simultaneously herewith." (Am. Compl. ¶ 37 n.1 & Ex. B: Deed.)  Defendants recorded no power of attorney documents with the deed and had no previous authority to use a power of attorney to execute a deed or transfer property on Habib's behalf.  (Am. Compl. ¶ 37 n.1.)  "[A]ny limited, pre-existing Powers of Attorney had long expired."  (Am. Compl. ¶ 37 n.1.)

[4] Habib maintains that "[p]ursuant to their long-standing agreement," he "and Defendant Abbas each owned [a] 50% interest in KBOR."  (Am. Compl. ¶ 43.)

In February 2008, defendant Majid confirmed plaintiff Habib's equal ownership interests again, when he suggested "that the businesses had been established with the intention of allowing the <u>four</u> brothers' children to benefit from the proceeds of the joint businesses." (Am. Compl. ¶ 48.) Until late 2006, defendants Abbas, Majid and Hamid paid plaintiff Habib and his family Habib's "'share' of the business," and through 2005 paid Habib's personal taxes and bills as a "return on [Habib's] investment – his share of the businesses." (Am. Compl. ¶ 49.)

Defendants Abbas, Majid and Hamid concealed their fraudulent activity by not registering Habib's ownership interests in the businesses or by "eras[ing] any evidence of Plaintiff's ownership." (Am. Compl. ¶ 51.) In 1984, at a special KBOR board of directors meeting, defendants Abbas, Majid and Hamid offered plaintiff Habib 160 of 200 shares in KBOR in exchange for eliminating their debt to Habib. (Am. Compl. ¶ 51 & Ex. E: 3/5/84 Minutes; Am. Compl. Ex. F: KBOR Stock Certificate.) Subsequently, defendants Abbas, Majid and Hamid created KOR, and "transferred all of KBOR's assets, business, funds, and operations from KBOR to KOR, thus leaving Plaintiff [Habib] with 160 shares in a worthless company, and no valid debt to recover in exchange for [Habib's] substantial investments in and funding of the rug and real estate businesses in the United States." (Am. Compl. ¶ 52.) Defendants Abbas, Majid and Hamid later issued plaintiff Habib minority ownership in KOR, representing that the KOR interest "was intended to be combined with [Habib's] interests in KBOR to equal his overall 25% interest in the combined rug businesses." (Am. Compl. ¶ 53 & Ex. G: KOR Stock Certificate.) Until "late 2006," defendants Abbas, Majid and Hamid "continued to point to the worthless stock certificate in KBOR as evidence of [Habib's] equal ownership interests, while concealing the fact that they had, in fact, converted such interests."

(Am. Compl. ¶ 53.) Defendants Abbas, Majid and Hamid further diluted plaintiff Habib's ownership interests when they created "yet another entity, Kermanshah Brothers Rug, Inc. ('KBR')." (Am. Compl. ¶ 53.)

Defendants Abbas, Majid and Hamid shared information with plaintiff Habib regarding the rug businesses, although "the practice of sharing occasional information and documentation ebbed in the mid-1990s." (Am. Compl. ¶ 56.) Until late 2006, however, defendants updated Habib about the "rug businesses and other investments," and "regularly showed [Habib] the healthy inventory in the rug businesses and the occupied units in the Real Estate properties," and repeatedly represented to Habib that he maintained equal ownership in the rug businesses and real estate properties. (Am. Compl. ¶¶ 56-57.)

**Plaintiff Habib's Discovery of Defendants' Misconduct**

"In or about 2006, Plaintiff [Habib] discovered – for the very first time, that Defendant Abbas had unlawfully diverted corporate assets from a joint account maintained in Saudi Arabia relating to [Habib and Abbas'] Saudi rug business." (Dkt. No. 34: Am. Compl. ¶ 60.) Habib also discovered that Abbas had collected Saudi receivables and deposited them into a personal account. (Am. Compl. ¶ 60.) In addition, Habib "much later" learned that defendants had "falsely advised the Saudi royal family that Plaintiff [Habib] ha[d] no interest in KBOR and did not speak

8

for the company." (Am. Compl. ¶ 45.)[5] Habib sued Abbas in Saudi Arabia over the operations and

finances of the Saudi-based rug business. (Am. Compl. ¶ 60.)[6]

"In or about 2007," as a result of the Saudi Arabian lawsuit, Habib "began to audit

all of [his] business interests, including those in the United States." (Am. Compl. ¶ 61.) Habib

reviewed public documents and discovered the forged 41 Monroe Street deed "transferring one of

the Real Estate Properties from an entity in which [Habib] held an ownership interest to an entity in

which [Habib] did not own a membership interest." (Am. Compl. ¶ 61; see also pages 4-5 above.)

This 2007 discovery constituted the first time that Habib "had any reason to believe that the

---

[5]    Defendants' October 18, 2000 notarized letter to Saudi Prince "Abdullah Faisal Alsaud" states:

> Mr. Abbas Hossein Kermanshah is the sole representative of Kermanshah Oriental Rugs Inc. in the Royal Kingdom of Saudi Arabia and Overseas. Mr. Abbas Hossein Kermanshah is the only authorized representative to collect payment from customers and clients.

> Mr. Habibollah Kermanshah is our brother but he is not our business partner nor [is] he involve[d] in our business . . . . Mr. Habibollah Kermanshah is not authorized to represent and/or collect any payment for any sold rugs belonging to Kermanshah Oriental Rugs Inc. and Mr. Abbas Hossein Kermanshah.

(Dkt. No. 39: Hamid Aff. Ex. A: 10/18/00 Letter.)

[6]    This lawsuit appears be a December 27, 2005 counterclaim against Abbas in which Habib claimed that he could offer proof that he and Abbas had maintained a business partnership "in the trade of carpets whether in the Saudi Arabia or outside of Saudi Arabia . . . for more than two decades." (Hamid Aff. Ex. B: 12/27/05 Counterclaim at 1.)

defendants had taken steps to divert his ownership interests in the American rug businesses and New York Real Estate Properties."  (Am. Compl. ¶ 61; see also Am. Compl. ¶ 44.)[7]

**The Amended Complaint's Causes of Action**

The Amended Complaint asserts ten causes of action, as follows:

- Count 1:  Declaratory Judgment (Dkt. No. 34: Am. Compl. ¶¶ 62-66),

- Count 2:  Minority Shareholder Oppression (Am. Compl. ¶¶ 67-70),

- Count 3:  Corporate Dissolution (Am. Compl. ¶¶ 71-74),

- Count 4:  Breach of Fiduciary Duty (Am. Compl. ¶¶ 75-80),

- Count 5:  Breach of Contract (Am. Compl. ¶¶ 81-83),

- Count 6:  Fraud (Am. Compl. ¶¶ 84-89),

- Count 7:  Conversion (Am. Compl. ¶¶ 90-96),

- Count 8:  Accounting (Am. Compl. ¶¶ 97-102),

- Count 9:  Unjust Enrichment (Am. Compl. ¶¶ 103-04), and

- Count 10:  Breach of the Covenant of Good Faith and Fair Dealing (Am. Compl. ¶¶ 105-08).

**Defendants' Motion to Dismiss**

Defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) (Dkt. No. 36: Defs. Notice of Motion at 2), on the grounds that:  (1) Habib's claims are time-barred

---

[7]    Habib also claims that "[u]ntil the mid-2000s, Plaintiff had no knowledge, nor was there any reasonable basis for him to believe, that his brothers had excluded [Habib] from his rightful ownership interests in the rug businesses or the Real Estate Properties."  (Am. Compl. ¶ 59, emphasis added.)

10

by the applicable statutes of limitations (Dkt. No. 37: Defs. Br. at 15-24); and (2) Habib's sixth cause

of action, for fraud, should be dismissed as duplicative of the fifth cause of action for breach of

contract (Defs. Br. at 24).

## ANALYSIS

## I.    THE STANDARDS GOVERNING A MOTION TO DISMISS

### A.    The Twombly-Iqbal "Plausibility" Standard

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974

(2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading

standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.").[8/] A court must accept as true the facts alleged in the complaint and draw all reasonable

inferences in favor of the nonmoving party – here, the plaintiff. Cosmas v. Hassett, 886 F.2d 8, 11

(2d Cir. 1989).[9/] At the same time, "'[c]onclusory allegations or legal conclusions masquerading as

---

[8/]    Accord, e.g., Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), cert. denied, 128 S. Ct. 2931 (2008); Lindner v. Int'l Bus. Machs. Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Group, Inc. v. Barker, 05 Civ. 7340, -- F. Supp. 2d --, 2008 WL 857527 at *2 (S.D.N.Y. Mar. 31, 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

[9/]    Accord, e.g., Curran v. Teachers Ret. Sys. of City of N.Y., 241 Fed. Appx. 781, 782 (2d Cir. 2007); Iqbal v. Hasty, 490 F.3d at 152; Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Cleveland v.
(continued...)

factual conclusions will not suffice to [defeat] a motion to dismiss.'" Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).[10/]  A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d at 157-58 (interpreting Twombly).[11/]  This does "not require heightened fact pleading of specifics," Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1974,[12/] but does require "factual allegations sufficient 'to raise

---

[9/]      (...continued)
Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004); Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir.), cert. denied, 534 U.S. 1071, 122 S. Ct. 678 (2001).

[10/]     Accord, e.g., Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., 07 Civ. 11211, 2008 WL 2464187 at *2 (S.D.N.Y. June 18, 2008); Howard v. Mun. Credit Union, 05 Civ. 7488, 2008 WL 782760 at *6 (S.D.N.Y. Mar. 25, 2008); Wightman-Cervantes v. Am. Civil Liberties Union, 06 Civ. 4708, 2007 WL 1805483 at *1 (S.D.N.Y. June 25, 2007); Am. Nat'l Theatre & Acad. v. Am. Nat'l Theatre Inc., 05 Civ. 4535, 2006 WL 4882916 at *4 (S.D.N.Y. Sept. 27, 2006).

[11/]     See also, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) ("We agree with the Iqbal panel's conclusion that Twombly focused on the plausibility of the complainant's claim for relief, although Iqbal does not offer much guidance to plaintiffs regarding when factual 'amplification [is] needed to render [a] claim plausible.'"); Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."); In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'"); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 n.2 (declining "to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.").

[12/]     Accord, e.g., Boykin v. KeyCorp, 521 F.3d at 213; In re Elevator Antitrust Litig., 502 F.3d at 50.

a right to relief above the speculative level.'"  Boykin v. KeyCorp, 521 F.3d at 213 (quoting

Twombly, 127 S. Ct. at 1965).[13]

> ### B.    Rule 9(b) Applies to Fraud Claims

Additionally, in considering the sufficiency of Habib's fraud claim, the Court must

determine the adequacy of the complaint's allegations pursuant to the heightened pleading standard

of Rule 9(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 9(b) ("In alleging fraud or

mistake, the party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); see,

e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007); S.E.C. v. Lyon, 529

F. Supp. 2d 444, 449 (2d Cir. 2008); Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

In order to comply with Rule 9(b), "the complaint must:  (1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d

1170, 1175 (2d Cir.1993).[14]

Although Rule 9(b) must be read together with Rule 8(a), the fraud allegations in the

complaint must be specific enough to allow the defendant "a reasonable opportunity to answer the

---

[13]    See also, e.g., Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.), cert. denied, 128 S. Ct. 2964 (2008); Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98.

[14]    Accord, e.g., S.E.C. v. Lyon, 529 F. Supp. 2d at 449;  Lerner v. Fleet Bank, N.A., 459 F.3d at 290; Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir.), cert. denied, 531 U.S. 1012, 121 S. Ct. 567 (2000); Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999).

complaint." Ross v. A.H. Robins Co., 607 F.2d 545, 557 (2d Cir. 1979), cert. denied, 446 U.S. 946,

100 S. Ct. 2175, (1980).[15/]  The complaint must give the defendant "adequate information" to allow

the defendant "to frame a response." Ross v. A.H. Robins Co., 607 F.2d at 557-58.[16/]

Furthermore, a complaint alleging fraud against multiple defendants must state the

allegations specifically attributable to each individual defendant. E.g., DiVittorio v. Equidyne

Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987); Maersk, Inc. v. Neewra, Inc., 554 F. Supp.

2d 424, 460-61 (S.D.N.Y. 2008); Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 494-95

(S.D.N.Y. 2005); Rich v. Maidstone Fin., Inc., 98 Civ. 2569, 2001 WL 286757 at *6 (S.D.N.Y.

Mar. 23, 2001) ("[W]hen fraud is alleged against multiple defendants, a plaintiff must set forth

separately the acts complained of by each defendant. A complaint may not simply clump defendants

---

[15/]    Accord, e.g., Leemon v. Burns, 175 F. Supp. 2d 551, 555 (S.D.N.Y. 2001) (Peck, M.J.);
LaSalle Nat'l Bank v. Duff & Phelps, 951 F. Supp. 1071, 1081 (S.D.N.Y. 1996) (Knapp, D.J.
& Peck, M.J.); In re Towers Fin. Corp. Noteholders Litig., 93 Civ. 0180, 1995 WL 571888
at *12 (S.D.N.Y. Sept. 20, 1995) (Peck, M.J.), report & rec. adopted, 936 F. Supp. 126
(S.D.N.Y.1996); O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 225
(S.D.N.Y.1989) ("Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's
claim in order to enable a defendant to prepare a defense, protect defendant's reputation or
goodwill from harm, and reduce the number of strike suits.").

[16/]    See also, e.g., United States v. Norden Sys., Inc., No. 94-CV-963, 2007 WL 2782525 at *6
(D. Conn. Sept. 20, 2007); In re Check Point Software Techs. Ltd. Sec. Litig., 03 Civ. 6594,
2006 WL 1116699 at *2 (S.D.N.Y. Apr. 26, 2006); Ryan v. Hunton & Williams, No.
99-CV-5938, 2000 WL 1375265 at *6 (E.D.N.Y. Sept. 20, 2000) ("Allegations of fraud . . .
must be specific enough to provide a defendant with 'a reasonable opportunity to answer the
complaint and adequate information to frame a response.'").

together in vague allegations to meet the pleading requirements of Rule 9(b).") (internal quotations, citations, & alterations omitted; collecting cases).[17/]

###### C.    Consideration Of Documents Attached To Or Referred To In The Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[18/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 98; Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the

---

[17/]    See also, e.g., Leemon v. Burns, 175 F. Supp. 2d at 556; LaSalle Nat'l Bank v. Duff & Phelps, 951 F. Supp. at 1082; In re Towers, 1995 WL 571888 at *13.

[18/]    Accord, e.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Aniero Concrete Co. v. N.Y. City Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v.  Board of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

document on a dismissal motion; mere notice or possession is not enough."); Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . ."); see also, e.g., Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d at 134 (citations omitted).

In this case, the exhibits that plaintiff Habib attached to his amended complaint may be considered on the motion to dismiss, subject to the Faulkner v. Beer proviso.  (See cases cited in the immediately prior paragraphs.)

* * * *

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)); accord, e.g., Watson v. McGinnis, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.).  "'[T]he issue

is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" <u>Saunders</u> v. <u>Coughlin</u>, 1994 WL 88108 at *2 (quoting <u>Scheuer</u> v. <u>Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

## II.   HABIB'S FRAUD, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, CONVERSION, UNJUST ENRICHMENT AND DECLARATORY JUDGMENT CLAIMS SURVIVE DISMISSAL UNDER THE RELEVANT STATUTES OF LIMITATIONS

Defendants claim that Habib's amended complaint should be dismissed because all of Habib's causes of action are time-barred under the relevant statutes of limitations.  (Dkt. No. 37: Defs. Br. at 15-24.)

A complaint is subject to dismissal for failure to state a claim upon which relief can be granted if the allegations "show that relief is barred by the applicable statute of limitations." <u>Jones</u> v. <u>Bock</u>, 549 U.S. 199, 127 S. Ct. 910, 920-21 (2007).[19/]  It is well established that state law – here, New York law – determines the applicable statute of limitations in federal diversity cases. <u>See</u> <u>Guaranty Trust Co.</u> v. <u>York</u>, 326 U.S. 99, 109-10, 65 S. Ct. 1464, 1470 (1945).[20/]  In New York,

---

[19/]   <u>Accord</u>, <u>e.g.</u>, <u>Mendez</u> v. <u>Barlow</u>, No. 04-CV-1030, 2008 WL 2039499 at *5 (W.D.N.Y. May 12, 2008); <u>Palmer</u> v. <u>N.Y.S. Dep't of Corr. Greenhaven</u>, 06 Civ. 2873, 2007 WL 4258230 at *5 (S.D.N.Y. Dec. 4, 2007); <u>Randolph</u> v. <u>City of N.Y. Dep't of Corr.</u>, 05 Civ 8820, 2007 WL 2660282 at *6 (S.D.N.Y. Sept. 7, 2007).

[20/]   <u>Accord</u>, <u>e.g.</u>, <u>Cantor Fitzgerald Inc.</u> v. <u>Lutnick</u>, 313 F.3d 704, 709 (2d Cir. 2002) ("[I]n diversity cases state law governs not only the limitations period but also the commencement of the limitations period."); <u>Schermerhorn</u> v. <u>Metro. Transp. Auth.</u>, 156 F.3d 351, 354 (2d Cir. 1998); <u>RSM Prod. Corp.</u> v. <u>Fridman</u>, 06 Civ. 11512, 2007 WL 2295897 at *4 (S.D.N.Y. Aug. 10, 2007); <u>Beana</u> v. <u>Woori Bank</u>, 05 Civ. 7018, 2006 WL 2935752 at *6 (S.D.N.Y. Oct. 11, 2006); <u>Adams</u> v. <u>Crystal City Marriott Hotel</u>, 02 Civ. 10258, 2004 WL 744489 at *1 (S.D.N.Y. Apr. 6, 2004); <u>Provda</u> v. <u>Farkas</u>, 94 Civ. 0084, 1995 WL 42308 at *2 (S.D.N.Y. Feb. 1, 1995).

the limitations period generally begins to run when the relevant cause of action "accrues." C.P.L.R. § 203(a);[21/] see, e.g., Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007); Cont'l Cas. Co. v. Stronghold Ins. Co., 77 F.3d 16, 19 (2d Cir. 1996); Cohen v. Stephen Wise Free Synagogue, 95 Civ. 1659, 1998 WL 799162 at *1 (S.D.N.Y. Nov. 13, 1998); Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502 (1993); Spitzer v. Schussel, 7 Misc. 3d 171, 176, 792 N.Y.S.2d 798, 802 (Sup. Ct. N.Y. Co. 2005).

### A.  Habib's Claim For Breach of Contract (Count Five) Survives Dismissal Under the Statute of Limitations

Habib asserts a breach of contract claim, claiming that defendants breached written and oral agreements by not "shar[ing] equally in the corporate opportunities, investments, and businesses," by not providing Habib with any information relating to Habib's investments in the businesses, by "forging [Habib's] name on certain transfer documents," by "failing to include [Habib's] name and ownership interests" in documents created to form new corporations and acquire new properties, and by generally excluding Habib's ownership rights and interests in newly formed businesses and purchased properties. (Dkt. No. 34: Am. Compl. ¶ 82.) Defendants contend that this claim is time-barred under the relevant statute of limitations because "[Habib] complains exclusively of events that occurred well before January 2002." (Dkt. No. 37: Defs. Br. at 17.)

New York's statute of limitations for breach of an express or implied contract is six years. C.P.L.R. § 213(2); see, e.g., Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007);

---

[21/]    C.P.L.R. § 203(a) provides that: "The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed."

Rosenblatt v. Christie, Manson & Woods, Ltd., 195 Fed. Appx. 11, 13 (2d Cir. 2006).[22/]  A cause of

action for breach of contract usually accrues, and the limitations period begins to run, upon breach.

See, e.g., Huang v. Siam Commercial Bank Pub. Co., 247 Fed. Appx. 299, 301 (2d Cir. 2007);

Guilbert v. Gardner, 480 F.3d at 149.[23/]  Habib need not have been aware of the breach to start the

statute of limitations period running.  See, e.g., Guilbert v. Gardner, 480 F.3d at 149; Rosenblatt v.

Christie, Manson & Woods, Ltd., 195 Fed. Appx. at 13 (citing T & N PLC v. Fred S. James & Co.

of N.Y., Inc., 29 F.3d 57, 60 (2d Cir. 1994)); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d

351, 360 (2d Cir. 1997) ("[I]n New York it is well settled that the statute of limitation for breach of

contract begins to run from the day the contract was breached, not from the day the breach was

discovered, or should have been discovered."); Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI)

Ltd., 311 B.R. 378, 393 (S.D.N.Y. 2004), aff'd, 153 Fed. Appx. 703 (2d Cir. 2005), cert. denied, 546

U.S. 1095, 126 S. Ct. 1085 (2006);  Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d at 402-03,

599 N.Y.S.2d at 503.

---

[22/]    See also, e.g., Latimore v. Schilling, 06 Civ. 7639, 2008 WL 2421628 at *2 n.4 (S.D.N.Y.
June 13, 2008) (Peck, M.J.), report & rec. adopted, 2008 WL 2774465 (S.D.N.Y. July 16,
2008); Amadsau v. Bronx Lebanon Hosp. Ctr., 03 Civ. 6450, 2005 WL 121746 at *9 n.13
(S.D.N.Y. Jan. 21, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 954916 (S.D.N.Y.
Apr. 26, 2005).

[23/]    See also, e.g., Pacific Health Advantage v. Cap Gemini Ernst & Young, 07 Civ. 3725, 2007
WL 2619052 at *3 (S.D.N.Y. Sept. 5, 2007); Cunningham v. Ins. Co. of N. America, No. 04
CV 2997, 2006 WL 2568464 at *4 (E.D.N.Y. Aug. 31, 2006); Godlewska v. HDA, No. CV-
03-3985, 2006 WL 1422410 at *11 (E.D.N.Y. May 18, 2006); TIG Ins. Co. v. Newmont
Min. Corp., 413 F. Supp. 2d 273, 281 (S.D.N.Y. 2005), aff'd, 226 Fed. Appx. 49 (2d Cir.
2007); Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502
(1993).

"If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." Guilbert v. Gardner, 480 F.3d at 150.[24/]  Defendants' obligation to share equally in "corporate opportunities, investments, and businesses" was a continuing contractual obligation that presumably existed throughout the life of the various entities to which Habib contributed capital and equity, and from which he expected a fair return on his investment.  Defendants' failure to allow Habib to share equally in the businesses, as Habib alleges defendants were contractually obligated to do, falls within the six year statute of limitations because Habib alleges continuing breaches until the time Habib filed suit in the instant action.  This is equally so because the amended complaint alleges that defendants made payments to Habib through at least 2006, which defendants described as his share of the businesses' profits, but which were "sham payments representing a fraction of Plaintiff's share of the businesses." (Dkt. No. 41: Habib Opp. Br. at 17; see page 6 above.)  This adequately alleges contract breaches within the limitations period.

Defendants describe Habib's "stale breach of contract claim" as "without merit because the undisputed evidence before this Court negates the existence of an essential element of a breach of contract claim – a meeting of the minds demonstrating the parties['] mutual intent to be

---

[24/]    See also, e.g., Huang v. Siam Commercial Bank Pub. Co., 247 Fed. Appx. at 301; Godlewska v. HDA, 2006 WL 1422410 at *11; Tsegaye v. Impol Aluminum Corp., 01 Civ. 5943, 2003 WL 221743 at *7 (S.D.N.Y. Jan. 30, 2003); Lennon v. Seaman, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999); Bulova Watch Co. v. Celotex Corp., 46 N.Y.2d 606, 611, 415 N.Y.S.2d 817, 820 (1979); Stalis v. Sugar Creek Stores, Inc., 295 A.D.2d 939, 940-41, 744 N.Y.S.2d 586, 587-88 (4th Dep't 2002); Orville v. Newski, Inc., 155 A.D.2d 799, 801, 547 N.Y.S.2d 913, 914 (3d Dep't 1989), appeal dismissed, 75 N.Y.2d 946, 555 N.Y.S.2d 693 (1990); Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 76 A.D.2d 68, 80, 430 N.Y.S.2d 179, 186 (4th Dep't 1980).

bound."  (Dkt. No. 43: Defs. Revised Reply Br. at 13.)  Defendants refer to a notarized 2000 letter

in which Majid and Hamid disclaim any business relationship between Habib and the rug businesses.

(See Dkt. No. 39: Hamid Aff. Ex. A: 10/18/00 Letter.)  Defendants, however, provide no evidence

regarding when they reached this decision (which appears to be well after the original agreements

were entered into), or when Habib learned of this letter; Habib claims that he only became aware of

the letter "much later" and Habib disputes the truth of the letter's assertions.  (Am. Compl. ¶ 45.)

To survive a motion to dismiss, Habib must allege "only enough facts to state a claim to relief that

is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Habib has met

his burden, and any fact evaluation concerning the existence of a contract between Habib and

defendants must wait until the summary judgment stage.  See Airco Alloys Div., Airco Inc. v.

Niagara Mohawk Power Corp., 76 A.D.2d at 80, 430 N.Y.S.2d at 186 ("Inasmuch as an issue of fact

exists with respect to [defendants' contractual obligations], it is not yet possible to determine the

issue of accrual of alleged breaches of the contract and, where a triable issue of fact exists with

respect to accrual of a claim, such issue should not be determined on [a] motion [to dismiss].")

Habib's breach of contract claim, therefore, survives dismissal, as Habib has

adequately alleged continuing contractual breaches within New York's six year statute of limitations.

### B.    Habib's Claim For Breach of Fiduciary Duty (Count Four) Survives Dismissal Under the Statute of Limitations

Habib asserts a breach of fiduciary duty claim for defendants' failure to "act with

candor, prudence, fairness, morality, and honesty of purpose" in exercising their duty to Habib as a

minority shareholder.  (Dkt. No. 34: Am. Compl. ¶¶ 75-80.)

New York's statute of limitations for breach of fiduciary duty is six years when a plaintiff seeks equitable relief and three years when a plaintiff seeks only money damages. C.P.L.R. §§ 213(1), 214(4); see, e.g., Cooper v. Parsky, 140 F.3d 433, 440-41 (2d Cir. 1998) (citing N.Y. cases); Beckles v. George, No. 07 CV 0584, 2008 WL 926578 at *3 (E.D.N.Y. Mar. 31, 2008); Ciccone v. Hersh, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008); Omni Food Sales v. Boan, 06 Civ. 119, 2007 WL 2435163 at *6 (S.D.N.Y. Aug. 24, 2007).

Breach of fiduciary duty claims based upon allegations of actual fraud, however, are subject to a six year statute of limitations, regardless of the substantive remedy sought. See, e.g., Indovino v. Tassinari, No. CV-05-4167, 2006 WL 2505232 at *3 (E.D.N.Y. Aug. 28, 2006); Pro Bono Invs., Inc. v. Gerry, 03 Civ. 4347, 2005 WL 2429787 at *14 (S.D.N.Y. Sept. 30, 2005) ("Where, as here, the breach of fiduciary duty involves allegations of actual fraud, the statute of limitations is six years regardless of the remedy sought."); Kaufman v. Cohen, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157, 164-65 (1st Dep't 2003); Unibell Anesthesia, P.C. v. Guardian Life Ins. Co. of America, 239 A.D.2d 248, 248, 658 N.Y.S.2d 14, 15 (1st Dep't 1997) (court correctly applied six-year limitations period, instead of three-year period, to breach of fiduciary duty claim where complaint also made out cause of action for fraud by insurer).

Habib's complaint adequately alleges fraud (see pages 25-31 below); the statute of limitations for Habib's breach of fiduciary duty claim therefore is six years.

Because Habib alleges facts within six years of bringing this action that support a claim of breach of fiduciary duty – including allegations that defendants violated their duties to Habib as a minority stockholder in various business entities by transferring assets and by paying him

less than his true share of the businesses' profits (see pages 4-9 above) – this claim survives dismissal.

**C.    Habib's Claim For Conversion (Count Seven) Survives Dismissal Under the Statute of Limitations**

Habib asserts a claims for conversion, alleging that defendants "have, in effect, stolen [Habib's] funds and ownership interests" by not equally sharing with Habib profits, rents, opportunities and income that they were contractually obligated to share. (Dkt. No. 34: Am. Compl. ¶¶ 90-96.)

New York's statute of limitations for conversion is three years. C.P.L.R. § 214(3) ("The following actions must be commenced within three years: . . . an action to recover a chattel or damages for the taking or detaining of a chattel; . . ."); see, e.g., Mandarino v. Mandarino, 180 Fed. Appx. 258, 260 (2d Cir. 2006); Herman v. Green, No. 99-6161, 234 F.3d 1262 (table), 2000 WL 1591272 at *1 (2d Cir. Oct. 24, 2000) ("A claim for conversion under New York law is subject to a three-year limitations period.").[25/]  The cause of action generally accrues on the date of the actual conversion, see, e.g., Herman v. Green, 2000 WL 1591272 at *1; Jackson v. Broadcast Music, Inc., 2006 WL 250524 at *10;  Rajbhandari v. Shah, 2006 WL 74393 at *3; Weizmann Inst. of Sci. v. Neschis, 01 Civ. 6993, 421 F. Supp. 2d 654, 684 (S.D.N.Y. 2005); Pemrick v. Stracher, No. 92 CV 959, 2005 WL 2921621 at *5 (E.D.N.Y. Nov. 4, 2005); Meadowbrook-Richman, Inc. v. Associated Fin. Corp., 325 F. Supp. 2d 341, 365 (S.D.N.Y. July 14, 2004), and not upon discovery or the

---

[25/]    See also, e.g., Chen Jie Shan v. Citibank, N.A., 06 Civ. 5095, 2007 WL 2325854 at *5 n.8 (S.D.N.Y. Aug. 10, 2007); Jackson v. Broadcast Music, Inc., 04 Civ. 5948, 2006 WL 250524 at *10 (S.D.N.Y. Feb. 1, 2006), aff'd, 2007 WL 2914516 (2d Cir. Oct. 5, 2007); Rajbhandari v. Shah, 02 Civ. 8778, 2006 WL 74393 at *3 (S.D.N.Y. Jan. 11, 2006).

exercise of due diligence to discover the conversion.  See Jackson v. Broadcast Music, Inc., 2006 WL 250524 at *10; Rajbhandari v. Shah, 2006 WL 74393 at *3; Alston v. Stone, 02 Civ. 05338, 2005 WL 668395 at *6 n.21 (S.D.N.Y. Mar. 21, 2005); Pecoraro v. M & T Bank Corp., 11 A.D.3d 950, 951, 782 N.Y.S.2d 481, 482 (4th Dep't 2004); Barrett v. Huff, 6 A.D.3d 1164, 1166, 776 N.Y.S.2d 678, 680 (4th Dep't 2004); D'Amico v. First Union Nat'l Bank, 285 A.D.2d 166, 172, 728 N.Y.S.2d 146, 151 (1st Dep't 2001), appeal denied, 99 N.Y.2d 501, 752 N.Y.S.2d 588 (2002).

Nevertheless, "it is well settled that, where the original possession is lawful, conversion does not occur until after a demand and refusal to return the property."  D'Amico v. First Union Nat'l Bank, 285 A.D.2d at 172, 728 N.Y.S.2d at 151 (citing MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co., 193 N.Y. 92, 101 (1908)); see also, e.g., Bernstein v. La Rue, 120 A.D.2d 476, 477, 501 N.Y.S.2d 896, 898 (2d Dep't 1986); Hebrew Inst. for the Deaf & Exceptional Children v. Kahana, No. 27823-06, 17 Misc. 3d 1110(A), 851 N.Y.S.2d 63 (table), 2007 WL 2937166 at *6 (Sup. Ct. Kings Co. Oct. 9, 2007); Fromer v. Fromer, No. 6161-2006, 17 Misc. 3d 1106(A), 851 N.Y.S.2d 58 (table), 2007 WL 2850456 at *3 (Sup. Ct. Queens Co. Sept. 4, 2007).  Based on the complaint, it appears that Habib first demanded that defendants "return [his] property," i.e., give him his appropriate ownership interest in all of the companies, "in or about 2007" (Am. Compl. ¶ 61; see page 8 above), well within the three year conversion limitation period.

Accordingly, Habib's conversion claim survives dismissal.

_____**D.**    **Habib's Claim For Unjust Enrichment (Count Nine) Survives Dismissal Under the Statute of Limitations**_____

Habib asserts a claims for unjust enrichment based on the misconduct described in Habib's other causes of action.  (Dkt. No. 34: Am. Compl. ¶¶ 103-04.)

New York's statute of limitations for unjust enrichment is six years, and begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution."  Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 518, 520 (2d Cir. 2001) (quoting Congregation Yetev Lev D'Satmar v. 26 Adar N.B. Corp., 192 A.D.2d 501, 503, 596 N.Y.S.2d 435, 437 (2d Dep't 1993)), cert. denied, 546 U.S. 1012, 126 S. Ct. 621 (2005); see C.P.L.R. § 213(1).[26]  The unjust enrichment limitations period, however, is three years if plaintiff seeks monetary damages.  See Grynberg v. Eni S.p.A., 06 Civ. 6495, 2007 WL 2584727 at *3 (S.D.N.Y. Sept. 5, 2007); Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605, 612 (S.D.N.Y. 2006); Ingrami v. Rovner, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132, 134 (2d Dep't 2007).  Habib's unjust enrichment claim seeks compensatory damages, but also seeks an accounting (Am. Compl. at p. 25), which is a form of equitable relief.[27]  As in Golden Pac. Bancorp v. F.D.I.C., 273 F.3d at 520, the wrongful act giving rise to restitution would be not the steps the

---

[26]    See also, e.g., Beckles v. George, No. 07 CV 0584, 2008 WL 926578 at *3 (E.D.N.Y. Mar. 31, 2008); Serdarevic v. Advanced Med. Optics, Inc., 06 Civ. 7107, 2007 WL 2774177 at *9 (S.D.N.Y. Sept. 25, 2007), aff'd, -- F.3d --, 2008 WL 2745279 (2d Cir. July 16, 2008); Chen Jie Shan v. Citibank, N.A., 06 Civ. 5095, 2007 WL 2325854 at *5 n.8 (S.D.N.Y. Aug. 10, 2007); LaSala v. Needham & Co., 399 F. Supp. 2d 466, 469 n.7 (S.D.N.Y. 2005); Feinberg v. Katz, 99 Civ. 45, 2002 WL 1751135 at *19 (S.D.N.Y. July 26, 2002).

[27]    See, e.g., Metro Kitchenworks Sales, LLC v. Cont'l Cabinets, LLC, 31 A.D.3d 722, 723, 820 N.Y.S.2d 79, 80 (2d Dep't 2006);  Kaufman v. Cohen, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157, 164 (1st Dep't 2003); Orloff v. Weinstein Enters., Inc., 247 A.D.2d 63, 65, 677 N.Y.S.2d 544, 545 (1st Dep't 1998).

defendants took to deprive Habib of his interest in the rug businesses and real estate businesses (similar to the accrual in <u>Golden Pac.</u>), but when the defendants actually paid themselves money that belonged to Habib. "[B]efore that point, the [defendants] had neither been enriched nor possessed any of [plaintiff's] 'money or property' that 'equity and good conscience' would require it to return." <u>Golden Pac. Bancorp</u> v. <u>F.D.I.C.</u>, 273 F.3d at 520. The date when that occurred is not clear from the Amended Complaint, and may well have occurred within either the six or even the three year limitation period. Habib's action is timely under either limitations period because the wrongful acts that could serve as the basis for unjust enrichment continued within three years of this action.

Habib's unjust enrichment claim, therefore, survives dismissal.

**E.     Habib's Fraud Claim (Count Six) Survives Dismissal**

**1.     Habib's Fraud Claim Survives Dismissal Under the Statute of Limitations**

Habib's sixth count alleges that defendants committed fraud by "falsely represent[ing] to Plaintiff [Habib] that he was a[n] equal partner and owner of the rug businesses and Real Estate Properties and that he was entitled to 25% of all profits, rents, proceeds, and income generated by" these businesses, in part by issuing worthless stock certificates and "forg[ing Habib's] name on certain transfer documents and other business records and documents." (Dkt. No. 34: Am. Compl. ¶ 85.) Defendants contend that Habib's fraud claim is "time-barred and is not saved by the discovery rule." (Dkt. No. 37: Defs. Br. at 18.)

New York's statute of limitations for fraud[28/] claims is the longer of six years from the date on which the fraud occurred or two years from discovery or the time when the plaintiff should have, with reasonable diligence, discovered the fraud. C.P.L.R. §§ 203(g), 213(8);[29/] see, e.g., Cruden v. Bank of N.Y., 957 F.2d 961, 973 (2d Cir. 1992); Serdarevic v. Advanced Med. Optics, Inc., 06 Civ. 7107, 2007 WL 2774177 at *10 (S.D.N.Y. Sept. 25, 2007), aff'd, -- F.3d --, 2008 WL 2745279 (2d Cir. July 16, 2008).[30/]

---

[28/]    To recover damages for fraud in New York, the plaintiff must prove:    "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." Jablonski v. Rapalje, 14 A.D.3d 484, 487, 788 N.Y.S.2d 158, 162 (2d Dep't 2005); see also, e.g., Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Shao v. 39 College Point Corp., 309 A.D.2d 850, 851, 766 N.Y.S.2d 75, 76 (2d Dep't 2003).

[29/]    C.P.L.R. § 213(8) provides:

> 8.    an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

[30/]    See also, e.g., Jackson v. Broadcast Music, Inc., 04 Civ. 5948, 2006 WL 250524 at *8 (S.D.N.Y. Feb. 1, 2006); Hoffenberg v. Hoffman & Pollok, 288 F. Supp. 2d 527, 535-36 (S.D.N.Y. 2003); Green v. Doukas, 97 Civ. 8288, 2001 WL 767069 at *7 (S.D.N.Y. June 22, 2001); Stride Rite Children's Group, Inc. v. Siegel, 269 A.D.2d 875, 875, 703 N.Y.S.2d 642, 643 (4th Dep't 2000) ("The two-year period does not commence from the date that plaintiff has positive knowledge of the fraud, but from the date that plaintiff becomes aware of enough operative facts so that, with reasonable diligence, [he or] she could have discovered the fraud.") (internal quotations omitted).

"The test as to when fraud should with reasonable diligence have been discovered is an objective one." Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983).[31] "If the circumstances of the alleged fraud would 'suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises . . .'" Cruden v. Bank of N.Y., 957 F.2d at 973 (quoting Higgins v. Crouse, 147 N.Y. 411, 416 (1895)).[32] A complaint should be dismissed "where it conclusively appears that the plaintiff has knowledge of facts which should have caused her to inquire and discover the alleged fraud." Rattner v. York, 174 A.D.2d 718, 721, 571 N.Y.S.2d 762, 765 (2d Dep't 1991).[33] "The plaintiff bears the burden of establishing that the fraud could not have been discovered before the two-year period prior to the commencement of the action." Guilbert v. Gardner, 480 F.3d at 147; see also, e.g., Sargiss v. Magarelli, 50 A.D.3d 1117, 1118, 858 N.Y.S.2d 209, 210 (2d Dep't 2008); Siler v. Lutheran Soc. Servs., 10 A.D.3d 646, 648, 782 N.Y.S.2d 93, 95 (2d Dep't 2004); Julian v. Carroll, 270 A.D.2d 457, 457-58, 704 N.Y.S.2d 654, 655 (2d Dep't 2000);

---

[31]     See also, e.g., Dodds v. Cigna Sec., Inc., 12 F.3d 346, 250 (2d Cir. 1993), cert. denied, 511 U.S. 1019, 114 S. Ct. 1401 (1994); Cruden v. Bank of N.Y., 957 F.2d at 973; In re MBIA Inc., 05 Civ. 3514, 2007 WL 473708 at *5 (S.D.N.Y. Feb. 14, 2007); Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 258 (S.D.N.Y. 2005); Von Hoffmann v. Prudential Ins. Co., 202 F. Supp. 2d 252, 262 (S.D.N.Y. 2002); BRS Assocs., L.P. v. Dansker, 246 B.R. 755, 772 (S.D.N.Y. 2000).

[32]     See, e.g., Guilbert v. Gardner, 480 F.3d 140, 147 (2d Cir. 2007); In re Ames Dep't Stores, Inc. Note Litig., 991 F.2d 968, 979 (2d Cir. 1993); Jackson v. Broadcast Music, Inc., 2006 WL 250524 at *8; In re Global Crossing, Ltd. Sec. Litig, 313 F. Supp. 2d 189, 202 (S.D.N.Y. 2003); MacDiarmid v. ING Bank N.V., 02 Civ. 3077, 2003 WL 41995 at *5 (S.D.N.Y. Jan 6, 2003).

[33]     See, e.g., Bastys v. Rothschild, 97 Civ. 5154, 2000 WL 1810107 at *43 (S.D.N.Y. Nov. 21, 2000) ("[W]hen facts are known from which the inference of fraud flows, there is a discovery of fraud within the terms of the statute."); AS v. AS, 10 Misc. 3d 1074(A), 814 N.Y.S.2d 889 (table), 2006 WL 167791 at *3 (Sup. Ct. Nassau Co. Jan. 18, 2006).

<u>Hillman</u> v. <u>City of N.Y.</u>, 263 A.D.2d 529, 529, 693 N.Y.S.2d 224, 225 (2d Dep't 1999), <u>appeal denied</u>, 94 N.Y.2d 759, 706 N.Y.S.2d 80 (2000).

Habib admits that "the [Amended] Complaint does not allege any misconduct within the last six years," but insists that this is only because "[d]efendants actively and deliberately concealed their activities from" Habib.  (Dkt. No. 41: Habib Opp. Br. at 3.)  Habib also asserts, however, that defendants' "repeated misrepresentations regarding [Habib's] ownership interests" "continued the fraud until, at the very earliest, early 2006" which was "well within the six (6) year statute of limitations for fraud claims."  (Habib Opp. Br. at 3; <u>see also</u> <u>id.</u> at 17-18.)

Defendants contend that these misrepresentations, which constitute the core of their alleged fraudulent activity, fall well outside the six year statute of limitations (January 16, 2002), and that Habib made crucial and dispositive changes from his original complaint to his amended complaint solely to prevent dismissal on statute of limitations grounds.  (Dkt. No. 51: Defs. Br. at 7-9, 12-15.)  Habib's original complaint asserts that "since the mid-1990s" defendants ceased providing Habib with information regarding the various businesses, stopped forwarding "stock certificates, bank records, and other financial or business records," concealed defendants' business activities, and "refused to share any of the revenues, proceeds, or profit" from the businesses.  (Dkt. No. 1: Compl. ¶¶ 45, 51, 52, 93.)  Habib's original complaint also asserts that defendants issued Habib an "insignificant minority ownership interest in KOR" which deprived Habib "of any of the fruits of ownership, including decision-making, management, access to documents or information, or any share in revenue or profit."  (Compl. ¶ 48.)

Defendants complain that Habib's amended complaint "directly contradicts . . . the original complaint" and that this Court "should accept the facts as described in the original, not the amended, complaint when ruling on [this] motion to dismiss." (Defs. Br. at 12.)  Specifically, defendants contend that Habib's amended complaint disingenuously attempts to cure any possible statute of limitations defects in the original complaint by asserting that defendants' fraudulent misrepresentations continued until late 2006, and not until the mid-1990s, as asserted in the original complaint. (Defs. Br. at 7-9, 12-15.)  Defendants rely (Defs. Br. at 12-13) on <u>Wallace</u> v. <u>N.Y. City Dep't of Corr.</u> in arguing that this Court should "accept[] the facts as described in the original complaint as true" because Habib "blatantly change[d] his statement of the facts in order to respond to the defendants' [original] motion to dismiss." No. 95 CV 4404, 1996 WL 586797 at *2 (E.D.N.Y. Oct. 9, 1996).  In <u>Wallace</u>, plaintiff alleged that defendants violated his Eighth Amendment rights by maintaining a constitutionally deficient policy that led to plaintiff's injuries. <u>See</u> <u>Wallace</u> v. <u>N.Y. City Dep't of Corr.</u>, 1996 WL 586797 at *2.  In the original complaint, Wallace maintained that his injuries resulted from "an aberration from [defendants'] usual routine," while in the amended complaint, filed after defendants' motion to dismiss, Wallace claimed that this aberration constituted the defendants' policy. 1996 WL 586797 at *1-2.  The district court accepted the facts set forth in the original complaint as true for purposes of the motion due to the contradictory and obviously self-serving changes plaintiff made between the complaint and the amended complaint, changes that were required for plaintiff to survive a Rule 12(b)(6) motion to dismiss. 1996 WL 586797 at *2.

This Court does not view the instant case as analogous to <u>Wallace</u>, and for purposes of this motion the Court accepts the facts set forth in Habib's amended complaint.  The changes

between the complaint and amended complaint are, when taken as a whole, not "blatant" or "directly

contradict[ory]," and can be described as clarifying but, at most, as inconsistent.  Unlike <u>Wallace</u>,

Habib has not made changes that directly contradict the facts set forth in the original complaint.

Habib's amended complaint's additions, changes and omissions constitute the kinds of modifications

often made by plaintiffs in response to a motion to dismiss.  In <u>Streit</u> v. <u>Bushnell</u>, Judge Marrero

declined to follow <u>Wallace</u>, stating:

> It is not uncommon for litigants to amend pleadings in response to deficiencies pointed out by an adversary or even by the Court, either before a dispositive motion is filed or in response to a ruling on a motion that grants leave to replead and offers specific guidance as to how any flaws in the pleadings may be cured to survive dismissal.  Some such corrective amendments serve a useful purpose in avoiding unnecessary motion practice.  Not surprisingly, some later pleadings made in this context necessarily may be at odds with allegations the party asserted in the original pleadings.  It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings.  Contrary to such a result, Rule 8(e) explicitly permits litigants, even within the same pleadings, to "state as many separate claims or defenses as the party has <u>regardless of consistency</u>."  Fed.R.Civ.P. 8(e) (emphasis added).  And Rule 15, after authorizing amendments of pleadings as-of-right within a specified period, provides for amendments with permission of the court and instructs that "leave shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).

> . . . This Court finds the circumstances of the instant case distinguishable and thus declines to follow <u>Wallace</u>.  The factual change at issue in <u>Wallace</u> was "blatant" and directly contradictory of the earlier allegations . . . .  The Court does not read the modifications of the pleadings at issue here to implicate such dispositive effect.

424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006).<u>34/</u>

------

<u>34/</u>    <u>See</u>, <u>e.g.</u>, <u>Barris</u> v. <u>Hamilton</u>, 96 Civ. 9541, 1999 WL 311813 at *2 (S.D.N.Y. May 17, 1999) ("While there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading [citing <u>Wallace</u>], the more usual and benevolent option (continued...)

Habib's amended complaint adequately alleges fraudulent acts that occurred within six years of the commencement of this action, placing Habib's fraud claim safely within the statute of limitations. (<u>See</u> pages 5-9 above.)  Habib asserts that defendants knowingly made false misrepresentations within the six year statute of limitations by, among other things, confirming Habib's equal ownership status in the various rug and real estate entities, even though defendants had previously acted to render Habib's investments "worthless," and by giving him payments that did not represent his true share of the businesses' profits.  (<u>See</u> Habib Opp. Br. at 17; <u>see also</u> pages 5-7 above.) This Court sympathizes with defendants' argument that Habib made certain factual changes in the amended complaint expressly to avoid dismissal of their fraud claim.  At this stage, however, dismissal is unwarranted for the reasons discussed above, but this Court will carefully scrutinize the evidence moving forward, and will not hesitate to impose sanctions under Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927 if it later appears that the pleadings were inappropriately manipulated to survive defendants' motion.

Accordingly, Habib's fraud claim survives dismissal on statute of limitations.

---

[34]/  (...continued)
is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course."); <u>The Limited, Inc.</u> v. <u>McCrory Corp.</u>, 683 F. Supp. 387, 395 n.5 (S.D.N.Y. 1988); <u>CBS Catalogue P'ship</u> v. <u>CBS/Fox Co.</u>, 668 F. Supp. 282, 284 (S.D.N.Y. 1987) (declining to depart from the rule that "'an amended complaint ordinarily supercedes the original pleading,'" despite argument that the amended complaint contradicted previous sworn allegations).

## 2. Habib's Fraud Claim Is Not Duplicative of His Breach of Contract Claim

Defendants also contend that Habib's fraud claim is "not separately maintainable" because it "substantially track[s]" Habib's contract claim, and does not allege distinct damages. (Dkt. No. 37: Defs. Br. at 24.)  Under New York law, Habib's complaint cannot support his fraud claim if it "is duplicative of the breach of contract claim." Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007).[35/]

Because Habib's breach of contract claim survives defendants' motion to dismiss (see Point II.A, above), and because Habib's fraud claim does not expand the scope of discovery, it makes sense to permit Habib's fraud claim to proceed at this stage, and to revisit the issue of whether the contract claim subsumes the fraud claim after discovery, via a summary judgment motion. See, e.g.,

---

[35/]    See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) ("To maintain a claim of fraud [based on a breach of contract], a plaintiff must either: (I) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.") (citations omitted); Robin Bay Assocs, LLC v. Merrill Lynch & Co., 07 Civ. 376, 2008 WL 2275902 at *3 (S.D.N.Y. June 3, 2008); Cannon v. Douglas Elliman, LLC, 06 Civ. 7092, 2007 WL 4358456 at *9 (S.D.N.Y. Dec. 10, 2007); Bullmore v. Banc of Amer. Sec. LLC, 485 F. Supp. 2d 464, 469 (S.D.N.Y. 2007); Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007) ("Where a fraud claim 'seeks to enforce no more [than] the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed.'"); Stillman v. Townsend, 05 Civ. 6612, 2006 WL 2067035 at *6 (S.D.N.Y. July 26, 2006); N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 287-88 (1995) ("[D]efendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations. . . . Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie.") (citations omitted).

Metallia U.S.A. LLC v. M/V Kapitonas Stulpinas, 98 Civ. 3497, 1998 WL 1039103 at *3 n.3

(S.D.N.Y. Dec. 16, 1998) (Peck, M.J.); Lasalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 93

Civ. 4692, 1996 WL 393212 at *4-5 (S.D.N.Y. Apr. 11, 1996) (Knapp, D.J. & Peck, M.J.).

"Moreover, development of the factual record will, or at least may, assist the Court in deciding these

issues." Lasalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 1996 WL 393212 at *4.

Accordingly, Habib's fraud claim should is not dismissed at this time as duplicative of his contract

claim.[36]

### F.    Habib's Declaratory Judgment Claim (Count One) Survives Dismissal Under the Statute of Limitations

Habib's first count seeks a declaratory judgment that Habib is "a one-quarter owner

of the Real Estate Properties and the holder of a 25% ownership interest in each of the corporate-

defendants along with all the rights of ownership imposed by law or otherwise enjoyed equally by

the Defendants Abbas, Majid, or Hamid," directing defendants to amend documents filed with any

governmental agencies to reflect Habib's true ownership interests in the corporate defendants, and

"enjoining and restraining Defendants from taking any action to impair, limit, impede, reduce, dilute,

divert, misappropriate, conceal, or convert [Habib's] ownership interests." (Dkt. No. 34: Am.

Compl. at p. 15.) Defendants contend that the declaratory judgment cause of action, like the other

causes of action, is based on events that took place outside the statute of limitations and therefore

is time-barred. (Dkt. No. 37: Defs. Br. at 17.)

---

[36]    This argument applies equally to the other claims that the Court has not dismissed. As long as either of the two major claims – breach of contract and fraud – survive dismissal, discovery on the other claims will not in any way increase either party's discovery obligations or burdens.

The statute of limitations period for a declaratory judgment action is based on the underlying substantive claims upon which it is premised.  See, e.g., Town of Orangetown v. Gorsuch, 718 F.2d 29, 42 (2d Cir. 1983), cert. denied, 465 U.S. 1099, 104 S. Ct. 1592 (1984); Porwick v. Fortis Benefits Ins. Co., 99 Civ. 10122, 2004 WL 2793186 at *4 (S.D.N.Y. 2004); Han v. Standard Chartered Bank, 01 Civ. 3675, 2002 WL 1586883 at *3 (S.D.N.Y. July 17, 2002); Cmty. Hous. Opportunities, Inc. v. H.E.L.P., Inc., 747 F. Supp. 186, 190 (E.D.N.Y. 1990); N.Y. City Health & Hosps. Corp. v. McBarnette, 84 N.Y.2d 194, 200-01, 616 N.Y.S.2d 1, 3 (1994).  To the extent Habib's declaratory judgment claim rests on the substantive claims described above, all of which fall within their relevant statutes of limitations, Habib's declaratory judgment claim also survives dismissal.

## III.    HABIB'S ACCOUNTING CLAIM (COUNT EIGHT) IS DISMISSED AS TO CORPORATIONS BUT SURVIVES AS TO THE PARTNERSHIP

Habib's eighth count asserts an accounting claim "to allow Plaintiff [Habib] to examine, inspect, and receive the corporate-defendants' financial information" to account for possible "restitution, reimbursement, and equity payments" owed to Habib because defendants "diverted, misappropriated and converted millions of dollars from Plaintiff [Habib] without accounting for the funds or for [Habib's] ownership interests in the resulting investments and businesses."  (Dkt. No. 34: Am. Compl. ¶¶ 97-102.)[37]   Habib asserts his accounting claim under New York Business Corporation Law § 624 and New York Partnership Law § 74.  (Am. Compl. ¶ 98; Dkt. No. 41: Habib Opp. Br. at 24.)  New York law generally applies a six year statute of limitations for an accounting

---

[37]    Habib also asks for an accounting in his unjust enrichment cause of action.  (Am. Compl. at 25.)

claim.  C.P.L.R. § 213(1); see, e.g., Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 518 (2d Cir. 2001); Steele v. Anderson, No. 03-CV-1251, 2004 WL 45527 at *1 (N.D.N.Y. Jan. 8, 2004); Lord Day & Lord v. Socialist Repub. of Vietnam, 134 F. Supp. 2d 549, 563 (S.D.N.Y. 2001); Bernstein v. La Rue, 120 A.D.2d 476, 477, 501 N.Y.S.2d 896, 898 (2d Dep't 1986).

Under New York Business Corporation Law, a corporate "shareholder of record" may, after a written demand, examine the corporation's "minutes of the proceedings of its shareholders and record of shareholders," and "an annual balance sheet and profit and loss statement for the preceding fiscal year."  BCL §§ 624(b), 624(e); see, e.g., Schapira v. Grunberg, No. 18621/2005, 12 Misc. 3d 1195(A), 824 N.Y.S.2d 770 (table), 2006 WL 2353194 at *1 (Sup. Ct. Bx. Co. Feb. 27, 2006).  A proceeding to compel inspection, however, may only be commenced after the corporation has refused an inspection demand.  BCL § 624(d); see, e.g., Davis v. Cornerstone Tel. Co., No. 6913-07, 19 Misc. 3d 1142(A), 2008 WL 2329176 at *10 (Sup. Ct. Albany Co. June 5, 2008) ("BCL § 624(d) provides the specific mechanism by which inspection may be compelled.  That provision mandates that the application be brought by Order to Show Cause, with a mandatory summary hearing to be held on the return date of the motion."); Levine v. Pat-Plaza Amusements, Inc., 67 Misc. 2d 485, 487-88, 324 N.Y.S.2d 145, 149 (Sup. Ct. Nassau Co. 1971) (petitioners did not establish a right under BCL §624 because they did allege in the petition that they made a demand upon the defendant company).

Habib does not allege that he made any inspection demand upon the corporate defendants and has not, therefore, satisfied the procedural prerequisites of BCL § 624.  His accounting claim as to the corporations, therefore, is dismissed.

Under New York Partnership Law, a cause of action for accounting accrues upon a dissolution of the partnership.  N.Y. P'ship Law § 74; see, e.g., Scholastic, Inc. v. Harris, 259 F.3d 73, 90 (2d Cir. 2000) ("New York law provides that partners are entitled to an accounting of a partnership following its dissolution.");  In re Karta Corp., 342 B.R. 674, 684 (S.D.N.Y. 2006); Mashihi v. 166-25 Hillside Partners, 51 A.D.3d 738, 738, 859 N.Y.S.2d 202, 203 (2d Dep't 2008); Allied Bingo Supplies of Fla., Inc. v. Hynes, 27 A.D.3d 597, 598, 813 N.Y.S.2d 444, 445 (2d Dep't 2006); Posner v. Posner, 280 A.D.2d 318, 319, 720 N.Y.S.2d 465, 467 (1st Dep't 2001); 220-52 Assocs. v. Edelman, 241 A.D.2d 365, 367, 659 N.Y.S.2d 885, 887 (1st Dep't 1997) ("Upon notice of dissolution and the demand for an accounting, any partner has a right to an immediate accounting as of the date of dissolution.") (internal citation omitted).  Although Habib has failed to establish the dissolution of any relevant partnership, "sections 43 and 44 of the [New York] partnership statute allow for an accounting-even absent dissolution-where a partner alleges a breach of fiduciary duty or a wrongful exclusion, when such is provided for by agreement, or where otherwise 'just and reasonable.'"   Scholastic, Inc. v. Harris, 259 F.3d at 90 (quoting N.Y. P'ship Law §§ 43-44); In re Karta Corp., 342 B.R. at 684.  Habib has adequately pleaded a breach of fiduciary duty (see pages 20-22 above), as well as facts suggesting wrongful exclusion from the business activities of Overseas Partnership (see pages 4-5, 8 above).  Accordingly, Habib's accounting claim (count eight) survives dismissal only as to any activities involving Overseas Partnership.

## IV.    HABIB'S SHAREHOLDER OPPRESSION AND DISSOLUTION CLAIMS (COUNTS TWO & THREE) ARE DISMISSED

Habib's second count asserts a minority shareholder oppression claim under New York Business Corporation Law § 1104-a[38] against defendants Abbas, Majid and Hamid for engaging in "illegal, fraudulent, and oppressive conduct with respect to [Habib's] minority ownership interests in the corporate-defendants, by . . . refusing to share equally in the corporate opportunities, investments, and businesses and to include [Habib] in any business decisions relating thereto." (Dkt. No. 34: Am. Compl. ¶¶ 67-70.) Habib seeks judgment "winding down and dissolving the corporate-entities" under § 1104-a as well as under a generic third count which claims that defendants Abbas, Majid and Hamid "are looting the corporate assets to enrich themselves at the expense of the minority shareholder, continuing the corporations solely to benefit those 'in control,' and have taken steps to deprive the minority shareholder of his rights to and interests in the corporate-defendants." (Am. Compl. ¶¶ 71-74.)

The statute of limitations in New York for dissolution is six years. C.P.L.R. § 213(1); see, e.g., Lord Day & Lord v. Socialist Repub. of Vietnam, 134 F. Supp. 2d 549, 563 (S.D.N.Y.

---

[38]    BCL § 1104-a states:

(a) The holders of shares representing twenty percent or more of the votes of all outstanding shares of a corporation, . . . no shares of which are listed on the national securities exchange . . . , entitled to vote in an election of directors may present a petition of dissolution on one or more of the following grounds:

(1) The directors or those in control of the corporation have been guilty of illegal fraudulent or oppressive actions toward the complaining shareholders; . . .

BCL § 1104-a.

2001); DiPace v. Figueroa, 223 A.D.2d 949, 952, 637 N.Y.S.2d 222, 224 (3d Dep't 1996); Bernstein

v. La Rue, 120 A.D.2d 476, 477, 501 N.Y.S.2d 896, 898 (2d Dep't 1986).

        This Court need not resolve whether Habib's minority dissolution claims fall within

the applicable statute of limitations, however, because this Court declines to entertain a claim for

judicial dissolution of a state-created corporation. The Second Circuit has recognized that dissolving

a New York corporation implicates the Burford abstention doctrine, in which "[a] federal court may

abstain from hearing a case or claim over which it has jurisdiction to avoid needless disruption of

state efforts to establish coherent policy in an area of comprehensive state regulation." Friedman v.

Revenue Mgmt. Of N.Y., Inc., 38 F.3d 668, 671 (2d Cir. 1994) (noting the "comprehensive

regulation of corporate governance and existence by New York.") (citing Burford v. Sun Oil Co.,

319 U.S. 315, 332-34, 63 S. Ct. 1098, 1106-07 (1943)). Federal courts differ on whether they have

subject matter jurisdiction over claims for corporate dissolution, an issue that Friedman did not

resolve. See Friedman v. Revenue Mgmt. Of N.Y., Inc., 38 F.3d at 671. Nonetheless, courts within

the Second Circuit "have almost uniformly ruled that even if federal courts have subject matter

jurisdiction over claims for corporate dissolution, they should abstain from exercising it." Feiwus

v. Genpar, Inc., 43 F. Supp. 2d 289, 296 n.6 (E.D.N.Y. 1999).[39]

---

[39]    See, e.g., Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 619 n.14 (S.D.N.Y. 2003) (finding it "doubtful that this Court would have been able to hear" a § 1104-a dissolution claim); Nutronics Imaging, Inc. v. Danan, No. Civ. 96-2950, 2000 WL 33128504 at *1 (E.D.N.Y. July 27, 2000) (abstaining from exercising jurisdiction over claim for corporate dissolution without ruling on subject matter jurisdiction); Zamer v. Diliddo, No. 97-CV-32, 1999 WL 606731 at *5 (W.D.N.Y. Mar. 23, 1999); Kuo v. Kuo, 96 Civ. 5130, 1999 WL 123379 at *7 n.1 (S.D.N.Y. Mar. 4, 1999) (abstention appropriate even if court has jurisdiction), aff'd, 216 F.3d 1072 (2d Cir. 2000); Langner v. Brown, 913 F. Supp. 260, 270-
(continued...)

This Court finds that abstention is appropriate in this case, and therefore it need not rule on the jurisdictional issue, nor on the statute of limitations issue. Accordingly, Habib's dissolution claims (counts two and three) are dismissed without prejudice to proceeding in New York state court.

## V.    HABIB'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS DISMISSED (COUNT TEN)

Habib's tenth count – a claim for breach of the covenant of good faith and fair dealing – asserts that defendants "had an affirmative duty of good faith and fair dealing with respect to their relationship with [Habib] and in connection with the rug businesses and real properties." (Dkt. No. 34: Am. Compl. ¶ 106.) Habib claims defendants breached this duty "[b]y breaching the parties' agreements, by making material misrepresentations and omissions, by converting, diverting, and misappropriating [Habib's] assets, funds, contributions, and equity, . . ." (Am. Compl. ¶ 107.)

In New York, it is well-settled that the common law duty of good faith and fair dealing exists solely as an implicit contractual right; any breach of this duty is therefore considered a breach of the underlying contract. E.g., Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 83

---

39/    (...continued)
71 (S.D.N.Y. 1996) (same); Harrison v. CBCH Realty, Inc., No. 92-CV-434, 1992 WL 205839 at *1-4 (N.D.N.Y. Aug. 13, 1992); Cuddle Wit, Inc. v. Chan, No. 89 Civ. 7299, 1990 WL 115620 at *1-2 (S.D.N.Y. Aug. 7, 1990); In re English Seafood (USA) Inc., 743 F. Supp. 281, 286-89 (D. Del. 1990) (holding that the court has subject matter jurisdiction over the plaintiff's claim for corporate dissolution, but that the court should abstain from exercising it); Codos v. Nat'l Diagnostic Corp., 711 F. Supp. 75, 78 (E.D.N.Y. 1989); see also Boucher v. Sears, No. 89-CV-1353, 1997 WL 736532 at *16-19 (N.D.N.Y. Nov. 21, 1997) (finding supplemental jurisdiction over state claim to dissolve corporation but abstaining from exercising jurisdiction over dissolution claim).

(2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").[40/]  "If the allegations underlying the breach of the implied covenant of good faith claim and the breach of contract claim are the same, then the good faith claim is 'redundant' and cannot survive a motion to dismiss." Simon v. Unum Group, 2008 WL 2477471 at *2.[41/]  "Such a claim may be brought, if at all, only if it is based on allegations different than those underlying the accompanying breach of contract claim." EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist., 124 F. Supp. 2d at 873.[42/]  New York courts do, however, recognize a separate cause of action for breaches of the covenant of good faith and fair dealing "in cases involving efforts by one

---

[40/]  See, e.g., Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992); Simon v. Unum Group, 07 Civ. 11426, 2008 WL 2477471 at *2 (S.D.N.Y. June 19, 2008); Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp., 06 Civ. 3157, 2007 WL 2244062 at *6 (S.D.N.Y. July 31, 2007); Sea Carriers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d 375, 380 (S.D.N.Y. 2007); Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("New York law does not recognize a separate cause of action for breach of the covenant of good faith and fair dealing." ), aff'd, 65 Fed. Appx. 736 (2d Cir. 2003); Butvin v. DoubleClick, Inc., 99 Civ. 4727, 2001 WL 228121 at *8 (S.D.N.Y. Mar. 7, 2001), aff'd, 22 Fed. Appx. 57 (2d Cir. 2001).

[41/]  See also, e.g., The Youngbloods v. BMG Music, 07 Civ. 2394, 2008 WL 919617 at *1 (S.D.N.Y. Mar. 28, 2008); Sea Carriers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d at 380; Ari & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003); TVT Records v. Island Def Jam Music Group, 244 F. Supp. 2d 263, 277 (S.D.N.Y. 2003); EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist., 124 F. Supp. 2d 861, 873 (S.D.N.Y. 2000); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y.1997).

[42/]  Accord, e.g., Grand Heritage Mgmt., LLC v. Murphy, 06 Civ. 5977, 2007 WL 3355380 at *6 (S.D.N.Y. Nov. 7, 2007); Net2Globe Int'l, Inc. v. Time Warner Telecom, 273 F. Supp. 2d 436, 467 (S.D.N.Y. 2003); TVT Records v. Island Def Jam Music Group, 244 F. Supp. 2d at 278; Siradas v. Chase Lincoln First Bank, N.A., 98 Civ. 4028, 1999 WL 787658 at *6 (S.D.N.Y. Sept. 30, 1999).

party to a contract to subvert the contract itself."  Butvin v. DoubleClick, Inc., 2001 WL 228121 at *8.[43]

       Habib's breach of the covenant of good faith and fair dealing claim rests on the same facts that comprise the basis for Habib's breach of contract claim.  Habib's covenant claim asserts that "[b]y breaching the parties' agreements, by making material misrepresentations and omissions, by converting, diverting, and misappropriating Plaintiff's assets, funds, contributions and equity, Defendants have breached their obligation of good faith and fair dealing."  (Am. Compl. ¶ 107.) Habib's allegations as to the breach of the covenant of good faith and fair dealing do not differ from the factual allegations in Habib's breach of contract claim.  (See page 17 above.)  As pled, therefore, the covenant of good faith and fair dealing claim does not state a distinct cause of action based on a separate set of facts and is not independent from Habib's breach of contract claim, as required by New York law.

       "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim."  Ari & Co. v. Regent Int'l Corp., 273 F. Supp. 2d at 522 (citation omitted).[44]  Here, the relief Habib seeks

---

[43]    See also, e.g., MacPhee v. Verizon Comm'ns Inc., 06 Civ. 7870, 2008 WL 162899 at *6 (S.D.N.Y. Jan. 15, 2008); AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., 02 Civ. 1363, 2003 WL 21203503 at *9 (S.D.N.Y. May 22, 2003).

[44]    See also, e.g., Goldblatt v. Englander Commc'ns, L.L.C., 06 Civ. 3208, 2007 WL 148699 at *5 (S.D.N.Y. Jan. 22, 2007); Kosher Provisions, Inc. v. Blue & White Food Prods. Corp., No. CV-04-361, 2005 WL 1890039 at *3 (E.D.N.Y. Aug. 9, 2005); Bates Adver. USA, Inc. v. McGregor, 01 Civ. 7413, 282 F. Supp. 2d 209, 219 (S.D.N.Y. 2003); Alter v. Bogoricin, (continued...)

42

on the covenant claim is identical to the relief he seeks on the breach of contract claim.  (Compare Am. Compl. p. 20 with Am. Compl. p. 26.)

Habib's breach of the covenant of good faith and fair dealing claim therefore is dismissed as redundant to his breach of contract claim..

## CONCLUSION

For the reasons set forth below, defendants' motion to dismiss (Dkt. No. 36) is GRANTED with respect to Habib's claims for:  (1) corporate accounting, (2) minority shareholder oppression, (3) corporate dissolution, and (4) Habib's breach of the covenant of good faith and fair dealing.  Defendants' motion to dismiss is DENIED with respect to Habib's other claims, for breach of contract, breach of fiduciary duty, conversion, unjust enrichment, fraud, partnership accounting and declaratory judgment.

The Court will hold a scheduling conference on August 21, 2008 at 10:30 a.m.; the parties should have their Rule 26(f) discovery planning conference before the Court conference.

SO ORDERED.

DATED:      New York, New York
            August 11, 2008

_____
Andrew J. Peck
United States Magistrate Judge

Copies to:    Ari Weisbrot, Esq.
              Robert M. Abrahams, Esq.
              F. Barbara Gluck Reid, Esq.

---

44/      (...continued)
         97 Civ. 0662, 1997 WL 691332 at *8 (S.D.N.Y. Nov. 6, 1997).

H:\OPIN\KERMANSHAH